No. 22-2132

---

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff/Appellant*,

v.

NEW MEXICO ENVIRONMENT DEPARTMENT, et al.,
*Defendants/Appellees*.

---

Appeal from the United States District Court for the District of New Mexico
No. 2:19-cv-00046 (Hon. Kenneth J. Gonzales)

---

**BRIEF FOR APPELLANT**

---

TODD KIM
*Assistant Attorney General*

ALLEN M. BRABENDER
*Attorney*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 514-5316
allen.brabender@usdoj.gov

**Oral argument is requested.**

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii

PRIOR OR RELATED APPEALS ...............................................................ix

GLOSSARY ...............................................................................................x

INTRODUCTION ......................................................................................1

STATEMENT OF JURISDICTION...........................................................1

STATEMENT OF THE ISSUES................................................................2

PERTINENT STATUTES AND REGULATIONS....................................2

STATEMENT OF THE CASE...................................................................3

     A.     Statutory and regulatory background ....................................3

     B.     Factual background .............................................................6

     C.     District court proceedings ...................................................7

     D.     Post-judgment events .........................................................12

SUMMARY OF ARGUMENT ..................................................................13

STANDARDS OF REVIEW .....................................................................14

ARGUMENT .............................................................................................15

I.     The district court has jurisdiction under 28 U.S.C. § 1345...........15

     A.     Congress has not withdrawn § 1345 jurisdiction. ..............16

     B.     The HWA does not provide for exclusive state-court
              review and, regardless, a state statute cannot override
              federal law. ........................................................................24

i

II.    There are no exceptional circumstances authorizing the district court to abstain from exercising 28 U.S.C. § 1345 jurisdiction. ....................29

    A.    The district court misapplied the "avoidance of piecemeal litigation" factor. ....................................................................32

    B.    The district court further misunderstood that federal law also provides the rules of decision and overlooked the harm to the United States flowing from its decision to abstain. .......................................................................................35

    C.    The other factors also show that the district court abused its discretion by not exercising its subject-matter jurisdiction. .................................................................................39

CONCLUSION ....................................................................................41

STATEMENT REGARDING ORAL ARGUMENT ............................................42

CERTIFICATE OF COMPLIANCE.........................................................43

CERTIFICATE OF DIGITAL SUBMISSION .......................................44

ADDENDUM ................................................................................1a

DISTRICT COURT MEMORANDUM AND ORDER

FINAL JUDGMENT

# TABLE OF AUTHORITIES

## Cases

*Allegheny Airlines, Inc. v. Pennsylvania Pub. Util. Comm'n,*
  319 F. Supp. 407 (E.D. Pa. 1970) ..................................................................... 27-28

*Barrett v. United States,*
  853 F.2d 124 (2d Cir. 1988)……………………………………………………….26

*Branson Sch. Dist. RE-82 v. Romer,*
  161 F.3d 619 (10th Cir. 1998) ...........................................................................25

*Chapman v. Oklahoma,*
  472 F.3d 747 (10th Cir. 2006) ...........................................................................14

*Chicago, R.I. & P.R.R. v. Stude,*
  346 U.S. 574 (1954)............................................................................................27

*Christner v. Poudre Val. Co-op. Ass'n,*
  235 F.2d 946 (10th Cir. 1956) ...........................................................................19

*Citizens for Alternatives to Radioactive Dumping v. CAST Transp., Inc.,*
  2004 WL 7338006 (D.N.M. Sept. 30, 2004) ................................................. 34, 36

*Colorado River Water Conservation District v. United States,*
  424 U.S. 800 (1976)...................................... 2, 3, 8, 16, 19, 20, 30, 31, 32, 39

*D.A. Osguthorpe Family P'ship* v. *ASC Utah, Inc.,*
  705 F.3d 1223 (10th Cir. 2013) ................................................. 14, 32, 35, 39-40

*Eglin v. Dep't of Treasury,*
  567 U.S. 1 (2012)............................................................................................ 20, 21

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC,*
  953 F.3d 660 (10th Cir. 2020) ........................................................................ 27, 29

*Epic Sys. Corp. v. Lewis,*
  584 U.S. 497 (2018)............................................................................................17

*Erie R. Co. v. Tompkins,*
  304 U.S. 64 (1938)..............................................................................................33

*Fox v. Maulding*,
  16 F.3d 1079 (10th Cir. 1994) ................................................. 30-31, 36

*Galveston, Harrisburg & San Antonio Ry. Co. v. Wall*ace,
  223 U.S. 481 (1912) ......................................................................17

*Gulf Offshore Co. v. Mobil Oil Corp.*,
  453 U.S. 473  (1981) ......................................................................19

*Kremer v. Chemical Construction Corp.*,
  456 U.S. 461 (1982) ......................................................................18

*Leiter Minerals, Inc. v. United States*,
  352 U.S. 220 (1957) ......................................................................29

*Mims v. Arrow Fin. Servs.*, LLC,
  565 U.S. 368 (2012) ......................................................................19

*Morton v. Mancari*,
  417 U.S. 535 (1974) ......................................................................18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .................................................. 14, 15, 30, 32, 39

*New Beckley Mining Corp. v. International Union, UMWA*,
  946 F.2d 1072 (4th Cir. 1991) ......................................................31

*New Orleans Public Serv., Inc. v. Council of New Orleans*,
  491 U.S. 350 (1989) (*NOPSI*) ................................................ 29, 30, 35

*NLRB v. Nash-Finch Co.*,
  404 U.S. 138 (1971) ......................................................................38

*North Carolina v. United States*,
  7 F.4th 160 (4th Cir. 2021) ...................................................... 18, 22, 24

*Palmore v. United States*,
  411 U.S. 389 (1973) ......................................................................24

*Parola v. Weinberger*,
  848 F.2d 956 (9th Cir. 1988) ................................................... 17, 23

iv

*People Inc. v. Iancu*,
  971 F.3d 1355 (Fed. Cir. 2020)..................................................................20

*Racher v. Westlake Nursing Home Ltd. P'ship*,
  871 F.3d 1152 (10th Cir. 2017) ...............................................................34

*Rosecrans v. United States*,
  165 U.S. 257 (1897)..................................................................................17

*Ryan v. Johnson*,
  115 F.3d 193 (3d Cir. 1997)......................................................................33

*Shook v. El Paso Cnty.*,
  386 F.3d 963 (10th Cir. 2004) ........................................................... 14, 35

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ............................................................................ 20, 21

*Trapp v. Goetz*,
  373 F.2d 380 (10th Cir. 1966) ..................................................................26

*Trump v. Vance*,
  941 F.3d 631 (2d Cir. 2019)................................................................ 28, 38

*United States v. Bank of New York & Tr. Co.*,
  296 U.S. 463 (1936)..................................................................................19

*United States v. California*,
  328 F.2d 729 (9th Cir. 1964).....................................................................15

*United States v. California*,
  655 F.2d 914 (9th Cir. 1980).....................................................................34

*United States v. Colorado*,
  990 F.2d 1565 (10th Cir. 1993) ............................................................ 4, 18

*United States v. Ill. Pollution Control Bd.*,
  17 F. Supp. 2d 800 (N.D. Ill. 1998) ..........................................................22

*United States v. Mercantile Nat. Bank at Dallas*,
  795 F.2d 492 (5th Cir. 1986).....................................................................34

*United States v. Morros*,
   268 F.3d 695 (9th Cir. 2001)........................................................ 15, 28, 33, 38

*United States v. Nevada Tax Commission*,
   439 F.2d 435 (9th Cir. 1971)...................................................................26

*United States v. New Mexico*,
   32 F.3d 494 (10th Cir. 1994)...................................................................17

*United States v. NMED*,
   No. A-1-CA-37887 (N.M. Ct. App. Apr. 10, 2019) ...............................7

*United States v. Puerto Rico*,
   551 F. Supp. 864 (D.P.R. 1982)...............................................................23

*United States v. Puerto Rico*,
   721 F.2d 832 (1st Cir. 1983) ............................................... 17, 22-23, 33

*United States v. S. Florida Water Mgmt. Dist.*,
   28 F.3d 1563 (11th Cir. 1994) ................................................................15

## Federal Statutes

28 U.S.C. § 1291 ........................................................................................37

28 U.S.C. § 1295 ........................................................................................20

28 U.S.C. § 1331 ................................................................................... 8, 10

28 U.S.C. § 1345 ........................................................................................

1, 2, 3, 8, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 27, 29, 33, 38, 40

28 U.S.C. § 1442 ........................................................................................23

30 U.S.C. § 816 ..........................................................................................20

33 U.S.C. § 1323 ........................................................................................22

35 U.S.C. § 141 ..........................................................................................20

42 U.S.C. § 6901 ..........................................................................................3

42 U.S.C. § 6903 .......................................................................................3, 4

42 U.S.C. § 6921 ....................................................................................................3

42 U.S.C. § 6926 .................................................................................................4, 5

42 U.S.C. § 6929 ....................................................................................................4

42 U.S.C. § 6939b ..................................................................................................3

42 U.S.C. § 6961 ............................................... 5, 10, 16, 17, 18, 20, 21, 23

42 U.S.C. § 6967 ..................................................................................................23

43 U.S.C. § 666 ....................................................................................................19

## State Statutes

N.M. Stat. Ann. § 74-4-1 .......................................................................................5

N.M. Stat. Ann. § 74-4-3 .......................................................................................5

N.M. Stat. Ann. § 74-4-4 .......................................................................................5

N.M. Stat. Ann. § 74-4-4.2 ....................................................................................5

N.M. Stat. Ann. § 74-4-13 .....................................................................................6

N.M. Stat. Ann. § 74-4-14 ....................................................... 6, 21, 24, 26

## Regulations

40 C.F.R. § 260.1 ..................................................................................................4

40 C.F.R. § 260.10 ................................................................................................5

40 C.F.R. § 261.3 .......................................................................................... 3, 5, 7

40 C.F.R. § 270.32 ..............................................................................................13

40 C.F.R. § 271.1 ..................................................................................................4

40 C.F.R. § 272.1601 .................................................................................... 5, 26

89 Fed. Reg. 8598 (Feb. 8, 2024) ......................................................................12

89 Fed. Reg. 8606 (Feb. 8, 2024) ......................................................12

**Federal Rules**

Fed. R. App. P. 4 ...........................................................................2

**State Rules**

N.M. Admin. Code § 20.4.1 ............................................................5

N.M. Admin. Code § 20.4.1.100 .....................................................5

N.M. Admin. Code § 20.4.1.200 .....................................................5

N.M. Admin. Code § 20.4.1.500…………………………………...……5

N.M. Admin. Code § 20.4.1.901 ............................................ 6, 21, 26

N.M. R. App. P. 12-502 ................................................................38

**Other Authorities**

U.S. Const. Art. III, § 2 ...............................................................15

## PRIOR OR RELATED APPEALS

There are no prior or related appeals in this matter.

## GLOSSARY

EPA          United States Environmental Protection Agency

HWA          New Mexico Hazardous Waste Act

NMED         New Mexico Environment Department

RCRA         Resource Conservation and Recovery Act

## INTRODUCTION

The United States, on behalf of the Air Force, sued the State of New Mexico in federal court (and, protectively, in state court) challenging a permit issued by the New Mexico Environment Department (NMED), which has been authorized by the U.S. Environmental Protection Agency (EPA) to administer a hazardous waste program under the federal Resource Conservation and Recovery Act (RCRA). The federal district court *sua sponte* dismissed the suit for a lack of subject-matter jurisdiction and explained that, even if it had jurisdiction, it would abstain from exercising it out of deference to the dormant state-court litigation.

This Court should reverse the judgment of dismissal. Because the United States is the plaintiff, the district court had an unflagging obligation to exercise jurisdiction under 28 U.S.C. § 1345, which provides district courts with jurisdiction over "all civil actions … commenced by the United States." And the district court's decision to abstain was an abuse of discretion, as this case does not present any "exceptional circumstances" to justify avoiding § 1345 jurisdiction.

## STATEMENT OF JURISDICTION

(A)    The district court had subject matter jurisdiction under 28 U.S.C. § 1345 because the United States is the plaintiff. Appendix (App.) 039.

(B)    This Court has jurisdiction under 28 U.S.C. § 1291 because the district court entered a final judgment. App. 221.

