No. 22-2132

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff/Appellant*,

v.

NEW MEXICO ENVIRONMENT DEPARTMENT, et al.,
*Defendants/Appellees*.

Appeal from the United States District Court for the District of New Mexico
No. 2:19-cv-00046 (Hon. Kenneth J. Gonzales)

**REPLY BRIEF FOR APPELLANT**

KATHERINE E. KONSCHNIK
*Acting Assistant Attorney General*

ALLEN M. BRABENDER
*Attorney*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 514-5316
allen.brabender@usdoj.gov

**Oral argument is requested.**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................ ii

GLOSSARY............................................................................................v

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................2

I.     The district court has jurisdiction under 28 U.S.C. § 1345. ...........................2

II.    There are no exceptional circumstances authorizing the district
       court to abstain from exercising 28 U.S.C. § 1345 jurisdiction
       under the *Colorado River* doctrine. ...............................................11

       A.     None of the *Colorado River* factors favor abstention. ........................12

       B.     NMED's arguments are unpersuasive.................................................16

              1.     The district court overlooked the federal issues. ......................16

              2.     Abstention disadvantages the United States' suit.....................18

III.   It would be equally improper for the district court to have
       abstained from exercising subject-matter jurisdiction under
       other abstention doctrines not relied on by the district court. .......................20

       A.     *Brillhart* abstention is inappropriate. .................................................21

       B.     *Burford* abstention is inappropriate...................................................24

CONCLUSION ......................................................................................27

CERTIFICATE OF COMPLIANCE.......................................................29

CERTIFICATE OF DIGITAL SUBMISSION .......................................30

## TABLE OF AUTHORITIES

### Cases

*Bellotti v. Baird*,
428 U.S. 132 (1976) ................................................................................................20

*Bissonnette v. LePage Bakeries Park St., LLC*,
601 U.S. 246 (2024) ..................................................................................................6

*Brillhart v. Excess Insurance Company of America*,
316 U.S. 491 (1942) ................................................................................................21

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943) ................................................................................................27

*Carr v. Saul*,
593 U.S. 83 (2021) ..................................................................................................17

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976) ................................................... 2, 3, 4, 7, 8, 12, 20

*Courthouse News Serv. v. Planet*,
750 F.3d 776 (9th Cir. 2014) ..................................................................................26

*D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*,
705 F.3d 1223 (10th Cir. 2013) ..............................................................................13

*Direct Mktg. Ass'n v. Brohl*,
575 U.S. 1 (2015) ......................................................................................................2

*Driftless Area Land Conservancy v. Valcq*,
16 F.4th 508 (7th Cir. 2021) ...................................................................................23

*EPA v. California*,
426 U.S. 200 (1976) ..................................................................................................7

*Fox v. Maulding*,
16 F.3d 1079 (10th Cir. 1994) ........................................................................... 11, 17

*Hancock v. Train*,
426 U.S. 167 (1976) ..................................................................................................7

*In re: Franklin Sav. Corp.*,
    385 F.3d 1279 (10th Cir. 2004) ................................................................6

*Kremer v. Chem. Const. Corp.*,
    456 U.S. 461 (1982) ................................................................................3

*Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Eng'rs*,
    619 F.3d 1289 (11th Cir. 2010) ...............................................................7

*Morton v. Mancari*,
    417 U.S. 535 (1974) ..............................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ................................................ 12, 13, 16, 17, 18, 20

*New Orleans Public Serv., Inc. v. Council of New Orleans*,
    491 U.S. 350 (1989) ........................................................ 11, 15, 25, 26

*NLRB v. Nash-Finch Co.*,
    404 U.S. 138 (1971) ..............................................................................19

*North Carolina v. United States*,
    7 F.4th 160 (4th Cir. 2021) ...................................................................10

*Parola v. Weinberger*,
    848 F.2d 956 (9th Cir. 1988)...................................................................6

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996) ..............................................................................25

*Rosecrans v. United States*,
    165 U.S. 257 (1897) ................................................................................2

*Shook v. El Paso Cnty.*,
    386 F.3d 963 (10th Cir. 2004) ...............................................................14

*Tomlinson v. El Paso Corp.*,
    653 F.3d 1281 (10th Cir. 2011) ...............................................................22

*Transportation Div. of the Int'l Ass'n of Sheet Metal, Air,*
    *Rail & Transportation Workers v. Fed. R.R. Admin.*,
    10 F.4th 869, 874 (D.C. Cir. 2021)........................................................23

*Trump v. Vance*,
   941 F.3d 631 (2d Cir. 2019)................................................................ 19, 27

*United States v. City of Las Cruces*,
   289 F.3d 1170 (10th Cir. 2002) ......................................................... 20, 22

*United States v. Colorado*,
   990 F.2d 1565 (10th Cir. 1993) ..............................................................11

*United States v. New Mexico*,
   32 F.3d 494 (10th Cir. 1994).....................................................................5

*United States v. Puerto Rico*,
   721 F.2d 832 (1st Cir. 1983) ............................................................... 8-10

*Waldron v. McAtee*,
   723 F.2d 1348 (7th Cir. 1983) ................................................................20