1

(C)    The court entered that judgment on August 31, 2022. App. 221. The United States timely filed its notice of appeal on October 28, 2022, or 58 days later. App. 222; *cf.* Fed. R. App. P. 4(a)(1)(B).

(D)    The appeal is from a final judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUES

I.    Whether the district court erred in concluding that it lacked subject-matter jurisdiction under 28 U.S.C. § 1345.

II.    Whether the district court abused its discretion in abstaining from exercising its jurisdiction under the doctrine announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

## PERTINENT STATUTES AND REGULATIONS

This appeal requires study of the following statute:

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

28 U.S.C. § 1345.

Other pertinent statutes and regulations are set forth in the Addendum following this brief.

**STATEMENT OF THE CASE**

**A.     Statutory and regulatory background**

RCRA, 42 U.S.C. § 6901 *et seq*., regulates the treatment, storage, and disposal of "solid wastes." "Hazardous wastes" are a subset of "solid wastes" and are subject to the more stringent "cradle to grave" standards of RCRA Subtitle C. *See* 42 U.S.C. §§ 6921-6939b. RCRA defines "hazardous waste" broadly as "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—(A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed." *Id.* § 6903(5). For purposes of RCRA's Subtitle C regulatory program, Congress directed EPA to "promulgate regulations identifying the characteristics of hazardous waste, and listing particular hazardous wastes …, which shall be subject to the provisions of" Subtitle C. *Id.* § 6903(5). EPA gave effect to this requirement by promulgating 40 C.F.R. part 261, which identifies both listed and characteristic hazardous wastes. *See* 40 C.F.R. § 261.3(a)(2); *id.* §§ 261.30-261.38) (listing hazardous wastes), *id.* §§ 261.20-261.24 (specifying characteristics).

3

EPA administers RCRA's hazardous waste program. *See* 40 C.F.R. § 260.1, *et seq.* But EPA may authorize a state to administer and enforce a state hazardous waste program that operates "in lieu of the Federal program" if EPA finds, among other things, that it "is … equivalent to the Federal program." 42 U.S.C. § 6926(b). While a state program must meet the minimum federal standards, RCRA allows a state to adopt more restrictive requirements. *See* 42 U.S.C. § 6929; 40 C.F.R. § 271.1(i)(1); *United States v. Colorado*, 990 F.2d 1565, 1569 (10th Cir. 1993) ("RCRA sets a floor not a ceiling for state regulation of hazardous wastes.") (internal citation and quotation omitted). Once EPA authorizes a state to carry out a state hazardous waste program, any action taken by the state within the scope of the EPA authorization has "the same force and effect as action taken by" EPA. *See* 42 U.S.C. § 6926(d). The state's program applies to federal agencies under a waiver of sovereign immunity, stating that federal agencies:

> shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal and management in the same manner, and to the same extent, as any person.

42 U.S.C. § 6961(a).

New Mexico operates an EPA-authorized state hazardous waste management program under the state Hazardous Waste Act (HWA). N.M. Stat.

4

Ann. § 74-4-1 *et seq.*; N.M. Admin. Code pt. 20.4.1; *see also* 42 U.S.C. § 6926(b); 40 C.F.R. § 272.1601. The HWA includes a hazardous waste permitting program implemented by NMED. N.M. Stat. Ann. § 74-4-4.2. That program requires the owner or operator of a hazardous waste treatment, storage, or disposal facility to obtain a permit under the HWA. *See id.* § 74-4-4(A)(6). Such permits "shall require corrective action for all releases of hazardous waste or constituents from any solid waste management unit" at the permitted facility. *Id.* § 74-4-4.2(B). New Mexico defines "corrective action" as one taken "to investigate, minimize, eliminate or clean up a release to protect the public health, safety and welfare or the environment." *Id.* § 74-4-3(C).

New Mexico's HWA regulations governing corrective action incorporate EPA's RCRA regulations by reference, with limited exceptions.[1] *See* N.M. Admin. Code § 20.4.1.500 (incorporating 40 C.F.R. pt. 264 by reference, the federal corrective action regulations); *id.* § 20.4.1.100-200 (incorporating 40 C.F.R. pts. 260 and 261 by reference). This includes EPA's regulatory definition of hazardous waste at 40 C.F.R. § 260.10, which defines hazardous waste "[w]hen used in parts 260 through 273" to mean "a hazardous waste as defined in § 261.3."

---

[1] The HWA prohibits New Mexico from identifying or listing substances as hazardous wastes that have not been listed or identified as hazardous waste by EPA. N.M. Stat. Ann. § 74-4-4(A)(1) ("[T]he board shall not identify or list any solid waste or combination of solid wastes as a hazardous waste that has not been listed and designated as a hazardous waste by [EPA] pursuant to [RCRA]").

New Mexico's HWA provides that regulated parties "may" appeal NMED's permitting decisions to the New Mexico Court of Appeals, which may set aside a permitting decision that is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law. N.M. Stat. Ann. § 74-4-14; N.M. Admin. Code § 20.4.1.901(H).

### B.    Factual background

Per- and poly-fluoroalkyl substances (PFAS) are a large class of chemicals found in many commercial products, including in the firefighting foam used on military bases and commercial airports. They are often called "forever" chemicals because they are extremely persistent in the environment and in human bodies. Despite their persistence, PFAS chemicals, as of the filing of this brief, are not listed or identified characteristic hazardous wastes under EPA's RCRA regulations.

Cannon Air Force Base (Cannon)—home of the 27th Special Operations Wing—is located on federal land in the high plains of eastern New Mexico near the panhandle of Texas. PFAS contamination has been detected at and around Cannon like many other Air Force facilities that used fire suppressants containing PFAS during emergencies. The Air Force is undertaking a response at Cannon under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) as part of its nationwide effort to respond to PFAS contamination.

In 2013, the Air Force applied to renew its previous RCRA permit for Cannon, which NMED renewed in 2018 after taking public comment on a draft permit it released in 2016. Unlike Cannon's prior permit issued in 2003, the 2018 permit sought to require corrective action for PFAS and numerous other broadly defined "contaminants" not currently in EPA's regulatory definition of hazardous waste at 40 C.F.R. § 261.3. App. 60-61. The Air Force alleges that NMED did not justify these provisions with sufficient legal or record support.

### C.    District court proceedings

On January 17, 2019, the United States on behalf of the Air Force filed complaints (in the name of the United States) challenging the overbroad permit in the U.S. District Court for the District of New Mexico (App. 11-14) and, protectively, in the New Mexico Court of Appeals. At the United States' request, the New Mexico Court of Appeals stayed the state case pending the outcome of the federal case. *See* Order, *United States v. NMED*, No. A-1-CA-37887 (N.M. Ct. App. Apr. 10, 2019); App. 205.

The original federal complaint challenged the permit's definition of "hazardous waste," stating that because it reaches wastes that are beyond the scope of New Mexico's regulations, the permit definition is contrary to the HWA and its implementing regulations and therefore exceeds the scope of federal program authorization and RCRA's waiver of sovereign immunity. App. 11, 13-14. In other

words, because Congress had waived sovereign immunity only for state-law "requirements," but NMED had not been authorized under RCRA to regulate PFAS, Congress did not consent to state regulation of those substances. The complaint cited 28 U.S.C. § 1345 (United States as plaintiff) and 28 U.S.C. § 1331 (federal question) as authorizing jurisdiction over the federal case. App. 12.

NMED moved to dismiss the complaint on several grounds, while arguing in passing that the court should abstain from exercising its jurisdiction under various doctrines, including under the *Colorado River* doctrine. App. 16-17. The *Colorado River* doctrine allows a federal court in "exceptional circumstances" to dismiss or stay a federal action in deference to pending parallel state court proceedings based "on considerations of wise judicial administration." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The district court denied NMED's motion after finding that various factors supported exercising its jurisdiction, including that: the state and federal cases were filed contemporaneously; the state case had been stayed; and the case would involve consideration of federal law in interpreting RCRA's sovereign immunity waiver. App. 31-32.

The United States later filed an amended complaint. App. 38-44. The amended complaint, among other things, omitted reference to sovereign immunity. It, however, continued to allege that the permit exceeded NMED's authority

because the permit arbitrarily or capriciously regulated substances not within the scope or definition of hazardous waste under New Mexico's regulations. App. 43. When the United States moved for summary judgment (App. 188), NMED responded that, under federal law, the Air Force had forfeited its objections to the permit by failing to raise them in its comments on the draft permit. App. 190-93. In reply, the United States argued that the HWA and its regulations do not require issue-exhaustion. App. 195-98. It further argued that, while federal courts in certain circumstances require issue exhaustion as a matter of common law, it would be improper to apply such a requirement against the United States here because the amended complaint raises purely legal issues and doing so would have the effect of subjecting the United States to permit terms that are not state "requirements" covered by RCRA's sovereign immunity waiver. App. 198-201.

A month later, the district court issued an order denying the parties' motions for summary judgment and dismissing this case on its own initiative. App. 202-20. Although NMED never argued that the district court lacked subject matter jurisdiction, the court raised the issue without giving notice to the parties and so concluded. App. 207-13. The district court found that the HWA vests exclusive jurisdiction for permit appeals in the New Mexico Court of Appeals, and that the state statute strips other courts (including the federal district courts) of jurisdiction to adjudicate them. App. 207-11. In the district court's view, Congress consented

9

to this exclusive avenue of state court review through RCRA's waiver of sovereign immunity because New Mexico adopted the HWA under authority provided by Congress and because the RCRA waiver subjects the federal government to *all* state requirements, both substantive and procedural. App. 209 (citing 42 U.S.C. § 6961(a)). The district court also noted that federal courts do not generally sit in review of state administrative actions and that the United States has litigated state law issues in state courts in some past cases. App. 210-11.

The district court concluded that it did not have jurisdiction under 28 U.S.C. § 1331 (federal question) or 28 U.S.C. § 1345 (United States as plaintiff). App. 211-13. The district court found that federal-question jurisdiction was unavailable because the Air Force's amended complaint no longer invoked RCRA's waiver of federal sovereign immunity. App. 212. And the district court found that the United States could not invoke § 1345 jurisdiction because it concluded that this case falls within the statute's exception for cases when jurisdiction in another court has been "otherwise provided by Act of Congress." App. 212-13. The district court identified RCRA as such an Act, concluding that "Congress' general and qualified grant of jurisdiction in 28 U.S.C. § 1345 must give way to Congress' specific and unqualified waiver of sovereign immunity subjecting federal facilities to authorized state hazardous waste permitting

10

schemes," including the judicial review provisions in the state's program. App. 212.

The district court alternatively concluded that, if it had subject matter jurisdiction, it would decline to exercise that jurisdiction under the *Colorado River* doctrine. App. 213-16. The district court acknowledged that it had previously found *Colorado River* abstention inappropriate but decided to revisit the issue because one of the factors underlying that decision—the original complaint's affirmative invocation of sovereign immunity—was no longer applicable. App. 213. The district court now concluded that exercising jurisdiction would present a risk of "piecemeal litigation" in two ways. First, there was a risk of piecemeal litigation in the immediate case because the court might need to certify some state law issues to the state courts. App. 216. Second, there was also a risk of piecemeal litigation "over the long run" because exercising jurisdiction over state permits would allow a separate body of federal precedent to develop on HWA permits relevant only to the United States. App. 215-16. The district court also found it relevant that, in its view, state law provided the rule of decision because the HWA's version of the arbitrary-or-capricious standard of review would apply. App. 215.

Finally, despite finding that it lacked jurisdiction or would abstain from exercising it, the district court rejected the United States' argument that its

11

sovereign immunity prevented a court from applying a common-law issue exhaustion requirement against it. App. 216-20. The district court ultimately, however, left the forfeiture question to the state court of appeals. App. 219.

### D.    Post-judgment events

The United States filed this appeal. App. 222. For nearly two years, the parties unsuccessfully attempted to resolve this matter though mediation.[2]

Meanwhile, EPA has issued proposed rules listing PFAS as a hazardous constituent under RCRA regulations, *see* 89 Fed. Reg. 8606 (Feb. 8, 2024), and amending the regulatory definition of hazardous waste, for purposes of RCRA corrective action, to extend to substances that satisfy the statutory definition of hazardous wastes. In other words, EPA proposed to extend the corrective action obligation beyond those hazardous wastes that are "listed or identified" as such under EPA's hazardous waste regulations. *See* 89 Fed. Reg. 8598 (Feb. 8, 2024). EPA expects to issue a final rule listing PFAS as a hazardous constituent no earlier than July 2025. EPA also expects to issue a final rule amending the regulatory definition of hazardous waste no earlier than December 2024. If the EPA rules are finalized, they may allow NMED to regulate PFAS in its next permit to the Air Force, as the 2018 permit only has a 10-year term (App. 58). But, unless NMED takes action to amend the current permit, EPA's new rules, if finalized, would not

---

[2] The United States remains open to mediation.

impact the 2018 permit because permits must be consistent with the regulations in effect at the time of permit issuance. *See* 40 C.F.R. § 270.32(c).