*WildEarth Guardians v. BLM*,
   870 F.3d 1222 (10th Cir. 2017) ..............................................................23

*Wildgrass Oil & Gas Comm. v. Colorado*,
   843 F. App'x 120 (10th Cir. 2021) ..........................................................20

*Wilton v. Seven Falls Co.*,
   515 U. S. 277 (1995).................................................................................21

**Statutes**

28 U.S.C. § 1345 ................................................................................. 1-11

28 U.S.C. § 1442 ......................................................................................9

42 U.S.C. § 6961(a) ...................................................................... 5, 6, 7, 8, 10

42 U.S.C. § 7604(e) ..................................................................................8

43 U.S.C. § 666(a) ............................................................................. 3, 4, 5

**State Statutes**

N.M. Stat. Ann. § 74-4-14A ......................................................................8

iv

**Rules**

Fed. R. Civ. P. 8 ....................................................................................................22

## GLOSSARY

APA         Administrative Procedure Act

CERCLA    Comprehensive Environmental Response, Compensation, and

            Liability Act

CWA         Clean Water Act

EPA         United States Environmental Protection Agency

HWA         New Mexico Hazardous Waste Act

NMED        New Mexico Environment Department

RCRA        Resource Conservation and Recovery Act

**INTRODUCTION**

The United States is appealing the district court's erroneous decision that it lacked jurisdiction over the federal government's challenge to a permit for the Air Force issued by the New Mexico Environment Department (NMED), which administers a hazardous waste program under the federal Resource Conservation and Recovery Act (RCRA). The district court erred in concluding that it lacked jurisdiction under 28 U.S.C. § 1345 and by otherwise abstaining from the exercise of that jurisdiction. NMED's opposing arguments are unpersuasive.

NMED claims that this "appeal is the United States' latest attempt to delay or avoid accountability for [the Air Force's] contamination of the environment." NMED Brief 2. Nothing is further from the truth. In fact, the Air Force has taken full responsibility for the PFAS contamination and currently is performing a multi-year, multi-million-dollar cleanup at and around Cannon Air Force Base under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). *See* https://www.cannon.af.mil/Environmental/. The United States is appealing the district court's erroneous decision on jurisdiction not to delay cleanup, which is ongoing, but to ensure that Congress' jurisdictional statute and the United States' choice of litigation forum are respected and given effect. The district court's dismissal order should be reversed.

## ARGUMENT

**I.     The district court has jurisdiction under 28 U.S.C. § 1345.**

The district court erred in concluding that the court lacked jurisdiction under 28 U.S.C. § 1345, because that statute provides jurisdiction in *all* civil cases in which the United States is the plaintiff. Opening Brief 15-29. NMED concedes that RCRA does not explicitly repeal § 1345. NMED Brief 11. Instead, NMED argues that RCRA's waiver of sovereign immunity, 42 U.S.C. § 6961(a), enacted after § 1345, *impliedly* strips the district court of its § 1345 jurisdiction.

NMED's argument cannot be reconciled with *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *Colorado River* held that § 1345 jurisdiction may not be defeated, contrary to NMED's argument, "by a mere implication flowing from subsequent legislation." 424 U.S. at 808 (quoting *Rosecrans v. United States*, 165 U.S. 257, 262 (1897)). Alleged implicit conflict is therefore not enough to defeat § 1345 jurisdiction, even though it sometimes suffices when interpreting *non*-jurisdictional statutes. *Id.*; *see also Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 14 (2015) ("jurisdictional rules should be clear") (internal quotations and citation omitted). *Colorado River* imposes a high hurdle for finding that another statute like RCRA strips a federal court of its § 1345 jurisdiction. 424 U.S. at 808-09. To rule for NMED, *Colorado River* requires this Court to find that the two statutes are "irreconcilable." *Id.* at 808.

2

Section 1345 and RCRA are easily reconciled if they are read to provide concurrent jurisdiction in federal and state court over the United States' suit. Opening Brief 18-19. NMED does not explain why concurrent jurisdiction is irreconcilable. NMED argues instead that RCRA's waiver of sovereign immunity "works an implied repeal" of § 1345, citing *Kremer v. Chem. Const. Corp.*, 456 U.S. 461 (1982). NMED Brief 11. But *Kremer* first requires "two acts [to be] in irreconcilable conflict" before one statute impliedly repeals another. 456 U.S. at 468. NMED's argument thus fails, even under *Kremer*, because NMED cannot demonstrate that § 1345 and RCRA are irreconcilable.

Even if RCRA's waiver of sovereign immunity also addressed the separate question of subject-matter jurisdiction (which it does not, *see infra* pp. 6-7), *Colorado River* held that "[t]here is no irreconcilability in the existence of concurrent state and federal jurisdiction" and that the McCarran Amendment subjecting the United States to water-rights adjudications in state court did not impliedly repeal § 1345 jurisdiction, but provided concurrent jurisdiction. *Id.* at 809. The Supreme Court found no intent to repeal § 1345 jurisdiction even though the McCarran Amendment—like RCRA § 6961(a)—subjects the United States to state court adjudication "in the same manner and to the same extent as a private individual." 43 U.S.C. § 666(a). This Court therefore should reject NMED's argument that RCRA's waiver of sovereign immunity impliedly repeals § 1345

jurisdiction in RCRA cases when analogous language for water-rights adjudications had no such implication in *Colorado River*.