## SUMMARY OF ARGUMENT

I.      The district court has subject-matter jurisdiction over this case because the United States is the plaintiff. Section 1345 provides district courts with jurisdiction over "all civil actions, suits or proceedings commenced by the United States," and the United States commenced this action.

The district court erred in holding that Congress "otherwise provided" jurisdiction exclusively to state courts in RCRA. RCRA requires federal agencies to comply with state procedural requirements, but the HWA's assignment of jurisdiction to state courts of appeals to review state permits is not such a requirement. The district court misunderstood the concept of state procedural requirements, and, in any event, there is a high bar for finding that another statute strips federal courts of their jurisdiction. Section 1345, RCRA, and the HWA easily can be reconciled: they provide *concurrent* jurisdiction over challenges to state permits brought by the United States.

II.     The district court abused its discretion in abstaining from exercising § 1345 jurisdiction. *Colorado River* allows the district court to abstain from exercising its jurisdiction only in "exceptional circumstances," and there is nothing exceptional about this challenge by the United States to the terms of a state permit.

13

In reaching the opposite conclusion, the district court misapplied the relevant factors and therefore committed a per se abuse of discretion. Moreover, by declining to decide the fully briefed federal case at the expense of reactivating the long-dormant state-court litigation, the district court's dismissal wastes judicial resources contrary to the efficiency principle at the core of *Colorado River*.

## STANDARDS OF REVIEW

I.      This Court reviews dismissals for lack of subject-matter jurisdiction de novo. *See Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006).

II.      This Court reviews district-court decisions regarding abstention under the *Colorado River* doctrine for abuse of discretion, applying the relevant standard for the exercise of that discretion as prescribed by the Supreme Court. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983); *D.A. Osguthorpe Family P'ship* v. *ASC Utah, Inc.*, 705 F.3d 1223, 1231 n.11 (10th Cir. 2013). That standard grants district courts the discretion to abstain from exercising their subject-matter jurisdiction only in "exceptional circumstances," as elucidated by the factors discussed in *Colorado River*. *See Moses H.*, 460 U.S. at 19. A court abuses its discretion as a matter of law when it misapplies the requisite factors. *See Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004).

14

**ARGUMENT**

## I.     The district court has jurisdiction under 28 U.S.C. § 1345.

Article III extends the jurisdiction of federal courts to all "[c]ontroversies to which the United States [is] a party." U.S. Const. Art. III, § 2. Consistent with this principle, Congress has granted original jurisdiction to federal district courts over "*all* civil actions, suits or proceedings commenced by the United States." 28 U.S.C. § 1345 (emphasis added). Because § 1345 provides district courts with subject-matter jurisdiction in *all* civil cases in which the United States is the plaintiff, the United States may "sue in the federal court irrespective of subject matter." *United States v. S. Florida Water Mgmt. Dist.*, 28 F.3d 1563, 1569 (11th Cir. 1994). This includes filing actions in federal court against a state for violations of state law. *Id.*; *see also United States v. California*, 328 F.2d 729, 738 (9th Cir. 1964) (holding that § 1345 "vests jurisdiction in district courts over suits by the United States against a State"); *United States v. Morros*, 268 F.3d 695, 708 (9th Cir. 2001) ("When asserting a superior federal interest against a state, the forum of choice for the federal government is the federal court."). Indeed, NMED never argued that the district court lacked jurisdiction under § 1345. The district court so concluded *sua sponte.* That conclusion, made without the benefit of briefing, was in error.

15

### A. Congress has not withdrawn § 1345 jurisdiction.

Exceptions to § 1345's grant of jurisdiction may be found "as otherwise provided by Act of Congress." 28 U.S.C. § 1345. But the Supreme Court has recognized that the standard for stripping jurisdiction under this language in § 1345 is high. *See Colorado River*, 424 U.S. at 808-09. Some other federal statute must affirmatively express an intent to displace § 1345 jurisdiction or else be "irreconcilable" with that jurisdiction before it will be read as establishing an exception. *Id.* at 808. As the Supreme Court has explained, "[w]hen there are statutes clearly defining the jurisdiction of the courts the force and effect of such provisions should not be disturbed by a mere implication flowing from subsequent legislation." *Id.* (internal quotations and citations omitted). "In the absence of some affirmative showing of an intention to repeal" § 1345, "the only permissible justification for a repeal by implication is when" another statute is "irreconcilable" with § 1345. *Id.* And the mere fact that a statute vests jurisdiction over a claim in state courts is insufficient, because "[t]here is no irreconcilability in the existence of concurrent state and federal jurisdiction." *Id.* at 809.

The district court concluded that, in enacting RCRA § 6961(a), Congress divested federal courts of their jurisdiction in suits brought by the United States by requiring federal facilities to "comply with, all Federal, State, interstate, and local requirements, both substantive and procedural." App. 209, 212 (discussing 42

16

U.S.C. § 6961(a)). But notably, there is no language in § 6961(a) that expressly repeals § 1345 jurisdiction in RCRA cases, or even that discusses jurisdiction (or the judiciary) at all. Thus, the district court's apparent rationale for concluding that § 1345 "must give way" to RCRA is that § 6961(a)'s requirement for all federal facilities to adhere to state procedural requirements constitutes an implied repeal or that the two statutes irreconcilably conflict. But that conclusion is incorrect given the "long-settled notion that implied repeals are not lightly to be indulged" and "that statutes should be read consistently when possible." *United States v. Puerto Rico*, 721 F.2d 832, 836 (1st Cir. 1983) (internal citations omitted); *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018). It is well-established that "jurisdiction is not defeated by implication." *Galveston, Harrisburg & San Antonio Ry. Co. v. Wall*ace, 223 U.S. 481, 490 (1912); *see also Rosecrans v. United States*, 165 U.S. 257, 263 (1897) (a court may not read a statute to "destroy a jurisdiction otherwise clearly existing, by mere inferences and doubtful construction.").

RCRA case law reveals that "procedural" requirements do not refer to the forum for judicial review. They refer to those requirements by which the substantive standards are implemented, "including permit requirements, reporting and monitoring duties, and submission to state inspections." *United States v. New Mexico*, 32 F.3d 494, 497 (10th Cir. 1994) (quoting *Parola v. Weinberger*, 848 F.2d 956, 961 (9th Cir. 1988)). There is no indication that Congress intended the

17

phrase "procedural requirements" to mandate that the United States as the plaintiff *must* file challenges to state permits only in state courts. Even where Congress has consented to suit in state courts,[3] that does not mean such permission equates to a mandate that state court jurisdiction is exclusive. "[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974); *United States v. Colorado*, 990 F.2d 1565, 1575 (10th Cir. 1993).

The fundamental problem with the district court's analysis is that it incorrectly assumes that Congress intended its use of the phrase "procedural requirements" to make state court litigation *exclusive* when there is another way—indeed, a much more natural way—to read that phrase so that it is consistent with § 1345. *See Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 468 (1982); *Morton*, 417 U.S. at 551. Reading RCRA and § 1345 consistently provides *concurrent* state and federal jurisdiction when the United States challenges a permit under state law. This reading not only comports with the maxim that

---

[3] For example, Congress in RCRA did submit federal entities to concurrent federal and state court jurisdiction for the enforcement of injunctive relief. *See* 42 U.S.C. § 6961(a). But this provision applies to federal entities as defendants (and not plaintiffs) and thus does not address the circumstances of § 1345, nor show that the two statutes cannot coexist. *See North Carolina v. United States*, 7 F.4th 160 (4th Cir. 2021).

statutes should be read consistently when possible but also with the "'general rule that the grant of jurisdiction to one court does not, of itself, imply that the jurisdiction is to be exclusive.'" *Mims v. Arrow Fin. Servs*., LLC, 565 U.S. 368, 380 (2012) (quoting *United States v. Bank of New York & Tr. Co*., 296 U.S. 463, 479 (1936)); *Gulf Offshore Co. v. Mobil Oil Corp*., 453 U.S. 473, 477-78 (1981) (stating that state and federal courts have concurrent jurisdiction over constitutional or federal claims); *Christner v. Poudre Val. Co-op. Ass'n*, 235 F.2d 946, 950 (10th Cir. 1956) (same).

Reading these statutes to confer concurrent jurisdiction mirrors the mode of analysis in *Colorado River*. There, the Supreme Court held that by enacting the McCarran Amendment (subjecting the United States to state water-rights adjudications), Congress did not repeal federal courts' jurisdiction to entertain water rights suits brought by the United States under § 1345. 424 U.S. at 808-09. The district court here cited the McCarran Amendment as an example of Congress forcing the United States to litigate an issue in state courts. App. 211 (citing 43 U.S.C. § 666). But exactly the opposite is true. As *Colorado River* held the McCarran Amendment provides "jurisdiction in the state courts *concurrent* with jurisdiction in the federal courts over controversies involving federal rights to the use of water." *Id*. at 809 (emphasis added); *see also id.* ("there is no

19

irreconcilability in the existence of concurrent state and federal jurisdiction"). The same is true with RCRA § 6961(a).

Moreover, the district court cited *no* instances where Congress has repealed § 1345 jurisdiction, granting *exclusive* jurisdiction to state courts when the United States is the plaintiff. Even the McCarran Amendment discussed in *Colorado River* did not divest the federal district court of subject-matter jurisdiction in favor of state courts—the legislation prohibited only the spending of federal funds on the litigation, which the Supreme Court held did not implicitly repeal § 1345. 424 U.S. at 807-08.

The cases discussed by the district court as examples of Congress assigning original jurisdiction to other courts involve assigning original *and exclusive* jurisdiction to federal courts of appeals. App. 208-09 (citing *Eglin v. Dep't of Treasury*, 567 U.S. 1 (2012); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994); and *People Inc. v. Iancu*, 971 F.3d 1355 (Fed. Cir. 2020)). Each statute explicitly provided "exclusive" jurisdiction to a particular court. *See Eglin*, 567 U.S. at 6 (citing 28 U.S.C. § 1295: "The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction"); *Thunder Basin*, 510 U.S. at 208 (citing 30 U.S.C. § 816: "the jurisdiction of the court shall be exclusive"); and *People*, 971 F.3d at 1362 (citing 35 U.S.C. § 141(c): a party may appeal "*only* to the United States Court of Appeals for the Federal Circuit") (emphasis added)).

Yet RCRA § 6961(a) is a waiver of sovereign immunity and not a judicial review provision. As such, that provision contains no similar language providing any court—let alone a state court—with exclusive jurisdiction.

The district court failed to apply the high standard for jurisdiction-stripping statutes, asking instead whether it is "fairly discernible in the statutory scheme" whether Congress intended state courts to have exclusive jurisdiction. App. 208, 210. But the "fairly discernible" standard applies in "cases involving delayed judicial review of final agency actions." *Thunder Basin*, 510 U.S. at 207. The question in those cases is whether a party aggrieved by final agency action must exhaust administrative remedies—and otherwise follow a statute's structure for obtaining judicial review of final agency action—before bringing a pre-enforcement lawsuit seeking injunctive relief or bringing constitutional claims. *See generally id*. at 202-16; *Eglin*, 567 U.S. at 9-20. That question and the "fairly discernable" standard thus have no relevance here.[4]

There is no prior case law specifically addressing § 6961(a)'s effect on § 1345 jurisdiction in RCRA cases. But the Clean Water Act (CWA) contains a provision directly analogous to RCRA § 6961(a), which similarly subjects the United States to "all Federal, State, interstate, and local requirements," including

---

[4] The district court's reliance on this standard is further misplaced because New Mexico's regulations do not provide an opportunity for an administrative appeal. *See* N.M. Stat. Ann. § 74-4-14(A); N.M. Admin. Code § 20.4.1.901.H.