NMED's attempts to distinguish *Colorado River* are unpersuasive. NMED Brief 22-24. NMED contends that *Colorado River* was not decided on the statute's plain text, but on an uncodified subsection and legislative history. Not so. *Colorado River* concluded that "[t]he McCarran Amendment does not *by its terms*, at least, indicate any repeal of jurisdiction under § 1345." 424 U.S. at 807 (emphasis added). Those terms include statutory text like that relied on by NMED, subjecting the United States to state-court adjudication "in the same manner and to the same extent as a private individual." 43 U.S.C. § 666(a). That plain text was not irreconcilable with § 1345 in part because "[t]here is no irreconcilability in the existence of concurrent state and federal jurisdiction." *Id.* at 809. The Supreme Court went on to confirm its plain-text reading that the McCarran Amendment does not repeal § 1345 jurisdiction, citing legislative history and the terms of the uncodified subsection withdrawing funding from certain district court litigation. *Id.* at 807-08. As the Court explained, there would be no reason to withdraw funding if the codified portion of the statute had repealed the court's jurisdiction. *Id.* at 807. But the Court's holding rested principally on the McCarran Amendment's text.

NMED also contends that *Colorado River* is distinguishable because the McCarran Amendment did not give comprehensive authority over the subject

4

matter to the states. NMED Brief 23-24. But that is a distinction without a difference, as it does not follow from NMED's premise that the two statutes here are irreconcilable. NMED's contention that *Colorado River* did not involve an appeal from a state proceeding is similarly a distinction without a difference. It is also a fallacy. New Mexico regulations do not provide an opportunity for an administrative appeal, so no such state proceeding occurred.

If anything, the differences between the McCarran Amendment and RCRA's waiver of sovereign immunity cut firmly against NMED's position. The McCarran Amendment, unlike RCRA § 6961(a), *explicitly* provided the United States' consent to water-rights adjudications in state *court*. 43 U.S.C. § 666(a). Yet even though the statute's purpose was to allow state-court jurisdiction, the Court found that this purpose was *not* irreconcilable with concurrent federal-court jurisdiction.

NMED further argues that RCRA impliedly repeals § 1345 because it subjects federal agencies to state "procedural" requirements to the same extent as any other person. Yet NMED fails to overcome the United States' arguments that "procedural" requirements should not be read to define the proper forum for "judicial review." Opening Brief 17. "Procedural" requirements refer to those requirements by which the substantive standards are implemented, including "permit requirements, reporting and monitoring duties, and submission to state inspections." *United States v. New Mexico*, 32 F.3d 494, 497 (10th Cir. 1994)

5

(quoting *Parola v. Weinberger*, 848 F.2d 956, 961 (9th Cir. 1988)). NMED counters that this list is not "exclusive" and does not, on its face, preclude incorporating "judicial review" procedures. NMED Brief 17. But lists are generally confined to things of the same kind as those specifically mentioned. *See Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 252 (2024) (ejusdem generis). The forum for judicial review is of an entirely different character than requirements such as the permitting, reporting, and inspection requirements by which RCRA's substantive standards are implemented. It is those kinds of procedural requirements that Congress meant to apply to federal agencies to the same extent as any other person. *See Parola*, 848 F.2d at 961.

After all, RCRA § 6961(a) is a waiver of sovereign immunity not a jurisdictional or venue provision. This distinction matters because whether statutory subject-matter jurisdiction exists is a separate question from whether a waiver of sovereign immunity also exists. *See In re: Franklin Sav. Corp.*, 385 F.3d 1279, 1289 (10th Cir. 2004) (stating that a waiver of sovereign immunity does not provide a separate basis for subject-matter jurisdiction). Section 6961(a) allows federal agencies to be regulated by the state, but it does not address jurisdiction over suits brought by the United States to challenge the state's manner of regulation. In contrast, § 1345 is a jurisdictional statute that specifically provides federal district courts with statutory subject-matter jurisdiction when the United

States is the plaintiff. Under traditional tools of construction, a statute that specifically addresses subject-matter jurisdiction trumps any implications flowing from RCRA's more general waiver of sovereign immunity. *See Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Eng'rs*, 619 F.3d 1289, 1299 (11th Cir. 2010) ("a specific statutory provision trumps a general one"). And because RCRA's waiver does not expressly provide or even imply any stripping of federal jurisdiction, concurrent state- and federal-court jurisdiction may exist without rendering the statutes irreconcilable. *See Colorado River*, 424 U.S. at 809.

This distinction between judicial-review provisions and waivers of sovereign immunity also matters in another respect. Without a waiver of sovereign immunity, the United States cannot be sued in any court. *See EPA v. California*, 426 U.S. 200, 211 (1976) (incorporating *Hancock v. Train*, 426 U.S. 167, 179 (1976)). But an immunity waiver is irrelevant when the United States is the plaintiff. Any argument that RCRA § 6961(a)'s waiver of immunity somehow controls the forum when the United States sues as the plaintiff is therefore misplaced.