"substantive and procedural" "requirement[s]." 33 U.S.C. § 1323(a). In addressing

CWA § 1323(a), the First Circuit held that it does not foreclose the United States

from challenging state administrative actions in federal court under § 1345. *See*

*Puerto Rico*, 721 F.2d at 836-38; *see also United States v. Ill. Pollution Control*

*Bd.*, 17 F. Supp. 2d 800, 803-04 (N.D. Ill. 1998); *cf. North Carolina v. United*

*States*, 7 F.4th 160, 164 (4th Cir. 2021) (provision of federal Clean Air Act

authorizing states to sue federal agencies in state court "capable of coexistence"

with a federal statute allowing federal agencies to remove cases filed in state court

to federal court). In so holding, the First Circuit examined the text and legislative

history of the CWA's sovereign immunity waiver and found no indication that this

waiver amounted to an implied repeal of jurisdiction under § 1345. *See Puerto*

*Rico*, 721 F.2d at 836-38. The First Circuit also noted that there is no irreconcilable

conflict between § 1345 and the CWA's sovereign immunity waiver because the

CWA itself clearly contemplates that federal courts can and will apply state law

requirements in some circumstances. *Id.* at 838.

The First Circuit's reasoning with respect to the CWA in *Puerto Rico* is

directly analogous to RCRA. The sovereign immunity waivers in both the CWA

and RCRA use nearly identical language when subjecting federal agencies to state

substantive and procedural requirements. *Compare* 33 U.S.C. § 1323(a); *with* 42

22

U.S.C. § 6961(a).[5] The legislative history of RCRA and the CWA indicates that Congress' reference to state "procedural" requirements has the same meaning in both statutes, referring to those requirements by which the substantive standards are implemented and not the forum for judicial review. *See Parola*, 848 F.2d at 961. And like the CWA, RCRA contemplates that federal district courts will apply and enforce state law in some circumstances. *See* 42 U.S.C. § 6967(a) (providing that citizen suits alleging violations of requirements under RCRA, including requirements of states' approved programs, shall be brought in federal district court). *Puerto Rico* thus supports the invocation of § 1345 here and demonstrates the clear flaws in the district court's analysis.

In finding the CWA did not repeal § 1345 jurisdiction, the First Circuit placed some weight on another CWA provision allowing the United States to remove enforcement actions brought in state court to federal court. 721 F.2d at 837-38. There is no similar removal provision in RCRA. But removal applies only where a party is on *defense*. Section 1345 applies when the United States is on *offense*. Thus, the lack of a removal provision is irrelevant to what forum the

---

[5] The underlying territorial statute was also like the HWA. *See United States v. Puerto Rico*, 551 F. Supp. 864, 865 n.2 (D.P.R. 1982) (quoting the Puerto Rican statute: "Any party adversely affected by an order of [the Environmental Quality Board of Puerto Rico] may, within thirty (30) days following notice thereof, seek review of said order by filing an action in the Superior Court of Puerto Rico, San Juan Part.").

government may chose as a plaintiff. And, even if the United States were on defense, removal would be proper under 28 U.S.C. § 1442, which supports the exercise of jurisdiction because it would be unusual for Congress to make a federal forum available to the United States as a defendant but not as a plaintiff. *See North Carolina*, 7 F.4th at 164. Moreover, while the First Circuit found the removal provision of the CWA further supported its conclusion, as discussed above, it identified many other compelling reasons for holding that the CWA did not repeal § 1345 jurisdiction, and those reasons are equally applicable to RCRA in this case.

**B.    The HWA does not provide for exclusive state-court review and, regardless, a state statute cannot override federal law.**

In concluding that the state court of appeals is the exclusive forum for challenging a state-issued permit, the district court relied heavily on the language of the HWA provision authorizing appeal to the New Mexico Court of Appeals. App. 207-08. The HWA provision states that "[a]ny person who is or may be affected by any final administrative action of the board or the secretary *may* appeal to *the court of appeals* for further relief." N.M. Stat. Ann. § 74-4-14A (emphasis added). That provision is best understood as simply specifying which court w*ithin New Mexico's judicial system* is authorized to adjudicate challenges to NMED permits. But notably, the New Mexico statute does not address whether the United States may rely on § 1345 jurisdiction to bring suit in a federal forum. And it would be odd for the New Mexico legislature either to authorize or to preclude

24

federal-court adjudication of such challenges, since defining the scope of federal judicial authority is a task for Congress, not the states. *See Palmore v. United States*, 411 U.S. 389, 401 (1973).

Indeed, the HWA does not evince any strong interest in exclusive state court review. The district court assumed such an interest only because the HWA does not itself authorize review of its permits in federal court. *See* App. 208 ("No court other than the New Mexico Court of Appeals is contemplated."). But the state statute could not create federal-court jurisdiction, so the absence of language attempting to do so tells us nothing. On the other hand, § 1345 is clear: its jurisdiction-conferring language applies to "*all* civil actions . . . commenced by the United States." 28 U.S.C. § 1345 (emphasis added). Thus, even if the HWA did attempt to deprive federal courts of their jurisdiction, § 1345's application to *all* civil actions would trump New Mexico's statute under the Supremacy Clause. *See Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 630 (10th Cir. 1998) (a federal statute trumps any contradictory state law through the operation of the Supremacy Clause). And the HWA plainly cannot fall into § 1345's exception to federal jurisdiction when "otherwise provided by Act of Congress," because it is not an Act of Congress.[6]

---

[6] That Congress allows for state administration of RCRA with EPA approval is similarly unavailing because, among other reasons, EPA did not approve the state

Likewise, because New Mexico consented to suit by the United States on its admission to the Union, any jurisdictional or other limits that New Mexico puts on its waivers of sovereign immunity do not apply to the United States. *See United States v. California*, 328 F.2d 729, 732 & n.8 (9th Cir. 1964). If there is a valid cause of action under state or federal law, the federal government is not limited to filing actions in the specific courts identified in state statutes. *See United States v. California*, 655 F.2d 914, 918 (9th Cir. 1980) ("The federal government, of course may sue a state in federal court under any valid cause of action, state or federal, even if the state attempts to limit the cause of action to suits in state courts only."); *see also United States v. Nevada Tax Commission*, 439 F.2d 435, 438 (9th Cir. 1971) (holding that Nevada statutes confining action seeking recovery of taxes paid under protest to the state courts were not binding on the United States); *Barrett v. United States*, 853 F.2d 124, 130 (2d Cir. 1988) (holding "that where New York has waived sovereign immunity from liability for contribution, thus providing the United States with a valid claim under state law, neither the eleventh amendment nor any state law bars federal jurisdiction with respect to such a claim by the United States."). New Mexico's statute allowing appeals challenging state

---

judicial review procedures. *See* 40 C.F.R. § 272.1601(c)(2) (excluding N.M. Stat. Ann. § 74-4-14 and N.M. Admin. Code § 20.4.1.901 from EPA approval).

permits to be brought in the state court of appeals does not divest the federal courts of their jurisdiction.

The district court stated that the fact that "federal courts generally do not have jurisdiction over state administrative appeals" weighed in favor of its conclusion. App. 210 (citing *Chicago, R.I. & P.R.R. v. Stude*, 346 U.S. 574 (1954); *Trapp v. Goetz*, 373 F.2d 380 (10th Cir. 1966); *Allegheny Airlines, Inc. v. Pennsylvania Pub. Util. Comm'n*, 319 F. Supp. 407 (E.D. Pa. 1970)). But the district court's cited cases involve disputes between private parties or between private parties and state administrative agencies. None of the cases concerned a suit brought by the United States under § 1345. And *Stude*'s reasoning explained that a state law may not turn a federal district court into an appellate tribunal, *Stude*, 346 U.S. at 581, whereas here the United States invoked the court's jurisdiction under federal law. As just discussed, § 1345's plain text provides federal courts with jurisdiction when the United States is the plaintiff without regard to the origin of the cause of action as state or federal law.

The district court's concern that its exercise of § 1345 jurisdiction may create conflicts between the state and federal government is misplaced. App. 210. Courts sometimes consider such effects on federalism interests when deciding whether to abstain from exercising their jurisdiction in a lawsuit between private parties or between private parties and state administrative agencies. *See, e.g.*,

27

*Allegheny Airlines*, 319 F. Supp. at 413. But while federalism concerns may be relevant to an abstention analysis, such concerns have no relevance to the inquiry of whether a federal court has subject-matter jurisdiction in the first place. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 667-68 (10th Cir. 2020) ("when cases present circumstances implicating [abstention] doctrines, no question is raised as to the court's subject matter jurisdiction").

Moreover, even when abstention is at issue, the federalism dynamics change dramatically when the United States is a party. That is because in "a case in which the United States seeks relief against a state or its agency, the state and federal governments are in direct conflict before they arrive at the federal courthouse." *Morros*, 268 F.3d at 707-08. "[A]ny attempt to avoid a federal-state conflict would be futile." *Id.* at 708*; see also Trump v. Vance*, 941 F.3d 631, 637-38 (2d Cir. 2019) ("[T]he importance of preventing friction is reduced, when state and federal actors are already engaged in litigation."), *aff'd and remanded*, 591 U.S. 786 (2020) (internal citations and quotations omitted). "Recognition of this reality underlies legislative enactments . . . which [are] grounded in a congressional decision that federal officers, and indeed the Federal Government itself, require the protection of a federal forum." *Trump*, 941 F.3d at 637. This reality is further "reflected in the Supreme Court's observation that allowing federal actors to access federal courts is 'preferable in the context of healthy federal-state relations.'" *Id.* at

28

638 (quoting *Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 226 (1957)). Thus, when the federal government asserts a claim against a state, the federal court is a proper forum for the dispute. *Morros*, 268 F.3d at 708. Federalism principles therefore provide no basis for the district court to decline jurisdiction here.

Finally, the district court concluded that state courts have exclusive jurisdiction in part because the United States has voluntarily adjudicated a case previously in the New Mexico Court of Appeals. App. 208-11. But the Department of Justice's litigation decision to submit voluntarily to a state court's jurisdiction in one instance does not strip federal courts of their jurisdiction in future cases. "*Only* Congress may determine a lower federal court's subject-matter jurisdiction." *Elna Sefcovic*, 953 F.3d at 666 (internal quotations and citations omitted, emphasis in original). "And when Congress grants subject matter jurisdiction, no other entity— not the litigants and not the states—can divest a federal court of the same." *Id*. Case-specific litigation decisions are irrelevant.

***

In sum, the district court erred in concluding that it lacked subject-matter jurisdiction under § 1345.

## II.    There are no exceptional circumstances authorizing the district court to abstain from exercising 28 U.S.C. § 1345 jurisdiction.

Again acting *sua sponte*, the district court ruled that even if it had jurisdiction, it still would dismiss the federal case, abstaining in favor of the

29

dormant state case. App. 213-16. By refusing to exercise the jurisdiction Congress provided to it in the absence of exceptional circumstances, the district court committed a clear abuse of discretion. Indeed, the district court misapplied applied the relevant factors and thus committed a per se abuse of discretion.

"[F]ederal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Moses H.*, 460 U.S. at 15 (quoting *Colorado River*, 424 U.S. at 817). "The courts of the United States are bound to proceed to judgment . . . in every case to which their jurisdiction extends." *New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358 (1989) (*NOPSI*). This obligation is based on the "undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds." *NOPSI*, 491 U.S. at 359. Nevertheless, the Supreme Court has recognized that, in "exceptional circumstances," it may be appropriate for a federal district court to abstain from exercising jurisdiction out of deference to parallel state court proceedings. *Colorado River*, 424 U.S. at 817-19; s*ee also Moses H.*, 460 U.S. at 13-16, 19. This "extraordinary and narrow exception" to the general requirement that federal courts exercise the jurisdiction given to them is known as the *Colorado River* doctrine. *Colorado River*, 424 U.S. at 813.