NMED incorrectly attempts to classify this suit filed by the United States as "defensive." NMED Brief 14 n.4, 21. But creative characterizations of "offense" and "defense" aside, what matters is that the United States is the "plaintiff." And § 1345 specifically provides a federal forum to the United States when it is the plaintiff. A federal forum can co-exist with any available state forum because

7

"[t]here is no irreconcilability in the existence of concurrent state and federal jurisdiction." *Colorado River*, 424 U.S. at 809.

Even if the phrase "procedural requirements" included the proper forum for judicial review, NMED still would be wrong that the state forum created by the New Mexico Hazardous Waste Act (HWA), N.M. Stat. Ann. § 74-4-14A, is exclusive as to suits filed by the United States.[1] As the Opening Brief explains and as is unrebutted by NMED, the HWA specifies only which court within the *state* judicial system is authorized to adjudicate challenges to permits. Opening Brief 24. State law does not, nor could it, grant or preclude federal-court jurisdiction. *Id.* at 25. And, even if New Mexico's sovereign immunity may prevent private citizens from accessing the federal courts to challenge state-issued permits, NMED never responds to the argument that sovereign immunity does not immunize the state from suit by the United States in federal court. *Id.* at 26-27.

For similar reasons, NMED cannot meaningfully distinguish *United States v. Puerto Rico*, 721 F.2d 832 (1st Cir. 1983). *Puerto Rico* held that a waiver of sovereign immunity in the Clean Water Act (CWA)—which is analogous in

---

[1] NMED asserts that EPA approved N.M. Stat. Ann. § 74-4-14A. NMED Brief 14-15. But this misses the mark. Regardless of the state program's status, EPA's review and findings do not address the salient question of federal-court jurisdiction over suits filed by the United States under § 1345.

8

relevant respects to RCRA's waiver[2]—did not foreclose the United States from challenging state administrative actions in federal court under § 1345. 721 F.2d at 840. NMED notes that the First Circuit based its decision in part on the presence of a removal provision in the CWA allowing the United States to remove an action filed against it in state court to federal court, a provision lacking in RCRA. NMED Brief 19. But while the presence of a removal provision may confirm that a waiver subjecting the United States to state requirements is not inconsistent with federal-court jurisdiction, the absence of a removal provision means little, standing alone.

NMED does not meaningfully engage with the United States' explanation of why the lack of removal provision does not make RCRA's waiver of sovereign immunity irreconcilable with § 1345. Opening Brief 23-24. That is, removal applies only where a party seeking a federal forum is the defendant. But § 1345 applies only when the United States is the plaintiff, making the lack of a removal provision irrelevant to what forum the government may chose as a plaintiff. There is thus no irreconcilability between these statutes.

---

[2] NMED notes that the First Circuit suggested in dicta that the lack of a removal provision in the Clean Air Act meant that the United States' argument rested on "shaky ground" as applied to Clean Air Act. NMED Brief 20 (discussing *Puerto Rico*, 721 F.2d at 839 n.8). But that dictum is unhelpful to NMED because it is based on legislative history and a Clean Air Act provision allowing suits to be brought in state court, 42 U.S.C. § 7604(e), with no analogues in RCRA.

NMED's only response is to claim that the United States here is suing on "defense." NMED Brief 21. But that makes no sense, as the United States is the plaintiff, and removal applies only to defendants. NMED does not respond at all to the argument that, even if the United States were on defense, removal would be proper under 28 U.S.C. § 1442, as explained in *North Carolina v. United States*, 7 F.4th 160, 164 (4th Cir. 2021) (addressing effect of 28 U.S.C. § 1442 on a Clean Air Act waiver of sovereign immunity that, like RCRA's, does not affirmatively include a removal provision). As the United States previously explained, that removal would be proper here supports the exercise of federal-court jurisdiction because it would be unusual for Congress to guarantee a federal forum to the United States as a defendant but not as a plaintiff. Opening Brief 24.

Moreover, the First Circuit identified other compelling reasons for holding that the CWA did not repeal § 1345 jurisdiction. Those reasons are equally applicable to RCRA. For example, like with the First Circuit's comparison of the CWA with § 1345, "laying the two statutes [RCRA and § 1345] side by side fails to reveal any inherent contradictions." *Puerto Rico*, 721 F.2d at 838. And, like the CWA, RCRA § 6961(a) also contemplates that compliance with state requirements can "be enforced as well by the federal courts as by non-federal tribunals." *Id.* NMED provides no reason to disregard the First Circuit's persuasive reasoning.

10

Ultimately, NMED asks this Court to strain to find implied conflict between two statutes. But "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974); *United States v. Colorado*, 990 F.2d 1565, 1575 (10th Cir. 1993). Mere tension is insufficient. The statutes must be irreconcilable, and the existence of federal-court jurisdiction under § 1345 can be readily harmonized with concurrent state-court jurisdiction. The district court's dismissal order must be reversed.

## II. There are no exceptional circumstances authorizing the district court to abstain from exercising 28 U.S.C. § 1345 jurisdiction under the *Colorado River* doctrine.