The existence of parallel state court proceedings is a necessary, but not a sufficient, prerequisite to the exercise of *Colorado River* abstention. *See Fox v.*

*Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994). "The existence of proceedings in state court does not by itself preclude parallel proceedings in federal court." *Id.* (quoting *New Beckley Mining Corp. v. International Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991)). Only in "exceptional circumstances" does the existence of parallel state court proceedings justify abstention. *Id.*

The Supreme Court has articulated a nonexclusive list of factors for courts to consider in deciding whether "exceptional circumstances" exist: (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) the vexatious or reactive nature of either the federal or the state action; (6) whether federal law provides the rule of decision, and (7) the adequacy of the state court action to protect the federal plaintiff's rights. *See Fox*, 16 F.3d at 1082 (citing *Colorado River*, 424 U.S. at 818, and *Moses H.*, 460 U.S. at 18 nn.20, 23, 28). No single factor is dispositive; "[t]he weight to be given to any one factor may vary greatly from case to case." *Id.* (quoting *Moses H.*, 460 U.S. at 16). The decision whether to abstain depends on "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction" since "[o]nly the clearest of justifications will warrant dismissal." *Id.* (internal citations and quotations omitted).

31

The United States' ordinary challenge to a state permit does not meet the high bar for abstention. Abstention is appropriate only in exceptional cases, but this case is not exceptional. Indeed, by declining to decide the fully briefed federal case at the expense of reactivating the long dormant state court litigation, the district court's dismissal will waste judicial resources contrary to the principles at the core of *Colorado River.* The district court failed to heed the Supreme Court's direction that it must consider the designated factors "with the balance weighted heavily in favor of exercising jurisdiction." *Moses H*., 460 U.S. at 16.

### A.    The district court misapplied the "avoidance of piecemeal litigation" factor.

The district court primarily relied on the "avoidance of piecemeal litigation" factor. App. 215. But the district court misunderstood what types of "piecemeal litigation" the *Colorado River* doctrine is designed to avoid. *Colorado River* seeks to avoid "piecemeal litigation" in the sense of two independent courts reviewing the same underlying case and potentially reaching conflicting results. Thus, in prior cases, courts have abstained where there was cause for concern about conflicting adjudication of water rights in a single river system between the federal case and an ongoing state proceeding, *Colorado River*, 424 U.S. at 819-20, or where the parties had litigated extensively in state court for five years and one party filed a federal suit only after it received an unfavorable state-court ruling, *D.A. Osguthorpe*, 705 F.3d at 1234-35.

32

Here, there is no potential for conflict with the parallel state court case, which the United States filed *protectively*, and which was stayed at an early stage of the proceedings. Indeed, that state court proceeding presumably will never be adjudicated if this Court reverses the district court's dismissal and remands for further federal court proceedings. Nor is there any evidence of a strong federal policy that *all* challenges to permits should be tried in state courts. *See Morros*, 268 F.3d at 706-07 (citing *Ryan v. Johnson*, 115 F.3d 193, 197-98 (3d Cir. 1997)). And even more broadly, the possibility that a federal court might decide a state-law issue differently than a state court would decide it exists in nearly every state-law suit filed in federal court under § 1345, and, for that matter, in nearly every diversity suit filed in federal court under § 1332.

The district court concluded that there is a looming "threat" of piecemeal litigation here because there is some remote possibility that the court may need to certify questions about the HWA's standard of review or state common-law issue exhaustion to New Mexico's courts. App. 216 (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). As an initial matter, it is simply implausible that the district court would need to seek certification of either of these issues. A federal district court needs no guidance from state courts on how to apply a standard of review so closely analogous to the federal Administrative Procedure Act (APA). *See Puerto Rico*, 721 F.2d at 840 n.10 (cases involving routine applications of administrative

33

standards are not fit for abstention); *Citizens for Alternatives to Radioactive Dumping v. CAST Transp., Inc.*, 2004 WL 7338006, at \*18 (D.N.M. Sept. 30, 2004) (recognizing the similarity between the state and federal standards for obtaining judicial review of final administrative action). And NMED has largely invoked *federal* issue-exhaustion requirements, not state rules or state common law. App. 191.

The district court's citation to *Erie* underscores its misapplication of the law. *Erie* holds that, in diversity cases, federal courts must apply state substantive law and federal procedural law. *See Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017). But *Erie* does not apply when jurisdiction is based on § 1345. *See United States v. Mercantile Nat. Bank at Dallas*, 795 F.2d 492, 494 (5th Cir. 1986); *United States v. California*, 655 F.2d 914, 916 (9th Cir. 1980). This means that the district court is not strictly bound by state rules or common law on issue exhaustion, as in diversity suits. A federal district court is free to fashion a federal rule of decision when appropriate without certifying a question. But in any event, certification to a state court is not "piecemeal litigation" in the *Colorado River* sense of two independent courts reviewing the same underlying case and potentially reaching conflicting results.

Finally, the district court also suggested that the piecemeal-litigation factor extends to concerns about the possibility that over the long run, federal and state

34

courts could develop divergent precedents on HWA permitting issues as applied to the United States versus non-federal parties. App. 216. But cases applying the *Colorado River* doctrine have exclusively viewed the piecemeal-litigation factor through the lens of the immediate dispute between the currently litigating parties, not the effect on future cases. The district court's concern here resembles an overarching policy preference to avoid exercising jurisdiction over HWA permit cases concerning the United States. That policy concern plays no role in a court's deciding to abstain from its "virtually unflagging obligation … to exercise the jurisdiction given them." *D.A. Osguthorpe*, 705 F.3d at 1233. And, in any event, the possibilities for divergent state-federal precedent or certification of issues to state courts arise whenever a federal court must interpret state law; if those possibilities justified *Colorado River* abstention, then abstention would be the norm, not the exception. *See NOPSI*, 491 U.S. at 359 (abstention "remains the exception, not the rule"). The district court thus misapplied the piecemeal-litigation factor and, in so doing, committed a per se abuse of discretion. *See Shook*, 386 F.3d at 968 (court abuses its discretion when it misapplies the requisite factors).

    **B.**    **The district court further misunderstood that federal law also provides the rules of decision and overlooked the harm to the United States flowing from its decision to abstain.**

In combination with the "piecemeal litigation" factor, the district court mistakenly relied on two additional *Colorado River* factors to support its decision

35

to dismiss the federal case: (1) whether federal law provides the rule of decision, and (2) whether the state-court proceeding adequately protects the federal plaintiff's rights. App. 215-16. The district court misapplied these factors, providing a further basis for reversing its abstention ruling.

*First*, the district court took an improperly narrow view of the law governing this case, claiming that only state law provides the rules of decision. App. 215. In fact, rules of state and federal law intermingle in this case. One key substantive question is whether New Mexico's regulations (which incorporate the *federal* regulations) authorize the state to require corrective action for PFAS and other "contaminants." App. 40-41, 43. After all, an analysis of the outermost limits of the state's authority entails knowing RCRA's minimum requirements for the federally-approved permitting program. Also, NMED's position on this underlying question of substantive law depends in part on *federal* issue exhaustion. App. 190-93. The United States responded that resolving that question depends in part on the court's interpretation of the *federal* government's waiver of sovereign immunity in RCRA. App. 199-201. But even the *state* standard of review that the district court relied on from the HWA is an "arbitrary or capricious" standard that borrows directly from the *federal* APA. *See Citizens for Alternatives*, 2004 WL 7338006, at *18 (ruling that review of NMED permit-appeals in state court is "based on the

36

administrative record and a standard of review similar to that provided in Section

706 of the Administrative Procedure Act (APA).").

*Second*, the district court misstated the test for the adequacy of the state-

court proceedings as evaluating "whether the state-court proceedings adequately

protect the *litigants'* rights." App. 215 (emphasis added). More accurately, the test

evaluates adequacy solely from the perspective of the *federal plaintiff. See Fox*, 16

F.3d at 1082 (courts should consider "the adequacy of the state court action to

protect the federal plaintiff's rights"). This focus on the plaintiff's rights makes

sense because it is the plaintiff's choice of forum that a court is setting aside when

it abstains from exercising the jurisdiction Congress otherwise conferred upon it.

And as noted above, this focus on the plaintiff's choice of forum is particularly

warranted when the plaintiff is the United States.

Other than misstating the test, the district court did not explain why the

adequacy-of-state-court-proceedings factor weighs in favor of abstention. If

anything, this factor weighs *against* abstention because the state-court proceeding

provides a less adequate forum for protecting the United States' rights.[7] For

example, the United States has a statutory right to appeal a final decision of the

---

[7] The United States filed suit contemporaneously in state court as a protective
matter because, as mentioned at p. 21, there is no prior case law directly on point.
But plaintiffs generally are masters of their complaints and have a right to choose
among available forums. That right should not be lost simply because a plaintiff
acts out of an abundance of caution to protect their rights.

federal district court. *See* 28 U.S.C. § 1291. There is no such right of review of a state court of appeals' decision—review is only discretionary on a writ of certiorari to the New Mexico Supreme Court. *See* N.M. R. App. P. 12-502. Moreover, the grounds for discretionary review are sharply circumscribed and limited to significant constitutional questions, issues of substantial public interest, and direct conflicts with prior decisions. *Id.* at 12-502(C)(2)(d). Errors that do not satisfy such criteria go uncorrected. That disadvantages the United States' suit.

The inadequacy-of-the-state-forum factor has particular significance where, as here, the federal plaintiff is the United States. As discussed, both the Constitution and Congress have conferred the federal courts with original jurisdiction to adjudicate all civil actions in which the United States is the plaintiff. This reflects a policy that for the United States "and its agencies, the federal courts are the forum of choice." *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 147 (1971); *see also Morros*, 268 F.3d at 708 ("When asserting a superior federal interest against a state, the forum of choice for the federal government is the federal court."); *see also supra* pp. 28-29. It also reflects the policy view that the Federal Government itself requires the protection of a federal forum and that "access [to] federal courts is preferable in the context of healthy federal-state relations." *Trump*, 941 F.3d at 637-38 (internal citations and quotations omitted). In *sua sponte* abstaining from exercising its jurisdiction under § 1345, the district court ignored the congressional

38

weighting of federalism interests, deprived the United States of its choice of forum in a manner that disadvantages its suit, and abused its discretion.

### C. The other factors also show that the district court abused its discretion by not exercising its subject-matter jurisdiction.

None of the other *Colorado River* factors weigh in favor of abstention. Neither court has assumed jurisdiction over any property. The federal forum is equally convenient geographically to the state forum, as both sit in Albuquerque. The courts obtained jurisdiction virtually at the same time on January 17, 2019, and the state court case was soon stayed. Thus, "the federal suit was running well ahead of the state suit at the very time that the [d]istrict [c]ourt decided to refuse to adjudicate the case," which weighs heavily in favor of the federal court maintaining jurisdiction. *Moses H.,* 460 U.S. at 21-22. And, because of this timing and stay, neither the state nor federal suit is of a vexatious or reactive nature. These factors are at a minimum neutral or favor the federal court maintaining jurisdiction, meaning that their overall balance weighs heavily in favor of the federal district court exercising its jurisdiction since "only the clearest of justifications will warrant dismissal" under *Colorado River*. 424 U.S. at 819.

Contrast this case with one in which this Court held that the district court appropriately abstained from exercising jurisdiction under *Colorado River*. In *D.A. Osguthorpe*, the parties had litigated extensively in state court for five years and filed a federal suit only after one party received an unfavorable state-court ruling.

39

705 F.3d at 1234-35. Those are the type of truly exceptional circumstances that *Colorado River* anticipates, and which are entirely lacking here.

This case is the opposite. By declining to decide the fully briefed federal case at the expense of reactivating the long-dormant state-court litigation that had been stayed throughout the federal case, the district court's dismissal will waste judicial resources, contrary to the efficiency considerations at the core of the *Colorado River* doctrine. *See id.* at 1233 ("*Colorado River* concerns itself with efficiency and economy. Its goal is to preserve judicial resources.") (internal quotations and citation omitted). It will force the parties and the New Mexico Court of Appeals to waste resources by reactivating the state court litigation, filing the record, restarting the motions practice, briefing the merits a second time, and potentially arguing the case. The district court should have decided these questions when they were ready for decision in federal court, rather than punting them to the state forum, where the litigation was dormant.

***

In sum, the district court abused its discretion as a matter of law by misapplying the relevant factors and by not fulfilling its virtually unflagging obligation to exercise the jurisdiction Congress gave it under § 1345 when the United States is the plaintiff.

40

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed and the case remanded for additional proceedings.

Respectfully submitted,

/s/ *Allen M. Brabender*
TODD KIM
*Assistant Attorney General*

ALLEN M. BRABENDER
*Attorney*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 514-5316
allen.brabender@usdoj.gov

October 28, 2024
DJ # 90-7-3-21406

## STATEMENT REGARDING ORAL ARGUMENT

Though deferring to the Court's judgment on the matter, the United States believes that oral argument would be useful to the Court because of the importance of the jurisdictional issues presented.