The district court abused its discretion in surrendering its jurisdiction under *Colorado River*. Opening Brief 29-40. The federal courts are duty "bound to proceed to judgment . . . in every case to which their jurisdiction extends." *New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358 (1989) (*NOPSI*). This duty to exercise jurisdiction extends to situations where parallel state proceedings exist. *See Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994). Only in "exceptional circumstances" does the existence of parallel proceedings justify abstention. *Id.* This case is not exceptional. It is an ordinary administrative-law challenge to a state permit, issued under the state's federally approved RCRA

program, brought under the state analogue of the federal Administrative Procedure Act (APA).

### A.    None of the *Colorado River* factors favor abstention.

None of the *Colorado River* factors support the district's court determination that "exceptional circumstances" exist to justify abstention. Indeed, NMED concedes that many of the factors are neutral. NMED Brief 27. Neutral factors support the federal district court exercising its jurisdiction because a court's consideration of the factors is "heavily weighted in favor of the exercise of jurisdiction," and "*only the clearest of justifications will warrant dismissal.*" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) (quoting *Colorado River*, 424 U.S. at 819) (emphasis in original)).

Here, the district court's balancing improperly overlooked the factors weighing in favor of the federal court maintaining its jurisdiction. For instance, the district court overlooked the presence of federal-law issues intermingled with the state-law issues. Such an oversight is an abuse of discretion considering that "the presence of federal-law issues must always be a major consideration weighing against surrender" of federal-court jurisdiction. *Moses H.*, 460 U.S. at 26.

Likewise, the district court overlooked that the state forum disadvantages the United States' suit by providing narrower and less definite rights to appeal erroneous decisions. Opening Brief 37-38. And, more generally, the district court

overlooked the congressional weighting of federalism principles reflected in statutes such as § 1345. This weighting reflects Congress' view that it is advantageous to the proper functioning of healthy federal-state relations to provide the United States a federal forum when it sues anyone, including a state agency. Such protection guards against overreach by state agencies or state courts.

The district court also overlooked that the federal suit was running well ahead of the long-dormant state suit when it refused to adjudicate the case. As *Moses H.* counsels, this progress gives the federal court the "priority" and weighs heavily in favor of the federal court maintaining jurisdiction. *Moses H.,* 460 U.S. at 21-22. Yet the district court failed to mention, let alone to give *any* weight to, this important factor and therefore abused its discretion.

The priority given to the significantly further-along federal proceeding also must be considered in view of the efficiency concerns at the core of *Colorado River*. "*Colorado River* concerns itself with efficiency and economy. Its goal is to preserve judicial resources." *D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (internal quotations and citation omitted). But the district court's dismissal, if upheld, will waste judicial resources by requiring the New Mexico Court of Appeals to duplicate the proceedings already completed or pending before the federal district court that were ready for final decision. The

13

district court should have decided those questions, as they were ready for decision in federal court. Its refusal to proceed to judgment is at odds with *Colorado River*.

Even the factor that the district court thought most supported abstention—danger of piecemeal litigation—does not support abstention because the district court misunderstood and thus misapplied that factor, committing a per se abuse of discretion. Opening Brief 32-35; *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004) (court abuses its discretion when it misapplies the requisite factors). There is no danger of piecemeal litigation here in the relevant sense of two independent courts reviewing the same underlying case and potentially reaching conflicting results. The dormant state case will likely never be adjudicated if this Court reverses the district court's dismissal and remands for further federal court proceedings. While it is true, as NMED points out, that dismissal of the parallel state case would require the state court of appeals to grant the government's motion to voluntarily dismiss the case, courts routinely grant such pro forma motions. NMED provides no reason why the state court would not grant such a routine motion or why the United States would prosecute that dormant state case if this Court reverses. There is no danger of piecemeal litigation here.

Instead, the district court erroneously abstained because of the possibility that "on the horizon," federal and state courts could develop divergent precedents on HWA-permitting issues as applied to the United States litigating in federal

14

district court versus non-federal parties litigating before the state court of appeals. App. 215-16. But the district court's concern about divergent precedent is overblown considering that both state and federal courts routinely are influenced by case law from other jurisdictions. In any event, the possibility for divergent state-federal precedent arises whenever a federal court must interpret state law, which routinely occurs in numerous contexts, most notably in diversity suits. If such future possibilities looming on the horizon provided a sufficient reason to abstain, abstention would be far more prevalent. Yet abstention is "the exception, not the rule." *NOPSI*, 491 U.S. at 359. Notably, NMED identifies no case recognizing the future possibility of divergent precedents as a valid reason for a federal court to abstain under *Colorado River* or any other abstention doctrine.

Accordingly, *all* the requisite *Colorado River* factors either are (1) neutral, meaning they weigh against abstention; or (2) support federal-court jurisdiction, meaning they weigh heavily against abstention. This case therefore does not present "extraordinary circumstances," which is unsurprising considering the case is an ordinary administrative law challenge. The district court was duty "bound to proceed to judgment." *NOPSI*, 491 U.S. at 358.