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this document contains 9,605 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ *Allen M. Brabender*
ALLEN M. BRABENDER
Counsel for the United States

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1)    all required privacy redactions have been made per 10th Cir. R. 25.5;

(2)    if required to file additional hard copies, that the ECF submission is an exact copy of those documents; and

(3)    the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, and according to the program are free of viruses.

/s/ *Allen M. Brabender*
ALLEN M. BRABENDER
Counsel for the United States

44

## ADDENDUM

33 U.S.C. § 1323(a). ...........................................................................................2a

42 U.S.C. § 6961(a) ...........................................................................................4a

N.M. Stat. Ann. § 74-4-14 ...............................................................................6a

**33 U.S. Code § 1323 - Federal facilities pollution control**

**(a)** Compliance with pollution control requirements by Federal entities. Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants, and each officer, agent, or employee thereof in the performance of his official duties, shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement, whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law. Nothing in this section shall be construed to prevent any department, agency, or instrumentality of the Federal Government, or any officer, agent, or employee thereof in the performance of his official duties, from removing to the appropriate Federal district court any proceeding to which the department, agency, or instrumentality or officer, agent, or employee thereof is subject pursuant to this section, and any such proceeding may be removed in accordance with 28 U.S.C. 1441 et seq. No officer, agent, or employee of the United States shall be personally liable for any civil penalty arising from the performance of his official duties, for which he is not otherwise liable, and the United States shall be liable only for those civil penalties arising under Federal law or imposed by a State or local court to enforce an order or the process of such court. The President may exempt any effluent source of any department, agency, or instrumentality in the executive branch from compliance with any such a requirement if he determines it to be in the paramount interest of the United States to do so; except that no exemption may be granted from the requirements of section 306 or 307 of this Act [33 USCS § 1316 or 1317]. No such exemptions shall be granted due to lack of appropriation unless the President shall have specifically requested such appropriation as a part of the budgetary process and the Congress shall have failed to make available such requested appropriation. Any exemption shall be for a period not in excess of one year, but additional exemptions may be granted for periods of not to exceed one year upon the President's making a new determination. The President shall report each January to

2a

the Congress all exemptions from the requirements of this section granted during the preceding calendar year, together with his reason for granting such exemption. In addition to any such exemption of a particular effluent source, the President may, if he determines it to be in the paramount interest of the United States to do so, issue regulations exempting from compliance with the requirements of this section any weaponry, equipment, aircraft, vessels, vehicles, or other classes or categories of property, and access to such property, which are owned or operated by the Armed Forces of the United States (including the Coast Guard) or by the National Guard of any State and which are uniquely military in nature. The President shall reconsider the need for such regulations at three-year intervals.

**42 U.S.C. § 6961. Application of Federal, State, and local law to Federal facilities**

**(a)** In general. Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for permits or reporting or any provisions or injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal and management in the same manner, and to the same extent, as any person is subject to such requirements, including the payment of reasonable service charges. The Federal, State, interstate, and local substantive and procedural requirements referred to in this subsection include, but are not limited to, all administrative orders and all civil and administrative penalties and fines, regardless of whether such penalties or fines are punitive or coercive in nature or are imposed for isolated, intermittent, or continuing violations. The United States hereby expressly waives any immunity otherwise applicable to the United States with respect to any such substantive or procedural requirement (including, but not limited to, any injunctive relief, administrative order or civil or administrative penalty or fine referred to in the preceding sentence, or reasonable service charge). The reasonable service charges referred to in this subsection include, but are not limited to, fees or charges assessed in connection with the processing and issuance of permits, renewal of permits, amendments to permits, review of plans, studies, and other documents, and inspection and monitoring of facilities, as well as any other nondiscriminatory charges that are assessed in connection with a Federal, State, interstate, or local solid waste or hazardous waste regulatory program. Neither the United States, nor any agent, employee, or officer thereof, shall be immune or exempt from any process or sanction of any State or Federal Court with respect to the enforcement of any such injunctive relief. No agent, employee, or officer of the United States shall be personally liable for any civil penalty under any Federal, State, interstate, or local solid or hazardous waste law with respect to any act or omission within the scope of the official duties of the agent, employee, or officer. An agent, employee, or officer of the United States shall be subject to any criminal sanction (including, but not limited to, any fine or imprisonment) under any Federal or State solid or hazardous waste law, but no department, agency, or instrumentality of the executive, legislative, or judicial branch of the Federal Government shall be subject to any such sanction. The President may exempt any solid waste

management facility of any department, agency, or instrumentality in the executive branch from compliance with such a requirement if he determines it to be in the paramount interest of the United States to do so. No such exemption shall be granted due to lack of appropriation unless the President shall have specifically requested such appropriation as a part of the budgetary process and the Congress shall have failed to make available such requested appropriation. Any exemption shall be for a period not in excess of one year, but additional exemptions may be granted for periods not to exceed one year upon the President's making a new determination. The President shall report each January to the Congress all exemptions from the requirements of this section granted during the preceding calendar year, together with his reason for granting each such exemption.

**N.M. Stat. Ann. § 74-4-14. Administrative actions; judicial review.**

**A.** Any person who is or may be affected by any final administrative action of the board or the secretary may appeal to the court of appeals for further relief within thirty days after the action. All appeals shall be upon the record before the board or the secretary.

**B**. For appeals of regulations, the date of the action shall be the date of filing of the regulation under the State Rules Act [14-4-1 NMSA 1978].

**C.** Upon appeal, the court of appeals shall set aside the action only if it is found to be:

**(1)** arbitrary, capricious or an abuse of discretion;
**(2)** not supported by substantial evidence in the record; or
**(3)** otherwise not in accordance with law.

**D**. A stay of enforcement of the action being appealed may be granted after hearing and upon good cause shown:

**(1)** by the board or the secretary, whichever took the action being appealed; or
**(2)** by the court of appeals if the board or the secretary denies a stay or fails to act upon an application for a stay within sixty days after receipt.

Appellate Case: 22-2132   Document: 25   Date Filed: 10/28/2024   Page: 62

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                              Case No. 19-CV-46 KG/SMV

NEW MEXICO ENVIRONMENT
DEPARTMENT, and JAMES KENNEY,
Secretary (in his official capacity),

      Defendants.

MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment. Plaintiff United States first filed its Motion for Summary Judgment. (Doc. 58). Defendants New Mexico Environment Department and James Kenney, Secretary, responded and cross-motioned for summary judgment. (Doc. 59). Both parties, in turn, replied. (Docs. 60, 61). The Court, having considered the briefing and the applicable law, construing the matter as a state administrative appeal, and finding the New Mexico Hazardous Waste Act requires the case go before the New Mexico Court of Appeals, denies both motions and dismisses the case without prejudice.

I.    *Background*

This case ascends from the runways of Cannon Air Force Base ("Cannon AFB" or "the Base") near Clovis, New Mexico, where the Air Force uses hazardous perfluoroalkyls chemicals, commonly referred to as PFAS, to extinguish jet fuel fires. The United States challenges certain terms in a hazardous waste permit issued by the New Mexico Environment Department (NMED) for violating the New Mexico Hazardous Waste Act (HWA), NMSA § 74-4-1 *et seq.*, and its implementing regulations.

1

The Federal Government has recognized that PFAS have the following potential detrimental effects, among others, on humans and animals: increased cancer risk, liver damage, decreased fertility, heightened risk of asthma and thyroid disease, higher cholesterol, and a decreased antibody response to vaccines. Agency for Toxic Substances and Disease Registry, U.S. Department of Health and Human Services, Toxicology Profile for Perfluoroalkyls (2021), available at https://www.atsdr.cdc.gov/ToxProfiles/tp200.pdf.[1]  Indeed, the Air Force acknowledged the Environmental Protection Agency's drinking water health advisory related to PFAS during the permitting process in this case. Administrative Record at 45, (Doc. 49) Ex. 3 at 45.

That Cannon AFB uses and disposes of PFAS is not in dispute—the underlying administrative record extensively covers releases of PFAS at the Base. AR 34–131; 686–10558. Around Cannon AFB, PFAS runoff has reportedly created a "plume" in the groundwater system, effectively destroying local dairy operations. Theresa Davis, *Cannon PFAS Destroyed Longtime Clovis Farmer's Dairy*, Albuquerque Journal, May 29, 2022, at https://www.abqjournal.com/2503560/cannon-pfas-destroyed-longtime-clovis-farmers-dairy.html.  PFAS has also appeared in Clovis' municipal drinking water. Press Release, New Mexico Environment Department, PFAS Detected in Clovis Public Drinking Water System (Feb. 10, 2020), available at https://www.env.nm.gov/wp-content/uploads/2020/02/2020-02-10-Clovis-PR-final.pdf.

The Resource Conservation and Recovery Act (RCRA) is the primary federal statute regulating disposal of solid and hazardous waste. 42 U.S.C. § 6901 *et seq.*  New Mexico can

---

[1] The court takes judicial notice of this and other facts. *See Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T[he court is permitted to take judicial notice of . . . facts which are a matter of public record") abrogated on other grounds, *McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).

regulate a federal installation like Cannon AFB because RCRA allows the EPA to authorize a state to enforce its own hazardous waste program in lieu of the federal program. 42 U.S.C. § 6926(b). New Mexico is one such state which has been authorized to manage its own program, codified in the state's Hazardous Waste Act. *See also* 40 C.F.R. § 272.1601 (authorizing the New Mexico hazardous waste program); NMAC § 20.4.1 (HWA implementing regulations).

In conjunction with that authorization, RCRA also contains an explicit waiver of federal sovereign immunity, making federal facilities "subject to" state requirements, "both substantive and procedural[,]… in the same manner, and to the same extent, as any person is subject to such requirements." 42 U.S.C. § 6961(a); *cf. United States v. Washington*, 142 S. Ct. 1976, 1982 (2022) ("The Constitution's Supremacy Clause generally immunizes the Federal Government from state laws that directly regulate or discriminate against it. Congress, however, can authorize such laws by waiving this constitutional immunity." (internal citations omitted)).

States are empowered to regulate above and beyond RCRA, which merely establishes minimum standards. 42 U.S.C. §§ 6926, 6929; 40 C.F.R. § 271.1(i) ("nothing in this subpart precludes a State from…[a]dopting or enforcing requirements which are more stringent or more extensive than those required under this subpart."); *United States v. State of Colorado*, 990 F.2d 1565, 1569 (10th Cir. 1993) ("RCRA sets a floor not a ceiling for state regulation of hazardous wastes.").[2]

---

[2] At the time the Permit was issued, the HWA, NMSA § 74-4-4(A), required the New Mexico Environmental Improvement Board to promulgate regulations "equivalent to and <u>no more</u> stringent than federal regulations." 2010 N.M. Laws ch. 27 § 2 (emphasis added). In 2021, however, the legislature amended the HWA such that § 74-4-4(A) now requires the Board to adopt rules "that are equivalent to and <u>at least as</u> stringent as federal regulations." 2021 N.M. Laws ch. 133, § 3 (emphasis added).

3

Appellate Case: 22-2132   Document: 25   Date Filed: 10/28/2024   Page: 64

RCRA mandates that hazardous waste permits, like the one at issue in this case, require "corrective action for all releases of hazardous waste or constituents from any solid waste management unit[.]" 42 U.S.C. § 6924(u). HWA incorporates the same requirement. NMSA § 74-4-4.2(B) ("Hazardous waste permits shall require corrective action for all releases of hazardous waste or constituents....."). According to this legal authority, and against the backdrop of PFAS's known use and harmful impacts, when NMED renewed Cannon AFB's hazardous waste permit, it included PFAS as a hazardous waste requiring corrective action. Permit at § 1.12, AR 011349, (Doc. 49) Ex. 21 at 213.

The United States initiated this lawsuit to challenge that definition of hazardous waste. Critically, the nature of that challenge has evolved over the course of the litigation. Originally, the United States alleged that the Permit's definition of hazardous waste exceeded the scope of Congress' waiver of sovereign immunity in 42 U.S.C. § 6961(a). (Doc. 1) at ¶ 22. NMED filed a Motion to Dismiss, arguing for abstention in favor of the parallel state case[3] and testing the sufficiency of the Complaint generally. (Doc. 4) at 4–9. The Court denied the Motion, reasoning at that time that the abstention doctrines did not apply, the United States stated a plausible claim, and the Court had proper jurisdiction all because the important federal question—sovereign immunity—prevailed. *See generally* (Doc. 26); *also*, *id.* at 15 ("[T]he issue in this case will involve consideration of federal law in interpreting the contours of RCRA's waiver of sovereign immunity[.]").