15

Appellate Case: 22-2132    Document: 45    Date Filed: 01/15/2025    Page: 22

**B.     NMED's arguments are unpersuasive.**

**1.     The district court overlooked the federal issues.**

The Opening Brief explains that the district court took an improperly narrow view of the law governing this case because rules of state and federal law intermingle here. Opening Brief 36-37. In response, NMED insists that there can be only one rule of decision and that rule is grounded in state law. NMED Brief 30-31. But the Supreme Court has not taken such a narrow view. Even where the underlying claim is grounded in state law, as in the state law-based contract claim in *Moses H.*, the presence of "federal issues" in a case weighs against abstention. *Moses H.*, 460 U.S. at 24 (concluding that the contract's arbitration clause raised a federal issue precluding abstention).

While the United States' underlying claim here is grounded in a state law that is the analogue of the *federal* APA, NMED's defense to that state law-based claim depends, in part, upon *federal* law about issue exhaustion. App. 190-93. *Federal* law about issue exhaustion provides the rule of decision here because federal courts apply federal procedural law and because NMED identifies no state-law equivalent.[3] Moreover, resolving the *federal* issue-exhaustion question

---

[3] NMED contends that it cited federal case law only to supplement state law and that federal case law on issue exhaustion is not binding. NMED Brief 31. But NMED identifies no state statute or case applying an issue-exhaustion requirement, and we are aware of none. The state cases NMED identifies do not address issue

16

depends in part on the court's interpretation of the *federal* government's waiver of sovereign immunity in the RCRA. App. 199-201. And resolving the United States' state-law claim requires an analysis of RCRA's minimum requirements for the *federally* approved permitting program. Opening Brief 5, 36. Thus, the federal issues, at a minimum, entwine with the state issues.

Because state issues are intertwined with federal issues, the district court should have exercised federal jurisdiction. Even in cases raising state-law issues exclusively, there is a presumption of federal-court jurisdiction: A court's task "is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Moses H.*, 460 U.S. at 25-26. "Although in some rare circumstances the presence of state-law issues may weigh in favor" of a federal court surrendering its jurisdiction to a state court, "the presence of federal-law issues must always be a major consideration weighing against surrender" of jurisdiction. *Moses H.*, 460 U.S. at 26. Yet the district court

---

exhaustion (Supp. App. 205), but rather the distinct and inapplicable doctrine of exhaustion of administrative remedies. *See Carr v. Saul*, 593 U.S. 83, 88 n.2 (2021) ("Issue exhaustion should not be confused with exhaustion of administrative remedies."). Administrative exhaustion is inapplicable here because NMED's regulations do not require pursuit of state-law administrative remedies—such as the filing of an administrative appeal—before seeking judicial review.

17

entirely disregarded any intermingling of the state and federal issues and thus abused its discretion.

## 2. Abstention disadvantages the United States' suit.

NMED also fails to rebut the United States' argument that the district court misstated the test for the adequacy of a state proceeding by not focusing on the impacts of abstention on "the federal plaintiff's rights." Opening Brief 37-39. This focus on a federal *plaintiff's* rights is not mere "gloss," as NMED contends. NMED Brief 32. It is an accurate statement of the law. *See Fox*, 16 F.3d at 1082 (courts should consider "the adequacy of the state court action to protect the federal *plaintiff's* rights") (emphasis added). NMED minimizes the importance of how a court disregarding a plaintiff's choice of forum may negatively impact the plaintiff's suit by quoting language from *Moses H.*'s discussion of whether a stay of the federal-court proceeding is equivalent to a dismissal. NMED Brief 32-33 (quoting *Moses H*, 460 U.S. at 28). But that quoted language is inapposite; the relevant section of *Moses H.* emphasizes that the focus is on the federal plaintiff's rights—here, the United States' rights. *See Moses H*., 460 U.S. at 26 (discussing the probable inadequacy of the state-court proceeding to protect plaintiff's rights).

In *Moses H.*, the Supreme Court concluded that the doubts about whether the federal plaintiff could obtain from the state court an order compelling arbitration counseled heavily against federal-court abstention. *Id.* Here too, the legitimate

18

doubts about the United States' right to obtain judicial review from the New Mexico Supreme Court of erroneous decisions of the state court of appeals weigh heavily against abstention. Opening Brief 38 (discussing the discretionary nature of state supreme court review). The United States advances its lawsuit in the federal court in part to avoid these doubts.

Because the district court misstated and otherwise failed to address the adequacy-of-state-proceeding factor, the district court never considered how abstention affected the United States' rights. Nor did the district court consider the congressional policy memorialized in legislation and grounded in the Constitution that, for the United States and its agencies, "the federal courts are the forum of choice." *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 147 (1971). Particularly in a lawsuit against a state agency, the federal forum provides valuable protection for the federal government against state overreach (whether by state courts or the state agency), which is partially why "access [to] federal courts is preferable in the context of healthy federal-state relations." *Trump v. Vance*, 941 F.3d 631, 637-38 (2d Cir. 2019) (internal citations and quotations omitted). The proper application of federalism principles thus reveals the inadequacy of the state forum and weighs heavily against abstention.