Subsequently, the United States filed an Amended Complaint which substantially changed its claims. *See* (Doc. 56). The United States abandoned its sovereign immunity

---

[3] That case, *United States v. N.M. Env't Dep't*, Case No. A-1-CA-37887 (N.M. Ct. App., filed Jan. 17, 2019), is currently stayed pending resolution of this case, *see id.* (Order filed April 10, 2019).

4

allegation. In its place, it now unequivocally appeals the Permit's terms directly under New

Mexico's Hazardous Waste Act:

> The Permit constitutes in whole or in part, a "final administrative action," subject to judicial review pursuant to [NMSA § 74-14-4(A)]. Under that statute, the action shall be set aside if it is: "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law." [NMSA § 74-14-4(C)].

(Doc. 56) at ¶ 17; *see also id.* at ¶¶ 2–3, 25–31.

The United States seeks (1) a declaration that certain Permit terms are inconsistent with

the scope of "corrective action" in the HWA and in its implementing regulations; and (2) a

declaration that the terms are arbitrary, capricious, or an abuse of discretion, not supported by

substantial evidence in the record, or otherwise not in accordance with the law. *Id.* at 7. It

requests injunctive relief to set aside the allegedly unlawful terms of the Permit. *Id.* These

claims bring the federal claims into alignment with the claims asserted in the state case. *See*

*United States v. N.M. Env't Dep't*, Case No. A-1-CA-37887 (N.M. Ct. App., filed Jan. 17, 2019);

also (Doc. 26) at 5 (describing the parallel state case).

In its Motion for Summary Judgment, the United States again urges this Court to construe

the case as a state administrative appeal:

> Neither this Court nor the Tenth Circuit has addressed the standard of review for a motion for summary judgment on a claim under the HWA…. Under *Olenhouse* [*v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir. 1994)], a district court reviewing agency action "acts as an appellate court" and "employs summary judgment to decide, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the [Administrative Procedures Act] standard of review." *N.M. Health Connections v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1138, 1161 (10th Cir. 2019) (internal quotation marks and alteration omitted). This review is limited to the administrative record before the agency at the time the decision was made. *Id.* at 1161-62.

Appellate Case: 22-2132   Document: 25   Date Filed: 10/28/2024   Page: 66

Appellate Case: 22-2132   Document: 25   Date Filed: 10/28/2024   Page: 67

(Doc. 58-1) at 14–15.[4]

Now the parties present competing motions for summary judgment which raise myriad issues, the core of which is whether the Permit's terms run afoul of the HWA's standard of review. The Court, however, does not reach the substance of those issues. Instead, the Court determines it lacks jurisdiction to hear the claims in the Amended Complaint and dismisses the case without prejudice.

II.     *Analysis*

The Court concludes that an HWA administrative appeal, as the United States brings in its Amended Complaint, must properly be decided by the New Mexico Court of Appeals and this Court is without jurisdiction. Because the United States raises sovereign immunity as an argument against subjecting it to the issue preservation requirement, the Court addresses that federal question before otherwise dismissing the case.

A.  *The Court Lacks Jurisdiction to Hear this Claim*

1.  *The HWA Directs Permit Appeals Only to the New Mexico Court of Appeals*

The HWA, which authorizes this appeal, dictates exactly how such an action must be brought:

> A. Any person who is or may be affected by any final administrative action of the board or the secretary may appeal to the *court of appeals* for further relief within thirty days after the action. All appeals shall be upon the record before the board or the secretary.
>
> ...
>
> C. Upon appeal, the *court of appeals* shall set aside the action only if it is found to be:
> (1)     arbitrary, capricious or an abuse of discretion;
> (2)     not supported by substantial evidence in the record; or

---

[4] In many instances, the original pagination of the briefing, as included by the parties in the document footer, differs from the pagination applied to documents by the Court's electronic filing program and appearing in the header of each page. The Court refers here and elsewhere to the ECF-generated page numbers.

(3)     otherwise not in accordance with law.

NMSA § 74-4-14 (emphasis added).  No court other than the New Mexico Court of Appeals is contemplated.  That is, by the clear terms of the HWA, the New Mexico Court of Appeals is the only proper venue for a permit appeal.

2.   *Because the HWA Creates an Exclusive Venue for Administrative Appeals, this Court is Stripped of Jurisdiction*

The HWA, by vesting exclusive jurisdiction for permit appeals in the New Mexico Court of Appeals, precludes other courts from adjudicating such claims.  The New Mexico Legislature may create specific and exclusive appellate procedures under state law.  "The Legislature has the authority to establish appellate jurisdiction and to create a right of appeal." *Cordova v. Cline*, 2017-NMSC-020, ¶ 15 (citing, among other sources, N.M. Const. art. VI, § 2); *see also* Rule 1–074(A) NMRA (stating that "appeals from administrative agencies [may be heard by] the district courts *when there is a statutory right of review to the district court*" (emphasis added)).

Congress may also statutorily vest exclusive administrative appellate jurisdiction in specific courts at the expense of district courts' ordinary jurisdiction.  "A statutory scheme of administrative review followed by judicial review in a federal appellate court can preclude district court jurisdiction over a plaintiff's statutory and constitutional claims if Congress' intent to preclude district court jurisdiction is 'fairly discernible in the statutory scheme.'" *Sec. People, Inc. v. Iancu*, 971 F.3d 1355, 1362 (Fed. Cir. 2020) (cleaned up), *cert. denied sub nom. Sec. People, Inc. v. Hirshfeld*, 141 S. Ct. 2701, 210 L. Ed. 2d 871 (2021).  All told, provided there is "meaningful review" of given claims, Congress may require parties "to proceed exclusively through the statutory review scheme" on an administrative appeal, skipping the federal district courts, even where parties "raise constitutional challenges to federal statutes." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012).

7

Federal courts have repeatedly applied these principles to federal statutory schemes. *See id.* (holding Civil Service Reform Act provisions entitling employee to appeal before Merit Systems Protection Board and seek judicial review in Federal Circuit provided exclusive avenue to judicial review, and allowing employee to challenge employment action first in district court would seriously undermine CSRA's objective of creating integrated scheme of review); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) (holding that administrative review scheme of the Federal Mine Safety and Health Amendments Act of 1977, under which challenges are reviewed by the Federal Mine Safety and Health Review Commission and then by appropriate court of appeal, precluded district court jurisdiction); *Sec. People, Inc.*, 971 F.3d at 1361–1363 (holding that the America Invents Act provided exclusive review of certain Patent Trial and Appeal Board decisions at the Court of Appeals for the Federal Circuit and thus precluded district courts from exercising Administrative Procedure Act jurisdiction over patent owner's challenge.).

Turning to this case, the Court finds that the "fairly discernable" intent of both the New Mexico Legislature and Congress is that all litigants, including the United States, must appeal hazardous waste permits to the New Mexico Court of Appeals. As described above, the New Mexico Legislature clearly directed that permit appeals be brought directly and exclusively to the New Mexico Court of Appeals.

Congress' parallel intent is discernable in two ways. First, when New Mexico passed the HWA, it did so under authority granted by Congress in RCRA. This shows Congress' general approval of HWA's appellate scheme. And second, Congress demonstrated its specific intent that the United States follow HWA's appellate procedures when it waived sovereign immunity. RCRA explicitly subjects the federal government to "*all* Federal, State, interstate, and local requirements, *both substantive and procedural*[.]" 42 U.S.C. § 6961(a) (emphasis added).

8

Based on this, the Court determines that the United States exposed itself to the HWA in its entirety, including its provisions for appealing permit terms. The Court thus concludes that these fairly discernable expressions of legislative intent divest this Court of jurisdiction.

Also weighing in favor of this conclusion, the Supreme Court has found that federal courts do not generally have jurisdiction over state administrative appeals. *E.g.*, *Chi., R. I. & P. R. Co. v. Stude*, 346 U.S. 574, 581 (1954) ("The United States District Court…does not sit to review on appeal action taken administratively or judicially in a state proceeding. A state legislature may not make a federal district court, a court of original jurisdiction, into an appellate tribunal or otherwise expand its jurisdiction." (internal quotation marks and citations omitted)). The Tenth Circuit faithfully applies that Supreme Court precedent. *Trapp v. Goetz*, 373 F.2d 380, 383 (10th Cir. 1966) ("[T]he United States District Court had no power to consider an appeal from the state administrative tribunal. Such a proceeding is not within its statutory jurisdiction."). As one court put it: "Permitting the bypassing of state procedures would lead to federal district courts becoming courts of review for state administrative agencies and to needless conflict between federal and state governments." *Allegheny Airlines, Inc. v. Pa. Pub. Util. Com.*, 319 F. Supp. 407, 414 (E.D. Pa. 1970).

Finally, the United States has been a party to HWA appeal actions in front of the New Mexico Court of Appeals before, suggesting by history and practice that it is not only amenable to that court but that it knowingly submitted to it as the review body for HWA permit appeals. *E.g.*, *Nuclear Waste P'ship, LLC v. Nuclear Watch N.M.*, 2022-NMCA-014 (New Mexico Court of Appeals determining that amendment to New Mexico hazardous waste permit issued to United States Department of Energy did not violate HWA appeal standard). This phenomenon is not novel; Congress , at times, subjects the United States to litigating state-governed issues in

9

state courts. For instance, in mass water rights adjudications, regarding which the McCarren Amendment waived sovereign immunity in deference to state procedures, 43 U.S.C. § 666, the United States must bring and defend water-rights claims according to states' requirements, whether at state administrative agencies or state courts. *E.g.*, *United States v. State of Or.*, 44 F.3d 758, 770 (9th Cir. 1994) (holding "that the Klamath Basin adjudication is in fact the sort of adjudication Congress meant to require the United States to participate in when it passed the McCarran Amendment").

The intent of the state legislature was to create an exclusive permit review process at the New Mexico Court of Appeals and the intent of Congress was to subject the United States to that procedure. Moreover, federal courts do not generally adjudicate state administrative appeals. For these reasons, this Court lacks jurisdiction over the permit appeal claims in this action.

3. *That the United States is Plaintiff Does Not Grant This Court Jurisdiction*

The Court plausibly has jurisdiction over this action from other independent sources. The Court addresses those here, concluding none overcome the conclusion that the state appellate scheme strips this Court of jurisdiction.

When the United States first brought this action testing whether the Permit fit within Congress' waiver of sovereign immunity in RCRA, it asserted jurisdiction was proper via both 28 U.S.C. § 1331 (federal question) and § 1345 (United States as plaintiff). (Doc. 1) at ¶ 5. As this Court reasoned at the motion to dismiss stage, *see* (Doc. 26), that claim presented a valid federal question which was appropriately adjudicated by this Court. *E.g.*, *United States v. State of N.M.*, No. CIV. 90-276 SC, 1992 WL 437983, at *1 (D.N.M. Aug. 13, 1992), aff'd, 32 F.3d 494 (10th Cir. 1994) (federal court determining that New Mexico hazardous waste permit issued to Los Alamos National Laboratory did not exceed waiver of immunity).

10

In its now-operative Amended Complaint, however, the United States challenges the Permit in a second way—one available to any permit holder—by attacking its validity under the HWA itself. The United States still asserts jurisdiction is proper based on both federal question jurisdiction and because the Government is the plaintiff. (Doc. 56) at ¶ 4.

The Court, however, concludes that the Amended Complaint insufficiently supports federal question jurisdiction. "A case arises under federal law if its well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (internal quotations omitted). The Amended Complaint references RCRA, but it does not assert the cause of action is authorized by RCRA. Nor does it raise sovereign immunity. Instead, the claim is presented as a state administrative appeal based on violations of a state statute. (Doc. 56) at ¶¶ 12-17, 26-31. Without the allegation that the Permit exceeds the wavier of sovereign immunity, the Amended Complaint does not present a federal question.

That leaves the United States to invoke this Court's jurisdiction as the plaintiff. That route to attaining jurisdiction, however, is constrained: "*Except as otherwise provided by Act of Congress*, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." 28 U.S.C. § 1345.