***

19

In sum, "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Moses H.*, 460 U.S. at 15 (quoting *Colorado River*, 424 U.S. at 817)). By refusing to exercise the jurisdiction Congress provided to it under § 1345 in the absence of exceptional circumstances, the district court misapplied the relevant factors and thus clearly abused its discretion.

**III.    It would be equally improper for the district court to have abstained from exercising subject-matter jurisdiction under other abstention doctrines not relied on by the district court.**

NMED asks this Court in the alternative to affirm the dismissal of this case based on abstention doctrines not applied by the district court—namely, *Brillhart* and *Burford* abstention. But a decision to abstain under these doctrines is committed to a district court's discretion, and the district court here did not invoke these doctrines. *See United States v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002) (*Brillhart*); *Wildgrass Oil & Gas Comm. v. Colorado*, 843 F. App'x 120, 122 (10th Cir. 2021) (*Burford*). That fact alone is sufficient reason to reject NMED's arguments. Although NMED contends that appellate courts sometimes address abstention in the first instance, that exception is used to avoid unnecessary constitutional adjudication. *See Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976); *Waldron v. McAtee*, 723 F.2d 1348, 1351 (7th Cir. 1983). This case does not raise constitutional questions. But, in any event, *Brillhart* and *Burford* do not provide reason for the federal courts to avoid their virtually unflagging obligation to

20

exercise the jurisdiction Congress gave them under § 1345. Like any other plaintiff, the United States' choice of forum must be respected.

### A.    *Brillhart* abstention is inappropriate.

In *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942), the Supreme Court held that a federal court may abstain from exercising its jurisdiction "in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." 316 U.S. at 495. But this action is not limited to a claim for declarative relief. In addition to a declaratory judgment, the United States seeks injunctive relief and to set aside the Permit's unlawful provisions. App. 38-39, 44. Thus, the reasoning of *Brillhart*, which expressly applies only to "a declaratory judgment suit," does not support abstention in this case. *See Wilton v. Seven Falls Co.*, 515 U. S. 277, 285 (1995) (noting that *Brillhart* does not apply "beyond the context of declaratory judgment").

NMED's contention that the United States does not seek injunctive relief is erroneous. The Amended Complaint explicitly states that "this is a civil action for declaratory and injunctive relief," App. 38, and further clarifies that "[t]he United States . . . seeks all appropriate injunctive relief." App. 39. Thus, the district court correctly understood the United States to be seeking injunctive relief. App. 206.

NMED's counter argument unnecessarily places conclusive weight on the wording of the prayer for relief. NMED Brief 39-40. If a complaint otherwise specifies the relief it seeks, there is no requirement that a complaint contain a section called a prayer for relief. *See* Fed. R. Civ. P. 8 (requiring "a demand for the relief sought, which may include relief in the alternative or different types of relief"). The Amended Complaint here specified that it sought injunctive relief in multiple places, and that specificity is more than adequate to satisfy the liberal pleading standards of Rule 8. *See Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1286 n.5 (10th Cir. 2011) (Fed. R. Civ. P. 8 imposes a "liberal pleading standard").

Even looking only to the prayer for relief, the Amended Complaint requests the district court to "grant such other relief as may be just and proper." App. 44. In these circumstances, the "other relief" includes the injunctive relief demanded in the Amended Complaint itself. The Amended Complaint's use of the phrase "other relief" understood in context of the multiple demands for injunctive relief distinguishes this case from *Las Cruces*, where no reference to injunctive relief was made anywhere in the complaint. 289 F.3d at 1180.

In any event, the prayer for relief also seeks to "[s]et aside the unlawful provisions of the Permit," which goes beyond declaratory relief. App. 44. Because *Brillhart* only applies to a declaratory judgment suit, this request for additional relief makes *Brillhart* inapplicable.

22

NMED errs in arguing that to "set aside" is synonymous with a declaratory judgment because to "set aside" means to "annul or vacate." NMED Brief 41. NMED's argument does not compute. First, it is not clear that to "set aside" means to vacate, as NMED contends, or instead means simply to "discard." *See* Merriam-Webster Online, https://www.merriam-webster.com/dictionary/set%20aside. Second, even if to "set aside" means to vacate, vacatur is a discretionary form of equitable relief distinct from declaratory or injunctive relief. *See Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 521-22 (7th Cir. 2021) (addressing the differences among declaratory and injunctive relief and vacatur).

Vacatur is therefore neither declaratory nor injunctive relief. *Id*. But in terms of what form of relief vacatur is most comparable to—a declaratory judgment or an injunction—this Court has compared vacatur to a "form of injunctive relief." *WildEarth Guardians v. BLM*, 870 F.3d 1222, 1239 (10th Cir. 2017). Indeed, while vacatur is a separate form of relief, courts have viewed its coercive effects as often being the same as an injunction's. *See Transportation Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transportation Workers v. Fed. R.R. Admin.*, 10 F.4th 869, 874 (D.C. Cir. 2021) (declining to grant "coercive sanction" of vacatur). Regardless of how one characterizes "set aside" and vacatur, *Brillhart* is inapplicable because this suit does not seek only a declaratory judgment.

23

Finally, even if this suit sought only a declaratory judgment, *Brillhart* abstention would not override the unflagging obligation of the federal district court to exercise § 1345 jurisdiction. The district court's exercise of § 1345 jurisdiction does not create tension with the state court of appeals, which willingly stayed its case to allow the matter to be litigated in federal court. And there is no reason to believe the state court of appeals provides a better or more effective forum. The federal forum in fact provides greater appellate rights. Opening Brief 37-38. This case presents no difficult question of state law. It is a straight-forward state-administrative law challenge, like federal-administrative law challenges that are commonly litigated in federal courts under the federal APA. And, as explained, there are federal-law issues intermingled with the state-law issues.

Moreover, because the dispute is between the state and federal governments, federalism principles dictate that the better and more effective forum for resolving the dispute is the federal court. Opening Brief 28-29, 38. Therefore, even if this suit sought only a declaratory judgment, this Court should decline NMED's invitation to invoke *Brillhart* as an alternative ground to affirm the district court.

### B.    *Burford* **abstention is inappropriate.**

The *Burford* abstention doctrine provides a federal district court with the discretion to avoid interfering with the ongoing proceedings of state administrative agencies when the court is sitting in equity, timely and adequate state-court review

is available, and either (1) "there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) "the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *NOPSI*, 491 U.S. at 361. But the policy concerns that *Burford* abstention addresses "only *rarely* favor[] abstention," as such abstention represents "an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (internal quotations and citation omitted) (emphasis added). Echoing *Colorado River*, the Supreme Court has reiterated that when a court is considering whether to abstain under *Burford*, it must be mindful that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Id.* at 716.

This case does not involve any *ongoing* state administrative proceeding or present the rare and extraordinary circumstances under *Burford* to justify avoiding the federal courts' obligation to exercise § 1345 jurisdiction. There is nothing extraordinary about the case. It is a garden variety administrative-law challenge, involving a challenge to a state's permitting decision under a federally approved RCRA program where many federal issues are present, as discussed above. The case presents no difficult questions. Nor does it threaten the state's development of

25

coherent policy. In fact, NMED's reasoning for applying *Burford* abstention could be duplicated for any challenge to any decision of a state administrative agency. NMED, in effect, is asking for the Court to expand what is supposed to be a rare exception into a general rule.

Moreover, the permit at issue here applies only to one federal facility. No state-wide policy is at issue—just a single permit. A ruling therefore will not disrupt any New Mexico policy. New Mexico's interests in environmental protection or the complexities of regulating groundwater are not challenged or implicated here. The complexities of regulating groundwater quality and quantity have no relevance to whether some of the substances and contaminants, as defined in the Permit, are hazardous substances not listed in New Mexico's regulations.

Like all state and federal regulators, NMED must follow the law. The United States alleges that NMED improperly applied its own regulations when it issued the latest corrective action permit to the United States. App. 43. Assuming the United States' allegation is correct (an issue not before the Court),[4] NMED has no interest in ensuring that it can act contrary to its own laws, much less any such interest that must be adjudicated only in state court. Indeed, § 1345 jurisdiction exists to provide the protection of a federal forum to the federal government in

---

[4] *See Courthouse News Serv. v. Planet*, 750 F.3d 776, 779-80 (9th Cir. 2014) (assuming the factual allegations in the complaint are true for the purpose of reviewing the district court's decision to abstain).

situations exactly like this one, where the state and federal governments are in conflict. *See Trump*, 941 F.3d at 637. Setting aside permit terms that exceed what is allowed under New Mexico law would not interfere with any state policy or risk creating divergent precedents. Overbroad permit terms are equally unlawful as applied to private citizens and to the United States.

NMED's contention that "the United States has not availed itself of state remedies," NMED Brief 51, is ironic and incorrect because NMED's regulations do not provide the United States with an opportunity to file an administrative appeal. Moreover, unlike Texas in *Burford*, New Mexico has not created a judicial system allowing its state courts "to acquire a specialized knowledge." *Burford v. Sun Oil Co.*, 319 U.S. 315, 327 (1943). Instead, New Mexico allows challenges to a state permit in the state court of appeals, which is a court of generalists like judges of the federal district courts. Regardless, no specialized knowledge is required to decide this ordinary administrative-law challenge. The circumstances here in no way match those discussed in *Burford*. In these circumstances, the district court must exercise its § 1345 jurisdiction.

## CONCLUSION

For the foregoing reasons and those in the Opening Brief, the judgment of the district court should be reversed and the case remanded for additional proceedings.

Respectfully submitted,

/s/ *Allen M. Brabender*
KATHERINE E. KONSCHNIK
*Acting Assistant Attorney General*

ALLEN M. BRABENDER
*Attorney*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 514-5316
allen.brabender@usdoj.gov

January 2025
DJ # 90-7-3-21406

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this document contains 6,397 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ *Allen M. Brabender*
ALLEN M. BRABENDER
*Counsel for the United States*

**CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that with respect to the foregoing:

(1)     all required privacy redactions have been made per 10th Cir. R. 25.5;

(2)     if required to file additional hard copies, that the ECF submission is an exact copy of those documents; and

(3)     the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, and according to the program are free of viruses.

/s/ *Allen M. Brabender*

ALLEN M. BRABENDER
*Counsel for the United States*