The Court concludes that Congress' general and qualified grant of jurisdiction in 28 U.S.C. § 1345 must give way to Congress' specific and unqualified waiver of sovereign immunity subjecting federal facilities to authorized state hazardous waste permitting schemes.

11

Appellate Case: 22-2132     Document: 25     Date Filed: 10/28/2024     Page: 73

Indeed, in *Trapp*, the Tenth Circuit considered how the district courts' lack of jurisdiction over state administrative appeals conflicted with the affirmative presence of another form of jurisdiction—diversity—and found diversity could not overcome the defect. *Trapp v. Goetz*, 373 F.2d 380, 383 (10th Cir. 1966) ("[T]he presence of diversity of citizenship and of the requisite amount in controversy is not always sufficient to provide jurisdiction to a United States District Court where the proceedings originate in the administrative or judicial acts of a state.").

For these reasons, the Court determines that the United States being the plaintiff in this action is insufficient to overcome its lack of jurisdiction over a state administrative appeal with exclusive jurisdiction in the state court.

### 4.  Colorado River *Counsels Abstention*

The *Colorado River* abstention doctrine also bears on this case. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). As brief background, the Court earlier determined *Colorado River* abstention was inappropriate in part because "the issue in this case will involve consideration of federal law in interpreting the contours of RCRA's waiver of sovereign immunity." (Doc. 26) at 15. Because the United States omitted sovereign immunity from its Amended Complaint, *Colorado River* abstention must now be reconsidered. The Court concludes that even if the HWA does not divest this Court of subject matter jurisdiction outright, which it does for the reasons described above, *Colorado River* counsels abstention in deference to the parallel state proceeding already before the New Mexico Court of Appeals.

The *Colorado River* abstention doctrine is a sort of catch-all doctrine which "falls within none of the abstention categories" and which is triggered "in situations involving the contemporaneous exercise of concurrent jurisdictions…by state and federal courts." *Colorado River,* 424 U.S. at 817. The "avoidance of duplicative litigation…is at the core of the *Colorado*

12

*River* doctrine." *D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013). The doctrine "concerns itself with efficiency and economy." *Id.* Though declining to exercise jurisdiction based on a parallel state case is appropriate only in "exceptional" circumstances, the Supreme Court has advised that such circumstances nevertheless exist "for reasons of wise judicial administration." *Colorado River*, 42 U.S. at 818.

The Supreme Court has set forth several factors to consider in determining whether "exceptional circumstances" exist. *Id.* at 818. Before examining these factors, however, a federal court "must first determine whether the state and federal proceedings are parallel." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* Such is the case here: the claims before the New Mexico Court of Appeals and this Court appear nearly identical. *Compare* Docketing Statement in *United States v. N.M. Env't Dep't*, Case No. A-1-CA-37887 (N.M. Ct. App., filed Apr. 12, 2019) *with* (Doc. 56).

Moving on to the factors, the Supreme Court has identified four to consider: "(1) whether the state or federal court first assumed jurisdiction over the same [property]; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums." *D.A. Osguthorpe Fam.*, 705 F.3d at 1234 (citing *Colorado River*, 42 U.S. at 818). The Supreme Court has further explained that the *Colorado River* factors are not a "mechanical checklist," but rather that "careful balancing" is required and "[t]he weight to be given to any one factor may vary greatly from case to case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

13

Appellate Case: 22-2132   Document: 25   Date Filed: 10/28/2024   Page: 75

To begin, this Court finds that the first of the *Colorado River* factors does not apply to this case. Neither the state nor federal court has acquired jurisdiction over property in this litigation. The Court also finds the second factor, the relative inconvenience of the federal forum, deserves little weight. The New Mexico Court of Appeals usually, but not always, sits in Albuquerque, while this Court is in Las Cruces but may also hear cases in Albuquerque. Either way, both courts are distant from Cannon AFB and neither party has suggested any physical or logistical inconvenience in either forum. The last factor, the order of jurisdiction, also weighs little on the decision. Concurrent jurisdiction was obtained on the same day; neither court waded deep into litigation before the other.

The third factor, however, tips the scales strongly in favor of abstention. The Tenth Circuit has emphasized that the "paramount consideration in *Colorado River* was the third factor: the danger of piecemeal litigation." *D.A. Osguthorpe*, 705 F.3d at 1234 (citing *Moses H. Cone*, 460 U.S. at 19). The Supreme Court added two additional factors for consideration which supplement this Court's analysis: whether "federal law provides the rule of decision on the merits," *Moses H. Cone*, 460 U.S. at 23, and whether the state-court proceedings adequately protect the litigants' rights, *id.* at 26–27. All three of these factors combined lead this Court to the conclusion, born of "wise judicial administration," that it should defer to the state court.

Because the current state action is stayed, there is not an immediate risk of piecemeal litigation, but the threat looms on the horizon. Federal law does not provide the rule of decision in this case. Instead, the state's statutory standard of review applies—that is, whether the permit terms are (1) arbitrary, capricious, or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law. NMSA § 74-4-14(C). Those definitions are further construed and explained in state common law. *E.g., Garcia v. New*

14

*Mexico Hum. Servs. Dep't*, 1979-NMCA-071, ¶ 6 (adopting, from Wisconsin Supreme Court, standard that arbitrary and capricious action by an administrative agency is evident "when it can be said that such action is unreasonable or does not have a rational basis."), *rev'd on other grounds,* 1980-NMSC-025, ¶ 6. Similarly, one of the State's defenses is that the claims were not properly preserved in the administrative record, which is another question requiring application of state rules and common law. Federal courts can, of course, apply state common law, but without further consideration, this Court does not know if those issues are clear, will necessitate reasoned guesses, or may even require certification to the state courts. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). This is where the piecemeal litigation concern begins.

That concern is only amplified when considering the impact on future cases. Over the long run, if the United States is allowed to avoid the state procedure by invoking federal jurisdiction any time any federal facility in the state seeks to challenge a permit, there is a risk of developing a body of common law at the state which applies to all permit holders except the United States, and potentially divergent or conflicting precedents in federal court which apply distinctively to the United States. Thus, the Court concludes that in this unique situation—a state-law issue analyzed under state-law standards and regarding which Congress has expressly waived sovereign immunity—it is wise that the state courts adjudicate the issue and develop the law on point.

The Court concludes it is divested of subject matter jurisdiction by RCRA and the HWA, but even if it is not, it ought to wisely abstain and defer to the New Mexico Court of Appeals.

B. *Sovereign Immunity Does Not Protect the United States from the HWA Appellate Process and its Rules*

Despite the above analysis, there is one narrow federal question presented in the motions for summary judgment, which the Court now addresses. NMED argues that the United States'

15

Appellate Case: 22-2132   Document: 25   Date Filed: 10/28/2024   Page: 77

claims are barred by a failure to preserve them during the administrative process below. (Doc. 59) at 6-10. The United States counters that the preservation requirement is inappropriately applied to the Government because of sovereign immunity. (Doc. 60) at 10-14.

This Court does not determine whether the United States' claims are waived for failure to preserve. That is properly left to the New Mexico Court of Appeals. Instead, this Court rules on the narrow question whether the federal government is immunized from preservation requirement in the first place. The Court determines that it is not. Before addressing the United States' specific arguments, the Court addresses sovereign immunity generally.

Ordinarily, sovereign immunity is a shield which protects the United States from suits when it is a defendant. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) ("It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued[.]") (citing *United States v. Sherwood,* 312 U.S. 584, 586 (1941)). Similarly, sovereign immunity protects the federal government from regulation by states. *Mayo v. United States,* 319 U.S. 441, 445 (1943); *United States v. Washington*, 142 S. Ct. 1976, 1982 (2022). Congress, however, may explicitly waive sovereign immunity and authorize the states to regulate federal instrumentalities. *Washington*, 142 S. Ct. at 1982; *United States v. State of N.M.,* 32 F.3d at 497. As previously noted, RCRA contains one such explicit waiver of sovereign immunity which allows states to issue permits to federal facilities which manage and dispose of hazardous waste. 42 U.S.C. § 6961. Based on this the United States may invoke sovereign immunity as a plaintiff—that is, when it challenges a state action for exceeding the scope of a previous waiver of immunity. *E.g., United States v. State of N.M.,* 32 F.3d 494 (denying United States' challenge of RCRA hazardous waste permit issued to Los Alamos National Laboratory for including radioactive waste).

16

Appellate Case: 22-2132     Document: 25     Date Filed: 10/28/2024     Page: 78

Importantly, this is not one of those cases. Under the Amended Complaint, the United States does not challenge the substantive terms of the permit as exceeding the waiver of sovereign immunity. *Generally* (Doc. 56). Instead, it turns the case into an inquiry about whether the permit conflicts with state statute and it invokes sovereign immunity to sidestep a requirement of the administrative review process.

As a general matter, this Court concludes that sovereign immunity does not exempt the United States from administrative procedure and rules. As explained, RCRA subjects federal facilities to the entirety of the HWA, including the appeal process. The Court is aware of no caselaw, and the United States cites to none, which stands for the proposition that the federal government is immunized from procedural requirements where it is a consenting participant. That general proposition settled, the Court addresses the United States' three specific arguments in turn.

First, the United States counters that imposing issue preservation on it subjects it to permit terms that exceed the scope of Congress' waiver of sovereign immunity. (Doc. 60) at 12–14. But Congress' waiver of sovereign immunity in RCRA is broad and authorizes states to regulate above and beyond RCRA. 42 U.S.C. § 6926; 40 C.F.R. § 271.1(i). The United States' claim that the permit violates New Mexico state law is of no consequence in analyzing whether Congress made the federal government susceptible to state regulation. This is to say nothing of the fact that the United States abandoned this argument in its Amended Complaint.

Second, the United States contends that even if New Mexico courts require issue preservation, that requirement is outside of Congress's waiver of sovereign immunity in RCRA and does not apply to the Air Force. (Doc. 60) at 10–11. This is so, the United States argues, because the waiver extends only to the text of HWA and its regulations—neither of which

17

explicitly require issue preservation. *Id*. Even if it were true that Congress only intended to waive sovereign immunity as far as the strict text of the HWA goes, the HWA specifically contemplates permit appeals, requiring them to be made to the New Mexico Court of Appeals. NMSA § 74-4-14. It does not follow that Congress submitted to the HWA appellate process but not to the courts' rules governing that process.

Third, the United States argues that imposing the preservation requirement is akin to deeming the Air Force to have waived sovereign immunity during the permitting process, which it cannot do. (Doc. 60) at 13. The United States relies on this caselaw:

> Nor can the actions of the Secretary, or any government official or attorney, act as a waiver or abandonment of the United States' sovereign immunity. Because waiver must be unequivocally expressed by Congress, officers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court.

*Governor of Kansas v. Kempthorne*, 516 F.3d 833, 845 (10th Cir. 2008) (internal quotations omitted). The problem with this argument is that Congress waived sovereign immunity in RCRA. Whether the Air Force waived it any further is not in question. Rather, the question is whether the United States waived certain legal challenges during the permitting process. That is a question of state statutory construction and administrative law which does not implicate Congress' operative waiver of immunity. It is a category error to conflate waiver of a discrete legal challenge with waiver of immunity.

For all of these reasons, the Court concludes the United States cannot use sovereign immunity as a defense to an accusation that it failed to preserve its legal challenges.

III.    *Conclusion*

The United States brings this challenge to its hazardous waste Permit via the state's Hazardous Waste Act. Congress subjected the federal government to that state law and all of its

18

procedural requirements.  Under the clear terms of the HWA, Permit challenges must be brought to the New Mexico Court of Appeals, and this Court is divested of jurisdiction.  For this reason, the Court does not reach the merits of the issues presented in the motions for summary judgment. The Court denies both Motions, (Docs. 58 and 59), and dismisses this case without prejudice.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

19

Appellate Case: 22-2132   Document: 25   Date Filed: 10/28/2024   Page: 81

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                     Case No. 19-CV-46 KG/SMV

NEW MEXICO ENVIRONMENT
DEPARTMENT, and JAMES KENNEY,
Secretary (in his official capacity),

     Defendants.

## JUDGMENT

Pursuant to Federal Rule of Civil Procedure 58 and the Memorandum Opinion and Order

(Doc. 70) filed August 18, 2022, the above-captioned case is hereby dismissed without prejudice.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE