**Case No. 22-2132**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

                                          Plaintiff-Appellant,

      v.

NEW MEXICO ENVIRONMENT
DEPARTMENT and JAMES
KENNEY, Secretary (in his official
capacity),                               Defendants-Appellees.

---

## ANSWER BRIEF FOR DEFENDANTS-APPELLEES

---

Appeal from the U.S. District Court for the District of New Mexico
Case No. 19-CV-0046 (Hon. Kenneth J. Gonzales)

RAÚL TORREZ
*New Mexico Attorney General*

William G. Grantham
Esther C. Jamison
*Assistant Attorneys General*
408 Galisteo St.
Santa Fe, NM 87501
(505) 490-4060

*Counsel for Defendants-Appellees*

**ORAL ARGUMENT IS REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................ i

TABLE OF AUTHORITIES .................................................................................. iii

GLOSSARY........................................................................................................... vii

STATEMENT OF RELATED APPEALS ............................................................... 1

INTRODUCTION ................................................................................................... 1

STATEMENT OF JURISDICTION....................................................................... 2

ISSUES ON APPEAL ............................................................................................ 2

STATEMENT OF THE CASE ............................................................................... 3

I.      Factual Background ....................................................................................... 3

II.     Procedural Background ................................................................................. 5

SUMMARY OF THE ARGUMENT ..................................................................... 7

STANDARD OF REVIEW .................................................................................... 8

ARGUMENT .......................................................................................................... 9

I.      The district court correctly determined that it did not have jurisdiction......... 9

        A.   § 6961(a) impliedly repeals § 1345 jurisdiction for federal facilities. ..10

        B.   Caselaw construing the Clean Water Act and Clean Air Act's
             corollaries to § 6961(a) does not undermine this conclusion. ...............19

        C.   *Colorado River* construed a different statute with a different legislative
             history, and so is distinguishable. ...................................................22

II.     Alternatively, the district court did not abuse its discretion to abstain from
        hearing this case..............................................................................25

        A.   *Colorado River* abstention is appropriate. .........................................25

             i.    The danger of piecemeal litigation.............................................27

             ii.   Federal law does not provide the rule of decision on the merits.....30

             iii.  State-court proceedings adequately protect the litigants' rights.....32

        B.   This Court may affirm on alternative abstention grounds. .................35

i.    *Brillhart* abstention is appropriate......................................................38

ii.   *Burford* abstention is appropriate........................................................46

CONCLUSION .................................................................................................. 53

STATEMENT OF COUNSEL AS TO ORAL ARGUMENT ............................... 54

STATEMENT OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS.... 55

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS 56

CERTIFICATE OF SERVICE ............................................................................ 56

**TABLE OF AUTHORITIES**

**CASES**

*Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253 (9th Cir. 1988)..................................................................................................28

*Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807 (6th Cir. 2004) ..........45

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)................................. 36, 43

*Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021) ............................................................41

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) ............................................. 36, 48, 49

*Cappaert v. United States*, 426 U.S. 128 (1976) .....................................................24

*Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574 (1954).........................................26

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ..7, 22, 24, 25, 26, 27, 29

*D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223 (10th Cir. 2013) ................................................................................................................. 26, 38

*Elkins v. Comfort*, 392 F.3d 1159 (10th Cir. 2004) ......................................... 37, 38

*Fox v. Maulding*, 16 F.3d 1079 (10th Cir. 1994)....................................... 26, 32, 36

*Frazier v. Simmons*, 254 F.3d 1247 (10th Cir. 2001) ..............................................40

*Grimes v. Crown Life Ins. Co.*, 857 F.2d 699 (10th Cir. 1988).................. 35, 38, 52

*IAP Worldwide Servs., Inc. v. United States*, 160 Fed. Cl. 57 (2022) ....................42

*Interstate Med. Licensure Compact Comm'n v. Bowling*, 113 F.4th 1266 (10th Cir. 2024)....................................................................................................................9

*Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274 (3d Cir. 2017) .........................39

*Kokins v. Teleflex, Inc.*, 621 F.3d 1290 (10th Cir. 2010)........................................31

*Kremer v. Chem. Const. Corp.*, 456 U.S. 461 (1982)..............................................11

*Manning v. U.S.*, 146 F.3d 808 (10th Cir. 1998) .....................................................47

iii

*Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Eng'rs*, 619 F.3d 1289 (11th Cir. 2010) ...............................................................................11

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ...............................41

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .... 9, 26, 30, 33, 35

*New Energy Econ., Inc. v. Shoobridge*, 2010-NMSC-049, 149 N.M. 42, 243 P.3d 746 ...............................................................................................50

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* (*NOPSI*), 491 U.S. 350 (1989)................................................................. 47, 49, 50, 52

*Nuclear Waste P'ship, LLC v. Nuclear Watch New Mexico*, 2022-NMCA-014, 505 P.3d 886 ................................................................................ 12, 32

*Parola v. Weinberger*, 848 F.2d 956 (9th Cir. 1988) .............................................12

*Robert-Gay Energy Enters., Inc. v. State Corp. Comm'n*, 753 F.2d 857 (10th Cir. 1985)...............................................................................................49

*Sinclair Oil Corp. v. Amoco Prod. Co.*, 982 F.2d 437 (10th Cir. 1992).................40

*Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948 (5th Cir. 1994) .. 38, 42

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994) ....................43

*Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307 (10th Cir. 2024)................................................................................................43

*U.S. Dep't of Energy v. Ohio*, 503 U.S. 607 (1992) ..............................................21

*U.S. v. Puerto Rico*, 721 F.2d 832 (1st Cir. 1983)...................................... 19, 20, 22

*Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052 (1st Cir. 1987).......................42

*United States v. City of Las Cruces*, 289 F.3d 1170 (10th Cir. 2002) . 25, 39, 40, 41, 44

*United States v. Damato*, 672 F.3d 832 (10th Cir. 2012) ................................ 37, 38

*United States v. Hess*, 106 F.4th 1011 (10th Cir. 2024) ........................................36

*United States v. Morros*, 268 F.3d 695 (9th Cir. 2001) ............................................................34

*United States v. N.M. Env't Dep't*, Case No. A-1-CA-37887 (N.M. Ct. App. Jan. 17, 2019) ............................................................................................................................1

*United States v. New Mexico*, 32 F.3d 494 (10th Cir. 1994) ........................... 16, 17

*W. Ins. Co. v. A & H Ins., Inc.*, 784 F.3d 725 (10th Cir. 2015) ..............................47

*Weaver v. United States*, 98 F.3d 518 (10th Cir. 1996) ..........................................11

*Wildgrass Oil & Gas Comm. v. Colorado*, 843 F. App'x 120 (10th Cir. 2021) (unpublished) .............................................................................................. 49, 51

*Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978) ................................................26

*Wilton v. Seven Falls*, 515 U.S. 277 (1995) ................................................... 25, 39

*Yellowfish v. City of Stillwater*, 691 F.2d 926 (10th Cir. 1982) ............................11

## STATUTES

28 U.S.C. § 1291 ...................................................................................................2, 33

28 U.S.C. § 1331 .........................................................................................................9

28 U.S.C. § 1345 .................................................... 2, 7, 8, 9, 10, 11, 15, 18, 23

28 U.S.C. § 2201 .......................................................................................................39

33 U.S.C. § 1323 ................................................................................................ 19, 21

42 U.S.C. § 6902 .........................................................................................................1

42 U.S.C. § 6926 ....................................................................................... 1, 12, 14, 45

42 U.S.C. § 6961 ......................................................... 2, 8, 10, 12, 13, 16, 22, 28, 34

42 U.S.C. § 6972 .....................................................................................................5, 17

42 U.S.C. § 7418 .......................................................................................................19

N.M. Stat. Ann. § 74-4-1 .............................................................................................1

N.M. Stat. Ann. § 74-4-13 ...........................................................................5

N.M. Stat. Ann. § 74-4-14 ..................................................... 13, 14, 42

N.M. Stat. Ann. § 74-4-3 ........................................................................1, 7

N.M. Stat. Ann. § 74-4-4.2 .......................................................................15

N.M. Stat. Ann. §§ 74-6-1 .......................................................................48

**RULES**

Fed. R. Civ. P. 12(b)(1)..............................................................................5

Fed. R. Civ. P. 12(b)(6)..............................................................................5

Fed. R. Civ. P. 12(e)..................................................................................5

Fed. R. Civ. P. 8(a)(3) ..............................................................................41

N.M. R. App. P. 12-401 ............................................................................28

N.M. R. App. P. 12-502 ............................................................................33

N.M. R. App. P. 12-601 ............................................................................16

**REGULATIONS**

40 C.F.R. § 272.1601 ......................................................................... 12, 14

**OTHER AUTHORITIES**

102 CONG. REC. 27163; 102 CONG. REC. H9135 (daily ed. Sept. 23, 1992)...........21

1992 New Mexico Laws Ch. 43 § 6 (S.B. 104)...............................................13

89 Fed. Reg. 8606 (Feb. 8, 2024) ...............................................................51

Black's Law Dictionary (12th ed. 2024) ......................................................41

H.R. REP. NO. 102-111 (1992) .....................................................................18

S. REP. NO. 102-67 (1991) ..........................................................................18

# GLOSSARY

| | |
|---|---|
| AFFF | Aqueous Film Forming Foam |
| CAA | Clean Air Act |
| CWA | Clean Water Act |
| EPA | United States Environmental Protection Agency |
| HWA | New Mexico Hazardous Waste Act |
| NMCA | New Mexico Court of Appeals |
| PFAS | Per- and Polyfluoroalkyl Substances |
| RCRA | Resource Conservation and Recovery Act |
| USAF | United States Air Force |

## STATEMENT OF RELATED APPEALS

The United States has appealed the same matter to the New Mexico Court of Appeals (NMCA). *See* Supp. App. 10 (Notice of Appeal, *United States v. N.M. Env't Dep't*, Case No. A-1-CA-37887 (N.M. Ct. App. Jan. 17, 2019)).

## INTRODUCTION

In the Resource Conservation and Recovery Act (RCRA), Congress declared it national policy that "wherever feasible, the generation of hazardous waste is to be reduced or eliminated as expeditiously as possible," and that such waste "should be treated, stored, or disposed of so as to minimize the present and future threat to human health and the environment." 42 U.S.C. § 6902(b). RCRA's comprehensive statutory scheme delegates authority for enforcement of that scheme to authorized states. 42 U.S.C. § 6926. For nearly forty years, New Mexico has been authorized to enforce RCRA, which it does through the New Mexico Hazardous Waste Act (HWA), N.M. Stat. Ann. §§ 74-4-1 to -14 (1977, as amended through 2021).

In 2013, the United States Air Force (USAF) applied to the New Mexico Environment Department (NMED) to renew its hazardous waste permit for Cannon Air Force Base (Cannon) in Curry County, New Mexico. Because of known contamination at Cannon—which the USAF acknowledged in the administrative process and which is undisputed here—NMED modified the permit to extend "corrective action" to those contaminants. *See* N.M. Stat. Ann. § 74-4-3(C) (defining

1

"corrective action" as "an action taken in accordance with the rules of the [New Mexico Environmental Improvement Board] to investigate, minimize, eliminate or clean up a release to protect the public health, safety and welfare or the environment").

Instead of complying with the renewed permit's terms, the United States challenged it in state and federal court. This appeal is the United States' latest attempt to delay or avoid accountability for USAF's contamination of the environment, contrary to Congress' intent expressed in 42 U.S.C. § 6961(a).

## STATEMENT OF JURISDICTION

This Court has jurisdiction over the appeal from a final decision of the district court under 28 U.S.C. § 1291. The jurisdiction of the district court is at issue in this appeal. NMED disputes the district court's jurisdiction under 28 U.S.C. § 1345.

## ISSUES ON APPEAL

1. Whether the district court correctly concluded that it lacked jurisdiction under 28 U.S.C. § 1345 in light of 42 U.S.C. § 6961(a)'s waiver of sovereign immunity and Congress' intent that federal facilities be subject to the same procedural requirements as any other person.

2. Whether the district court abused its discretion by abstaining from exercising jurisdiction.

## STATEMENT OF THE CASE

### I.     Factual Background

As far back as 1970, the USAF purchased and used per- and polyfluoroalkyl substances (PFAS) in aqueous film forming foam (AFFF) to extinguish petroleum fires during training and emergency response actions. Supp. App. 49. Since then, thousands of gallons of AFFF have been released into the environment at Cannon. *See* Supp. App. 51–54; App. 203 ("That Cannon AFB uses and disposes of PFAS is not in dispute."). Among other impacts, those releases "destroy[ed] local dairy operations" around Cannon, contaminated the underlying aquifer, and "appeared in [the] . . . municipal drinking water" for the nearby town of Clovis. App. 203.

The USAF has suspected the dangers of PFAS to human health and the environment at least since 2012, when it issued interim guidance on sampling and response actions for PFAS contamination at USAF facilities. Supp. App. 55. In 2013, the USAF applied to renew its ten-year-old corrective action permit, which authorized it "to conduct corrective action for releases identified at various solid waste management units (SWMUs) and areas of concern (AOCs) at [Cannon]." Supp. App. 137; *see id.* at 131. While the application was pending, the USAF commissioned a Preliminary Assessment of PFAS releases at Cannon, published in 2015, which it shared with NMED. Supp. App. 39, 51, 61. In 2016, the EPA issued revised lifetime drinking water health advisory values for two categories of PFAS

3

present in AFFF—perfluorooctanesulfonic acid (PFOS), and perfluorooctanoic acid (PFOA)—updating health-advisory values it had previously issued in 2009. Supp. App. 50.

In October 2017, NMED issued a draft permit and fact sheet for public comment on Cannon's application. Supp. App. 137–44, 145. At USAF's request, NMED extended the 60-day comment period for an additional 49 days. Supp. App. 150–51. The USAF submitted extensive comments on the draft permit, but none raised any objection to the draft permit's definitions of "contaminant," "corrective action," or "hazardous waste." *See* Supp. App. 197, 199, 204–05 (asserting that USAF did not challenge these definitions during the comment period); *see generally id.* at 235–39 (not disputing that point). The draft permit contained the same definitions of these terms as the final permit. *Compare* Supp. App. 146–47 (draft permit definitions), *with* App. 60–61 (final permit definitions).

NMED issued the final permit on December 19, 2018 (Permit). *See* Supp. App. 154–55; App. 46–180.  NMED provided responses to all comments received on the draft permit. *See* Supp. App. 156–57. Unsurprisingly—given the undisputed existence of PFAS at Cannon, their widely acknowledged toxicity, and the lack of any comments disputing those facts or the draft permit's definitions—the Permit extended the 2003 permit's corrective action requirement to include corrective action for PFAS.

4

## II.    Procedural Background

On January 17, 2019, the United States filed a notice of appeal in the NMCA, challenging the Permit's terms as inconsistent with RCRA and the HWA. Supp. App. 10. That same day, the United States filed its original complaint in federal district court. App. 11. The sparsely worded complaint contained only one count: it alleged that the Permit's definition of "hazardous waste" "is inconsistent with the HWA and its implementing regulations," and "exceeds the scope of RCRA's waiver of sovereign immunity." App. 14.

NMED moved to dismiss the complaint on abstention grounds, and under Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure; alternatively, NMED asked for a more definite statement under Fed. R. Civ. P. 12(e). Supp. App. 13–14. As NMED argued, the Complaint was "inadequate as a matter of law and fact because it fail[ed] to allege any specific inconsistencies between the Permit, RCRA, and the HWA." Supp. App. 14. Nevertheless, the district court denied the motions. App. 18, 37.[1]

---

[1] Fearing for human health and the environment, New Mexico brought a separate action in federal court under 42 U.S.C. § 6972(a)(B), and N.M. Stat. Ann. § 74-4-13. Amended Complaint, *New Mexico v. United States*, No. 6:19-CV-178 (D.N.M.) (filed July 24, 2019). In 2020, that action was transferred, over New Mexico's objections, to a multi-district litigation (MDL) case in the District of South Carolina, where it remains pending. *In RE: Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873 (U.S. JPML), Doc. No. 650.

After the administrative record was filed, the United States moved to amend its complaint, thereby "abandon[ing] its sovereign immunity allegation" and "substantially chang[ing] its claims." App. 205–06. *Compare* App. 14 (raising sovereign-immunity challenge), *with* App. 43 (raising no sovereign-immunity challenge). Asserting that it would give "additional factual and legal support regarding which of the Permit's terms are deficient and how they are deficient," Supp. App. 161, the United States added another count—a challenge to the Permit's requirement that corrective action be applied to contaminants, in violation of the HWA and implementing regulations, App. 43.

Shortly after, the United States moved for summary judgment. App. 188. Consistent with the removal of its sovereign-immunity challenge from the amended complaint, the motion focused on how the Permit exceeded NMED's scope of corrective action authority under New Mexico state law. *See generally* Supp. App. 178–89. In its cross-motion for summary judgment, NMED pointed out that the United States no longer challenged the Permit on federal law grounds. *See, e.g.*, *id.* at 206 ("Plaintiff does not argue that the Permit's definition is contrary to federal law, but rather that it is unauthorized by New Mexico's HWA."); *id.* at 208 ("Plaintiff has not alleged that the Permit violates federal law."). NMED argued that the United States "leans heavily on the proposition that the contested definition of hazardous waste conflicts with the meaning of 'corrective action' as purportedly

6

limited by the phrase 'rules of the board' in NMSA 1978, Section 74-4-3(C) (2000)." *Id.* at 208. NMED also moved for summary judgment on preservation grounds because the United States failed to raise any challenge to the Permit's definitions or terms during the administrative process, or to request a hearing. *Id.* at 202–06.

Instead of deciding the cross-motions for summary judgment, the district court *sua sponte* dismissed the case for lack of subject-matter jurisdiction. App. 202, 220. With no remaining federal question, the district court determined that it lacked federal jurisdiction because "Congress' general and qualified grant of jurisdiction in 28 U.S.C. § 1345 must give way to Congress' specific and unqualified waiver of sovereign immunity subjecting federal facilities to authorized state hazardous waste permitting schemes." App. 212. It also relied on the general principle that it lacked jurisdiction over a state administrative appeal. App. 213. In the alternative, it determined that principles of wise judicial administration counseled for abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). App. 213–16.[2]

### SUMMARY OF THE ARGUMENT

In RCRA, as amended by the Federal Facilities Compliance Act of 1992, Congress spoke clearly and unmistakably: federal facilities must not be treated any

---

[2] The United States does not challenge the district court's holding that "the United States cannot use sovereign immunity as a defense to an accusation that it failed to preserve its legal challenges" during the administrative process. App. 219.

7

differently than any other party subject to state enforcement actions authorized by RCRA. *See* 42 U.S.C. § 6961(a). The United States' invocation here of federal jurisdiction under § 1345—based solely on its status as a sovereign—is a request for special treatment that is irreconcilable with Congress' command that federal facilities be subject to "substantive and procedural" requirements "in the same manner, and to the same extent, as any person is subject to such requirements." § 6961(a). The procedural-requirements language in § 6961(a) necessarily includes state judicial review procedures that are part of the statutory scheme through which states enforce RCRA. Thus, the district court did not err by determining that it lacked § 1345 jurisdiction over this case.

Alternatively, the district court did not abuse its discretion by deciding to abstain. The district court correctly found that this is an administrative appeal from a state agency action, governed by state law, over which the NMCA properly has jurisdiction. Though the district court failed to consider the purely declaratory nature of this action, which provides courts *more* discretion to abstain than a coercive action, it nevertheless reached the correct result and did not abuse its discretion by reasoning that federalism and wise judicial administration counselled for abstention.

## STANDARD OF REVIEW

Whether the district court had jurisdiction over this case under § 1345 is a question of law this Court reviews *de novo*. *See Interstate Med. Licensure Compact*

8

*Comm'n v. Bowling*, 113 F.4th 1266, 1273 (10th Cir. 2024) ("For the ultimate determination of subject-matter jurisdiction, we conduct de novo review; for the court's jurisdictional findings of fact, we apply the clear-error standard."). A district court's decision to abstain from exercising jurisdiction is reviewed under the more deferential abuse-of-discretion standard. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).

### ARGUMENT

On appeal, the United States does not challenge the district court's conclusion that, because the United States amended its complaint to remove its sovereign-immunity challenge, the district court lacked federal-question jurisdiction under 28 U.S.C. § 1331. *See* App. 212. *See generally* Op. Br. Thus, the United States' only claimed basis for federal jurisdiction is § 1345.

This Court should affirm the district court's decision for two reasons: (1) the district court did not have jurisdiction over this case; and (2) in the alternative, the district court properly exercised its discretion to abstain.

**I.     The district court correctly determined that it did not have jurisdiction.**

The United States' sole basis for federal jurisdiction is based on its identity as a sovereign plaintiff under § 1345, which provides: "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or

officer thereof expressly authorized to sue by Act of Congress." The key question is therefore whether Congress' waiver of sovereign immunity in § 6961(a), taken in the context of RCRA's comprehensive statutory scheme, constitutes an "Act of Congress" that repeals § 1345 jurisdiction for federal facilities. This Court should conclude that it does.

First, § 6961(a) impliedly repeals jurisdiction under § 1345 to the extent that the two statutes are irreconcilable. Second, the United States' cases construing different statutes are easily distinguishable and are not controlling here. Third, *Colorado River* is distinguishable and its holding likewise does not control.

**A.    § 6961(a) impliedly repeals § 1345 jurisdiction for federal facilities.**

42 U.S.C. § 6961(a) does not exist in a vacuum. It was enacted as Section 6001 of RCRA in 1976, and amended on October 6, 1992. In relevant part, § 6961(a) provides that

> Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste *shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural* (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal and management *in the same manner, and to the same extent, as any person is subject to such requirements*, including the payment of reasonable service charges. . . . The United States hereby expressly waives any immunity otherwise applicable to the United

10

> States with respect to *any such substantive or procedural requirement* (including, but not limited to, any injunctive relief, administrative order or civil or administrative penalty or fine referred to in the preceding sentence, or reasonable service charge).

§ 6961(a) (emphasis added).

Though § 6961(a) does not *explicitly* repeal § 1345 by its own terms, § 6961(a) works an implied repeal of federal jurisdiction under § 1345 because the later statute conflicts with the earlier statute. *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 468 (1982) ("[W]here provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one." (citations omitted)). While implied repeals are generally disfavored, they may be upheld where, as here, "the intent of the legislature [is] 'clear and manifest,'" *Yellowfish v. City of Stillwater*, 691 F.2d 926, 928 (10th Cir. 1982) (citation omitted), and "a specific statutory provision trumps a general one," *Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Eng'rs*, 619 F.3d 1289, 1299 (11th Cir. 2010). *See Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996) ("'[T]he terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" (quoting *United States v. Mitchell,* 445 U.S. 535, 538 (1980)). Here, § 1345 and § 6961(a) conflict because, if a federal facility is to be subject to "requirements, both substantive and procedural . . . in the same manner and to the same extent, as any person is subject to such requirements,"

11

then it cannot rely upon a basis for jurisdiction that depends solely on its identity as a sovereign, that is, a special kind of "person." § 6961(a).

The procedural-requirements language in § 6961(a) must be understood in the context of RCRA's comprehensive statutory scheme, which delegates authority for enforcement of that scheme to authorized states. *See* 42 U.S.C. § 6926(d) ("Any action taken by a State under a hazardous waste program authorized under this section shall have the same force and effect as action taken by the [EPA] Administrator under this subchapter."); *Parola v. Weinberger*, 848 F.2d 956, 961 (9th Cir. 1988) ("[W]e find in the legislative history of RCRA a pervasive congressional concern that state and local authorities attempt to establish comprehensive systems for solid waste disposal and collection.").

At the time § 6961(a) was amended in 1992, New Mexico had been enforcing RCRA as an EPA-authorized partner for over seven years. *See* 40 C.F.R. § 272.1601 (2019) (granting New Mexico final authorization for its hazardous waste management program under RCRA, with initial authorization in 1985). New Mexico implements its EPA-authorized RCRA program through the HWA. *See Nuclear Waste P'ship, LLC v. Nuclear Watch N.M.*, 2022-NMCA-014, ¶ 16, 505 P.3d 886 ("The HWA, pursuant to RCRA, authorizes NMED to administer the State's hazardous waste program." (citing § 74-4-4(A)).

Under the HWA, the NMCA has jurisdiction over appeals from a state agency's action: "Any person who is or may be affected by any final administrative action of the board or the secretary may appeal to the court of appeals for further relief within thirty days after the action." § 74-4-14(A)[3]; *Nuclear Waste P'ship*, 2022-NMCA-014, ¶ 11. This judicial review provision, Section 74-4-14, was enacted by the New Mexico Legislature on March 6, 1992. 1992 New Mexico Laws Ch. 43 § 6 (S.B. 104). It was therefore already in effect when Congress passed the Federal Facilities Compliance Act.

Given that context, Congress' mandate that federal facilities be "subject to, and comply with, all . . . State . . . requirements, both substantive and procedural . . . in the same manner, and to the same extent, as any person is subject to such requirements" speaks broadly to the state's authority to apply the same standards and procedures to the federal government as it would to others. § 6961(a). When Congress listed examples of the types of "procedural requirement[s]" to which federal facilities would be subject, it made clear that such requirements were not just the procedures of state *agencies*, but encompassed the procedures of state *courts*: each federal facility "shall be subject to, and comply with, all . . . State . . . requirements, both substantive and procedural (including . . . any provisions for

---

[3] The United States does not contend that the "court of appeals" referenced in Section 74-4-14(A) is any court other than the NMCA.

13

injunctive relief and such sanctions as may be imposed *by a court* to enforce such relief)." § 6961(a) (emphasis added). The most natural reading of the procedural-requirements language in RCRA's context is one that necessarily includes the procedures a state establishes for any challenges to its agencies' administrative actions and the relief such court may provide.[4] Indeed, the United States requests similar relief from the federal district court as it does from the NMCA—that the allegedly unlawful permit terms be "set aside." *Compare* App. 44, *with* Supp. App. 29.

The United States tries to undermine this common-sense reading by asserting (in a footnote) that the "EPA did not approve the state judicial review procedures in § 74-4-14 and NMAC § 20.4.1.901." Op. Br. at 25–26 n.6 (citing 40 C.F.R. § 272.1601(c)(2)). It thus implies that New Mexico's judicial review statute is not authorized by Congress' delegation of authority to states under 42 U.S.C. § 6926(d). But the United States' characterization of EPA's regulation is misleading. What 40 C.F.R. § 272.1601(c)(2) actually states is that Section 74-4-14, among other statutes and regulations, "provide[s] the legal basis for the State's implementation of the

---

[4] The United States' suggestion that the provision for waiver of sovereign immunity in § 6961(a) extends only to the enforcement of injunctive relief and "applies to federal entities as defendants (and not plaintiffs)" is unavailing. Op. Br. at 18 n.3. Congress did not differentiate in § 6961(a) between federal facilities as plaintiffs as opposed to defendants. Even if that distinction mattered, as discussed below, the United States is acting in a defensive—and not an offensive—capacity in this case. *See also* § I(B), *infra*.

14

hazardous waste management program, but [it is] not being incorporated by reference and do[es] not replace Federal authorities." § 272.1601(c)(2). Acknowledging that Section 74-4-14 is part of the "legal basis" for New Mexico's implementation of RCRA directly contradicts the United States' insinuation that the EPA *disapproves* of section 74-4-14.

By contrast, the next subsection, § 272.1601(c)(3), enumerates other statutes that "are broader in scope than the Federal program" and "are not part of the authorized program." § 272.1601(c)(3)(i). Notably, HWA's judicial review provision is not among those listed statutes. By implication, then, Section 74-4-14 *is* "part of the authorized program"—indeed, it is part of the "legal basis" of New Mexico's implementation of RCRA. § 272.1601(c)(2)–(3). As such, Section 74-4-14 is an integral—and federally approved—part of New Mexico's enforcement program.

In short, because the United States (when representing a federal facility) is subject to the state procedural requirements of the HWA "in the same manner, and to the same extent, as any person is subject to such requirements," it cannot claim § 1345 jurisdiction—a claim of federal jurisdiction based solely on its identity as a sovereign. It would be inconsistent to read § 6961(a) to say federal entities are subject to state "procedural requirements" and enforcement processes like any other party, but that the United States can take a different path for judicial review. For

15

example, New Mexico's administrative-review process includes requirements that place significant importance on public participation, even on appeal. *See, e.g.*, § 74-4-4.2(H) (providing for an opportunity for a public hearing and public submission of data and testimony before the issuance or modification of any permit); N.M. R. App. P. 12-601 (providing for intervention-of-right in an appeal by participants in an agency's adjudicatory or rule-making action). By insisting on special treatment, the United States frustrates Congress' intent that it be subject to these same state-court procedures as "any other person." § 6961(a).

While there is no binding caselaw holding that § 6961(a) includes state judicial-review procedures in its procedural-requirements language, neither has the United States identified any caselaw holding the opposite. The United States attempts to argue that "'procedural' requirements do not refer to the forum for judicial review" but "to those requirements by which the substantive standards are implemented, 'including permit requirements, reporting and monitoring duties, and submission to state inspections.'" Op. Br. at 17 (quoting *United States v. New Mexico*, 32 F.3d 494, 497 (10th Cir. 1994)). But the United States reads an exclusive list of procedural requirements into RCRA where Congress made (and this Court found) only a non-exclusive list, characterized by the phrase, "but not limited to":

> The United States hereby expressly waives any immunity otherwise applicable to the United States with respect to any such substantive or procedural requirement (including, *but not limited to*, any injunctive

16

> relief, administrative order or civil or administrative penalty or fine referred to in the preceding sentence, or reasonable service charge).

§ 6961(a) (emphasis added).

Contrary to what the United States suggests, this Court did *not* read § 6961(a) as limiting the meaning of "procedural requirement[s]" to an exhaustive list of administrative requirements. Rather, this Court stated that "the meaning of 'requirement' cannot . . . be limited to substantive environmental standards . . . but must also include the procedural *means* by which those standards are implemented: including permit requirements, reporting and monitoring duties, and submission to state inspection." *New Mexico*, 32 F.3d at 497 (quoting *Parola*, 848 F.2d at 961). Listing examples of what the procedural-requirements language *includes* does not amount to *excluding* items not listed. The question whether "procedural requirement[s]" include judicial review procedures was not before the Court in *New Mexico*.

The United States mentions that RCRA's citizen-suit provision, 42 U.S.C. § 6972(a), provides for a federal forum. Op. Br. at 23. The provision of federal jurisdiction in that context only reiterates Congress' intent that the United States be treated in the same manner as any other party in RCRA-based litigation: if a citizen sues a private party, § 6972(a) provides a federal forum; if a citizen sues the United States, § 6972(a) provides the same forum. The differentiating factor is the nature of

17

the suit; the common denominator is that the United States is treated the same as any other party.

Finally, though the legislative history of the Federal Facilities Compliance Act does not speak explicitly to judicial review procedures, it illuminates Congress' frustration with the federal government's assertion of sovereign immunity as a roadblock to state-enforcement of RCRA at federal facilities. The Senate Report stated that § 6961(a) "makes it clear that the United States expressly waives immunity for the purposes of enforcing *any substantive or procedural requirement* of solid or hazardous waste laws." S. REP. NO. 102-67, at 4–5 (1991) (emphasis added). And § 6961(a) was amended in response to testimony from many state agencies and attorneys-general, such as that of the Assistant Director of the Pennsylvania Department of Environmental Resources:

> Absent clear state environmental authority, the military has been inflexible and extremely slow to deal with their environmental problems. Clarifying the waiver [of sovereign immunity] will allow states to force federal facilities to comply with state environmental laws just as private industries, and *stop the facilities from dragging their feet by asserting sovereign immunity and litigating these issues*.

H.R. REP. NO. 102-111 at 9 (1992), *as reprinted in* 1992 U.S.C.C.A.N. 1287, 1295 (emphasis added). By asserting sovereign immunity in its original complaint, and by clinging to federal-court jurisdiction despite the lack of any controlling federal issue, the United States is doing precisely what Congress sought to remedy: "dragging [its] feet by asserting sovereign immunity and litigating these issues." *Id.*

18

Section § 6961(a) is irreconcilable with § 1345 where the latter is the only basis for federal jurisdiction over a federal facility's action. This Court's holding to that effect would be in alignment with Congress' intent to remove any special status the United States might have and to hold it to the same substantive and procedural standards as others.

### B.    Caselaw construing the Clean Water Act and Clean Air Act's corollaries to § 6961(a) does not undermine this conclusion.

The United States gives significant weight to *United States v. Puerto Rico*, where the First Circuit held than an analogous provision of the Clean Water Act (CWA), 33 U.S.C. § 1323(a), did not repeal § 1345 jurisdiction. *See* Op. Br. at 21–24 (discussing *U.S. v. Puerto Rico*, 721 F.2d 832 (1st Cir. 1983)). That reliance is misplaced because the CWA includes a removal provision that § 6961(a) does not:

> Nothing in this section shall be construed to prevent any department, agency, or instrumentality of the Federal Government, . . . from removing to the appropriate Federal district court any proceeding to which the department, agency, or instrumentality . . . is subject pursuant to this section, and any such proceeding may be removed in accordance with section 1441 et seq. of Title 28.

33 U.S.C. § 1323(a).

In analyzing whether § 1323(a) repealed § 1345 jurisdiction, the First Circuit emphasized the significance of this removal provision, contrasting it to the Clean Air Act's (CAA) equivalent federal compliance statute, 42 U.S.C. § 7418, which does *not* include a removal provision. *Puerto Rico*, 721 F.2d at 837–38. Though the

19

United States minimizes this point, describing the First Circuit as "plac[ing] *some* weight" on that distinction, Op. Br. at 23 (emphasis added), the First Circuit's discussion of the importance of the removal provision in the CWA takes center stage in *Puerto Rico*:

> While Congress has indicated some intention to detour around a federal forum in CAA certification cases (at least where the government is on the defense), no such road-map is to be found referable to the CWA. To the contrary, by the insertion of language which explicitly contemplates a federal forum in suits under the CWA—language which is wholly alien to the CAA as enacted—Congress seems knowingly to have chosen a different route.
>
> . . . .
>
> [S]ince 33 U.S.C. § 1323(a) unequivocally grants to the United States the right to remove compliance proceedings brought against it to the district courts, Congress must not have believed that the . . . enforcement of state standards required . . . a non-federal forum. It would be anomalous indeed, given this scenario, were we to hold that a different rule should prevail for proceedings of a kindred nature initiated by the government.

721 F.2d at 838. *See generally id.* at 837–39.

The presence or absence a removal provision is significant here, because, like the CAA's corollary (42 U.S.C. § 7418), and *unlike* the CWA's corollary discussed in *Puerto Rico* (33 U.S.C. § 1332(a)), § 6961(a) contains *no* removal provision. The First Circuit in *Puerto Rico* specifically declined to decide whether "even as to the CAA, the absence of removal language such as graces the CWA does not suffice to

20

oust the district courts from jurisdiction under 28 U.S.C. § 1442," suggesting that such an argument rested on "shaky ground." *Puerto Rico*, 721 F.2d at 839 n.8.

We know Congress was well aware of 33 U.S.C. § 1323(a)'s removal language because in floor debate before the vote on the Federal Facilities Compliance Act, one of the co-sponsors of the Act remarked that "a recent Supreme Court decision affecting my State"—*U.S. Dep't of Energy v. Ohio*, 503 U.S. 607 (1992)—"made it clear that the Congress indeed had to act." 102 CONG. REC. 27163, 27163; 102 CONG. REC. H9135 (daily ed. Sept. 23, 1992) (statement of Rep. Dennis Eckart). In *Ohio*, the Supreme Court had construed § 1323(a) to preserve federal immunity from punitive fines. 503 U.S. at 619–20. After examining *Ohio* and § 1323(a), if Congress had wanted to ensure that a federal forum was still available for the United States, it could have included the same removal language in § 6961(a) as existed in § 1323 to preserve its removal rights. It did not. Thus, *Puerto Rico*'s analysis of a differently worded statute does not defeat NMED's argument.

The United States also minimizes the significance of the absence of federal removal language in § 6961(a), arguing that "removal applies only where a party is on defense. Section 1345 applies when the United States is on *offense*." Op. Br. at 23. From that basic principle, it asserts that "the lack of a removal provision is irrelevant to what forum the government may choose as a plaintiff." *Id.* at 23–24. But the United States is not on the offensive in this case: it is appealing from and

21

defending against an adverse state-agency permitting decision, not bringing an original action. Congress' omission of a removal provision in § 6961(a) is therefore highly relevant. The First Circuit agreed, reasoning that "[i]t would be anomalous indeed . . . were we to hold that a different rule should prevail for proceedings of a kindred nature initiated by the government." *Puerto Rico*, 721 F.2d at 838.

Congress' eschewal of a removal provision in § 6961(a) leads to the only permissible conclusion that, had Congress wanted to immunize the United States from following the same judicial review procedures as other parties when it waived such immunity for other state procedures, it would have said so. It did not.

### C.    *Colorado River* construed a different statute with a different legislative history, and so is distinguishable.

The United States urges that § 6961(a) is most naturally read as conferring concurrent jurisdiction on state and federal courts. Op. Br. at 13. The United States cites *Colorado River* in support of its conclusion that § 6961(a) provides for concurrent state jurisdiction, *id.* at 19, and argues that § 6961(a) cannot repeal jurisdiction unless it makes state-court jurisdiction exclusive, *id.* at 21. But *Colorado River* analyzed whether § 1345 was repealed by a different statute, the McCarran Amendment, 43 U.S.C. § 666. The Supreme Court examined the plain language of that statute, asking whether, "by its terms, at least, [the McCarran Amendment] indicate[s] any repeal of jurisdiction under § 1345." *Colorado River*, 424 U.S. at 807. It surveyed the legislative history of the McCarran Amendment to determine if

22

there was a "clear purpose to terminate any portion of § 1345 jurisdiction," *id.*, and it examined whether there was any implied repeal, as evidenced by any "irreconcilability in the operation of both statutes," *id.* at 809.

The Court determined that the McCarran Amendment "does not by its terms, at least, indicate any repeal of jurisdiction under § 1345." *Id.* at 807. But the Court did not construe the codified sections of § 666 in its plain-text analysis. Rather, it looked to an *uncodified* subsection of the Amendment that withheld appropriated funds for a "specific suit then pending in a [specific] District Court," concluding that "the Amendment did not repeal the jurisdiction of district courts under § 1345 to adjudicate suits brought by the United States for adjudication of claimed federal water rights." *Id.* Thus, the Court did not consider whether the language common to both the McCarran Amendment and § 6961(a) would subject a federal entity to state appellate procedures where § 1345 was the sole basis for federal jurisdiction.[5]

A fundamental difference between this case and *Colorado River* is the nature of the statutory scheme from which the later statute was drawn: the McCarran Amendment is part of Chapter 15 of Title 43, which concerns water appropriation

---

[5] *Compare, e.g.*, 43 U.S.C. § 666 ("The United States . . . shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, *in the same manner and to the same extent as a private individual* under like circumstances." (emphasis added)), *with* 42 U.S.C. § 6961(a) ("Each . . . agency . . . of the Federal Government . . . shall be subject to, and comply with, all Federal, State, interstate, and local requirements, . . . *in the same manner, and to the same extent, as any person is subject to such requirements*." (emphasis added)).

23

on public lands. Unlike RCRA, Chapter 15 does not create a comprehensive scheme that was designed to be delegated in wholesale fashion to the states. *See Cappaert v. United States*, 426 U.S. 128, 145–46 (1976) ("Nor . . . is the McCarran Amendment a substantive statute, requiring the United States to 'perfect its water rights in the state forum like all other land owners.'" (citation omitted)). With no statutory scheme conferring authority on states to enforce that body of law, the Court unsurprisingly found no evidence in the legislative history supporting an implied repeal. By contrast, RCRA's plain text and legislative history confers that authority on states.

*Colorado River* is also distinguishable by its procedural posture: the Court was deciding whether the federal district court had jurisdiction over the *initial adjudication* of the United States' water rights, 424 U.S. at 806, *not* over whether the state court was an appropriate forum to "obtain review" from the judgments or orders of the state proceedings, § 666. Because the procedural posture was different, and the Court was not looking at an appeal from state proceedings (as this Court is here), it had no reason to consider the plain-text arguments NMED raises.

*Colorado River* is therefore not controlling here.

\* \* \*

NMED urges this Court to apply a plain-text reading to conclude that § 6961(a) impliedly repeals § 1345 jurisdiction for federal facilities.

24

**II.    Alternatively, the district court did not abuse its discretion to abstain from hearing this case.**

If this Court determines that § 6961(a) does not repeal § 1345 jurisdiction for federal facilities, it should conclude that the district court did not abuse its discretion by abstaining in this case. As explained more fully below, *see* § II(B)(i), *infra*, the court did not have a "virtually unflagging obligation" to exercise jurisdiction, because the United States' requested relief was declaratory, not coercive. *United States v. City of Las Cruces*, 289 F.3d 1170, 1181 (10th Cir. 2002) (citation omitted). General principles underlying abstention apply to this administrative appeal because it raises state-law issues, federal law does not provide the rule of decision, and the NMCA is an adequate forum for resolving the dispute. Considerations of federalism and wise judicial administration counsel for restraint in this case. *See Wilton v. Seven Falls*, 515 U.S. 277, 288 (1995) ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.").

**A.    *Colorado River* abstention is appropriate.**

The overarching test for *Colorado River* abstention is whether there are "exceptional circumstances" warranting abstention. 424 U.S. at 813. At a general level, exceptional circumstances exist because this is an appeal from a state agency's administrative decision that would ordinary be litigated in state court, it raises state-law issues, and federal law does not provide the rule of decision. *See Chicago, R.I.*

25

& *P.R. Co. v. Stude*, 346 U.S. 574, 581 (1954) ("The United States District Court . . . does not sit to review on appeal action taken administratively or judicially in a state proceeding."); *accord Trapp v. Goetz*, 373 F.2d 380, 383 (10th Cir. 1996).

Under the traditional *Colorado River* test, courts weighing abstention should consider: "(1) whether the state or federal court first assumed jurisdiction over the same res; (2) 'the inconvenience of the federal forum'; (3) 'the desirability of avoiding piecemeal litigation'; and (4) 'the order in which jurisdiction was obtained by the concurrent forums.'" *D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1234 (10th Cir. 2013) (quoting *Colorado River*, 424 U.S. at 818). The Court has recognized three additional factors: whether "federal law provides the rule of decision on the merits," *Moses H.*, 460 U.S. at 23 (citing *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 667 (1978)); whether the litigation was vexatious, *id.* at 17 n.20; and whether the state-court proceedings would be adequate to protect the parties' rights, *id.* at 26. *See also Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994) (stating factors).

Importantly, the *Colorado River* factors are not a "mechanical checklist"— "careful balancing" is required, and "[t]he weight to be given to any one factor may vary greatly from case to case." *Moses H.*, 460 U.S. at 16. "No one factor is necessarily determinative; a carefully considered judgment taking into account both

the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818–19.

NMED agrees with the district court's analysis that the first, second, and fourth *Colorado River* factors are neutral in this case. App. 215. NMED therefore focuses here on the third *Colorado River* factor, and the two *Moses H.* factors discussed by the district court: together, these factors support abstention.

### i. The danger of piecemeal litigation.

The district court gave significant weight to the third *Colorado River* factor, "the danger of piecemeal litigation," and rightly so, given the Supreme Court's description of that factor as the "paramount" consideration in *Colorado River*. *Moses H.*, 460 U.S. at 19. The Court's overarching concern in *Colorado River* was the avoidance of piecemeal litigation, and that concern came from the McCarran Amendment. *See Colorado River*, 424 U.S. at 819 ("[A] number of factors clearly counsel against concurrent federal proceedings. The most important of these is the McCarran Amendment itself. The clear federal policy evinced by that legislation is the avoidance of piecemeal adjudication of water rights in a river system."). From that, it concluded that "[t]he consent to jurisdiction given by the McCarran Amendment bespeaks a policy that recognizes the availability of comprehensive state systems for adjudication of water rights as the means for achieving these goals," including the goal of conducting water rights litigation "in unified proceedings." *Id.*

27

At a general level, "[p]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). The district court found that the parties and issues in the NMCA appeal and the case before it were "nearly identical." App. 214. Though the NMCA appeal is stayed, it is only stayed pending the district court's consideration of jurisdiction, now the subject of this appeal. The United States assumes that dismissal of the state case is guaranteed if it prevails here. Op. Br. at 33. But dismissal of the state case under N.M. R. App. P. 12-401(B)(2) is not guaranteed. As the district court observed, though "there is not an immediate risk of piecemeal litigation" because the NMCA case is stayed, "the threat looms on the horizon." App. 215.

The district court correctly ascertained the most pertinent policy consideration in this case: the policy Congress expressed in § 6961(a). Just as the *Colorado River* Court interpreted the McCarran Amendment to express congressional concern with piecemeal litigation, so here the district court interpreted § 6961(a) to express congressional concern that federal facilities do not receive preferential treatment in challenging states' enforcement of RCRA. *See* App. 210 ("[T]he United States [in § 6961(a)] exposed itself to the HWA in its entirety, including its provisions for appealing permit terms."); *id.* at 211 ("[T]he intent of Congress was to subject the

28

United States to [state appellate procedures]."). Understandably, then, the district court was guided by Congress' policy concern in its analysis of what "piecemeal litigation" means as applied to this case—it considered piecemeal litigation as a danger not only here but in future cases, concluding that "there is a risk of developing a body of common law at the state which applies to all permit holders except the United States." *Id.* at 216.

The United States asserts that piecemeal litigation would result if the district court *abstained* from this case because, "by declining to decide the fully briefed federal case at the expense of reactivating the long-dormant state-court litigation, the district court's dismissal wastes judicial resources." Op. Br. at 14; *see id.* at 40. But at no time did the district court address the underlying merits in this case: it decided only jurisdiction and abstention questions. App. 220. The United States seems more concerned with its own duplicated effort in "reactivating the state court litigation, filing the record, restarting the motions practice, briefing the merits a second time, and potentially arguing the case." Op. Br. at 40. But *Colorado River* abstention isn't concerned with the duplicative efforts of counsel, only that of the courts. 424 U.S. at 817.

The district court did not abuse its discretion in deciding that "piecemeal litigation" factor supports abstention.

### ii. Federal law does not provide the rule of decision on the merits.

The district court also considered whether federal law provides the rule of decision on the merits. App. 215 (citing *Moses H.*, 460 U.S. at 23). The district court correctly determined that "[f]ederal law does not provide the rule of decision in this case." App. 215. Rather, New Mexico's statutory standard of review under the HWA applies, and "[t]hose definitions are further construed and explained in state common law." *Id.* The district court also examined NMED's defenses in this case; namely, that the United States' "claims were not properly preserved in the administrative record" which requires "application of state rules and common law." *Id.* at 216. The district court expressed uncertainty about whether those state law issues are "clear, will necessitate reasoned guesses, or may even require certification to the state courts." *Id.*

Now on appeal, the United States implies that federal law *does* provide a rule of decision because state law is "intertwined" with federal law. Op. Br. at 36; *see id.* at 36–37. But the United States does not argue explicitly that federal law provides the rule of decision here, presumably because it cannot. Its amended complaint raises only state-law claims. *See* App. 43 (challenging the Permit's definition of "'hazardous waste' for the purposes of corrective action" as inconsistent with state law and the Permit's application of "corrective action" to "contaminants" is similarly inconsistent); *see also* Supp. App. 179–80 (asserting that the New Mexico

Environment Improvement Board's rules govern the scope of NMED's corrective action authority). Indeed, the United States disavowed the relevance of federal rulemaking to its state-law claims. *See* Supp. App. 255–56 ("[U]nder the plain language of governing New Mexico law, the Permit exceeds NMED's authority. Whether EPA intends to initiate rulemaking to amend its corrective action rules has no bearing on whether any of the Permit's disputed provisions are valid under applicable New Mexico law." (citations omitted)).

That state law incorporates or "intermingle[s]" with federal law does not mean that federal law provides the rule of decision. Op. Br. at 36. For example, even if the HWA's "arbitrary and capricious" standard *borrows* from the Administrative Procedure Act (APA), that does not mean that APA caselaw *governs* New Mexico's construction of the HWA—New Mexico appellate courts are the authority on the HWA, not federal courts. *See Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1304 (10th Cir. 2010) ("It is axiomatic that state courts are the final arbiters of state law." (citation omitted)). Nor does NMED's use of federal preservation law to supplement state law convert federal law into the rule of decision: federal law is persuasive but not binding on the preservation issue. *See* Supp. App. 203–05 (discussing state and federal cases).

In light of the above, the United States' position on this point should be rejected.

31

### iii. State-court proceedings adequately protect the litigants' rights.

The district court also mentioned the *Moses H.* factor, "whether the state-court proceedings adequately protect the litigants' rights." App. 215. The NMCA is an adequate forum to protect the parties' rights: it was clearly an adequate forum in *Nuclear Waste Partnership*, where the United States *defended* a challenge to a NMED permit modification. 2022-NMCA-014, ¶ 1. There, the United States did not seek to remove the case to federal court despite the existence of federal questions and despite the NMCA's need to construe federal law. *See generally id.* ¶¶ 1–12. And the NMCA routinely decides HWA cases with federal issues. *See* Supp. App. 18 (collecting cases). Because the NMCA is authorized by statute to provide the forum for administrative appeals, it is *a fortiori* an adequate forum: the burden should lie with the United States to demonstrate otherwise.

On appeal, the United States alleges that the adequacy-of-the-state-forum prong "evaluates adequacy solely from the perspective of the *federal plaintiff*." Op. Br. at 37 (citing *Fox*, 16 F.3d at 1082). But the United States adds a self-serving gloss to this prong, implying that the test is meant to favor a federal-court plaintiff over a federal-court defendant. Rather, *Moses H.* emphasized the adequacy of the forum for the resolution of the *dispute*, not whether it disadvantages one side over the other: "When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate

32

vehicle for the *complete and prompt resolution of the issues between the parties*." *Moses H.*, 460 U.S. at 28 (emphasis added).

Using its gloss as a springboard, the United States posits that a state forum is inadequate "for protecting the United States' rights" here because New Mexico's appellate rules provide for only discretionary review to the New Mexico Supreme Court, while 28 U.S.C. § 1291 provides a statutory right to appeal a district court decision. Op. Br. at 37; *see id.* at 38 (citing N.M. R. App. P. 12-502). The United States therefore claims a "disadvantage[]" in the state forum because the New Mexico Supreme Court's "grounds for discretionary review are sharply circumscribed and limited to significant constitutional questions, issues of substantial public interest, and direct conflicts with prior decisions." Op. Br. at 38. Assuming that a NMCA decision would faithfully apply New Mexico Supreme Court precedents, and because there are no constitutional questions at issue here, this argument suggests that the United States' appeal would not raise any issue of substantial public interest. But such a "disadvantage" speaks more to the United States' decision to litigate the permit renewal in the first place than it does to the inadequacy of the state forum. Other than this implied suggestion that the public interest is not on its side, the United States fails to explain how the state forum would disadvantage the United States any more than NMED.

In a similar vein, the United States implies that it should be granted a federal forum because of its "superior federal interest." Op. Br. at 15, 38 (quoting *United States v. Morros*, 268 F.3d 695, 708 (9th Cir. 2001)). In *Morros*, the Ninth Circuit discussed the federal government's interest in establishing a permanent, national repository for nuclear waste, a goal espoused by Congress in the Nuclear Waste Policy Act. 268 F.3d at 697. In contrast to the "superior federal interest" in *Morros*, *id.* at 708, the United States here is not representing a national agenda blessed by Congress, quite the opposite—it is representing one Air Force base in its attempt to avoid New Mexico's federally approved hazardous waste management authority and the USAF's own clean-up duties. Its interest in resisting state enforcement of RCRA and the HWA at Cannon is in no way "superior" to the state's interest in protecting human health and natural resources from contamination. *Id.*

In its jurisdiction analysis, the United States posits that "federalism dynamics change dramatically when the United States is a party." Op. Br. at 28. But the whole point of § 6961(a) was to end the historic warping of "federalism dynamics" created by the federal government's involvement. The United States also relies on *Morros* for the proposition that federalism concerns are irrelevant when "the state and federal governments are in direct conflict before they arrive at the federal courthouse," and so "[a]ny attempt to avoid a federal-state conflict would be futile." Op. Br. at 28 (quoting *Morros*, 268 F.3d at 707–08). If the United States was in conflict with

34

NMED regarding the State's ability to regulate PFAS under RCRA before it arrived at the federal courthouse, however, that was news to NMED. As explained above, the United States did not raise the challenges it now asserts during the state administrative process, nor did it request an administrative hearing. Belatedly raising these objections on appeal, the United States bypassed the proper avenue—the state administrative process—for first attempting to resolve its alleged conflict, and then eschewed the proper state forum for its appeal from that process.

This procedural history belies the United States' argument that any attempt to avoid federal-state conflict is futile, such that federalism concerns are irrelevant. They are not.

\* \* \*

In sum, the district court did not rigidly apply a "mechanical checklist," but it was not required to. *Moses H.*, 460 U.S. at 16. Rather, it properly engaged in a "careful balancing" and exercised its discretion to give greater weight to some factors than others. *Id.* It did not abuse its discretion in so doing.

## B.    This Court may affirm on alternative abstention grounds.

If this Court decides not to affirm the district court on *Colorado River* grounds, it may exercise its discretion to affirm the district court on the alternative ground of abstention doctrines that were not briefed below or discussed by the district court. *See Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, 706 (10th Cir. 1988)

35

("[W]here abstention is at issue, the failure to raise it at the district court level does not necessarily waive the appellant's right to raise it on appeal."). This Court may consider abstention doctrines not raised below "if necessary for the first time at the appellate level, even though no party is asking for it." *Id.* (citation omitted). Indeed, "just as [this Court] may affirm the district court on any ground supported by the record, [New Mexico] as 'appellee is generally permitted to defend the judgment won below on any ground supported by the record without filing a cross appeal.'" *United States v. Hess*, 106 F.4th 1011, 1030 (10th Cir. 2024) (citation omitted). As explained more fully below, the district court properly abstained from exercising jurisdiction for the reasons announced in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). *See infra* § II(B)(i)–(ii). Because the district court made findings about abstention that overlap with these doctrines, affirming on an alternate abstention ground would not "overstep the bounds of [the Court's] review for abuse of discretion and enter the realm of de novo review." *Fox*, 16 F.3d at 1082. Remand is therefore unnecessary.

This Court considers three factors to decide whether to exercise its discretion to affirm on alternative grounds: (1) "whether the ground was fully briefed and argued here and below"; (2) "whether the parties have had a 'fair opportunity to develop the [factual] record'"; and (3) "whether, in light of factual findings to which we defer or uncontested facts, our decision would involve only questions of law."

36

*Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004) (citation omitted). These are "guiding factors"—they are not a rigid test or mandatory checklist. *United States v. Damato*, 672 F.3d 832, 844 (10th Cir. 2012).

First, though the parties did not raise *Brillhart* or *Burford* abstention below, and the district court did not consider those doctrines, the United States will have an opportunity to respond to these arguments in its Reply. Further, the district court discussed *Colorado River* abstention and made findings that are common to these doctrines. *See* App. 213–216. The United States is no more disadvantaged by NMED raising these grounds on appeal than it would have been if the district court had raised them *sua sponte*. Given this background, the first *Elkins* factor—considering whether these grounds were briefed below and on appeal—is at least partially, if not mostly, met. *See Elkins*, 392 F.3d at 1162.

Second, the court's consideration of whether the parties "have had a 'fair opportunity to develop the factual record'" is met in this case. *See id.* (alteration and citation omitted). As the United States argued below, this case is "an administrative appeal" from a "record review case." Supp. App. 236. For purposes of an abstention analysis, the record is sufficiently developed (and uncontested) for this Court to decide whether *Brillhart* or *Burford* abstention applies: this Court need not look beyond the district court's opinion and the appellate record for any facts it needs.

The second *Elkins* factor therefore weighs in favor of considering these alternative grounds on appeal.

Third, "in light of . . . uncontested facts" in the record, this Court's "decision would involve only questions of law." *Elkins*, 392 F.3d at 1162. This Court is "free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *D.A. Osguthorpe*, 705 F.3d at 1231 (citation omitted). The questions of whether *Brillhart* or *Burford* abstention apply are questions of law that rest on uncontested facts, such as the allegations in the amended complaint, provisions in the Permit, and the underlying dispute elucidated in the parties' summary-judgment briefing. *See Damato*, 672 F.3d at 845. Unlike *Colorado River* abstention, which should be raised at the district court level (and was here), "where *Burford* abstention is appropriate, it can be ordered on appeal." *Grimes*, 857 F.2d at 707.

In sum, this Court may exercise its discretion to affirm under either the *Brillhart* or *Burford* abstention doctrines.

### i.   *Brillhart* abstention is appropriate.

The district court could have properly declined jurisdiction under *Brillhart*, 316 U.S. at 491, because the United States brought claims for only declaratory relief. *See Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 950 (5th Cir. 1994) ("[A]bstention from a declaratory judgment action is ordinarily appropriate

when the state offers an adequate alternative forum in which to resolve the particular dispute."); *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 287 (3d Cir. 2017) ("[A]bstention is appropriate where a declaratory judgment is 'being sought merely to determine issues involved in cases already pending.'" (citation omitted)). And because there are parallel proceedings "involving the same parties and presenting opportunity for ventilation of the same state law issues . . . pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283 (quoting *Brillhart*, 316 U.S. at 491).

First, under this Court's precedents, this case is a purely declaratory judgment action and § 1345 does not deprive the district court of discretion to abstain. Second, the *Brillhart* factors support affirming the district court's decision to abstain.

> **1.    *This is a purely declaratory judgment action and so § 1345 does not deprive the district court of discretion to abstain.***

In *Las Cruces*, this Court held that when the United States as plaintiff "prays only for declaratory relief," jurisdiction under § 1345 does not deprive the court of the discretion conferred by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02. *Las Cruces*, 298 F.3d at 1180. This discretion is "'confer[red] . . . on the courts,' regardless of the jurisdictional bases upon which the suit is brought." *Id.* at 1181 (quoting *Wilton*, 515 U.S. at 287). This Court applied *Brillhart* to § 1345

39

jurisdiction, observing that other circuits "have applied the *Brillhart* rule when subject matter was premised on grounds other than diversity." *Id.*

Parsing the distinction between coercive and declaratory actions, this Court reasoned that "[t]he Federal Declaratory Judgments Act authorizes, but does not compel, federal jurisdiction over suits seeking *declaratory relief*. Thus, *unlike coercive actions*, declaratory actions do not invoke the federal judiciary's 'virtually unflagging obligation' to exercise its jurisdiction.'" *Id.* (quoting *Sinclair Oil Corp. v. Amoco Prod. Co.*, 982 F.2d 437, 440 (10th Cir. 1992)). So, "[i]f the plaintiff only requests a declaration of its rights, not coercive relief, the suit is a declaratory judgment action for purposes of determining whether the district court has broad discretion under *Brillhart* to refuse to entertain the suit." *Id.* This Court also "reject[ed] the contention that a boilerplate prayer for 'necessary and proper relief' converts a declaratory judgment action into some other type of lawsuit." *Id.* at 1182 n.10 (citing *Frazier v. Simmons*, 254 F.3d 1247, 1254 (10th Cir. 2001)).

Here, the United States sought declarations that "the challenged Permit terms are inconsistent" with New Mexico statutes and regulations, and that they are "arbitrary, capricious, or an abuse of discretion." App. 44. Beyond that, it asked that the district court to "[s]et aside the unlawful provisions of the Permit" and "[g]rant such other relief as may be just and proper." *Id.* The United States' boilerplate request for "other relief as may be just and proper" does nothing to shift the

40

complaint outside the realm of purely declaratory relief. *Id.*; *see Las Cruces*, 289 F.3d at 1181 n.10.[6]

The primary question, then, is whether its prayer for the court to "[s]et aside the unlawful provisions of the Permit" requests coercive rather than simply declaratory relief. To "set aside" means "to annul or vacate (a judgment, order, etc.)." *Set Aside*, Black's Law Dictionary (12th ed. 2024). So, the United States' request that the district court "set aside" certain provisions of the Permit is another way of asking the court to declare that those provisions are invalid; or, to annul or vacate them. Asking the court to vacate or annul portions of Permit does not entail any *coercive* action. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010) (comparing an injunction with the "less drastic remedy" of a "partial or complete vacatur"); *Brito v. Garland*, 22 F.4th 240, 251 (1st Cir. 2021) ("[W]hile declaratory relief can sometimes have much the same practical effect as injunctive relief, it differs legally and materially."); *Ulstein Mar., Ltd. v. United States*, 833

---

[6] Though in the "Nature of the Action" portion of its Amended Complaint, the action is described as one for "declaratory *and injunctive relief*," App. 38 (emphasis added), which seeks "all appropriate *injunctive* relief," *id.* at 39 (emphasis added), the United States' prayer for relief does not request or even mention injunctive relief, *see id.* at 43–44. Nor does the United States specify the injunctive relief that it seeks in *any* part of the Amended Complaint, as required by the Federal Rules of Civil Procedure: "A pleading that states a claim for relief *must* contain . . . a demand for the relief sought." Fed. R. Civ. P. 8(a)(3) (emphasis added). The Amended Complaint therefore fails to meet the standard this court announced in *Las Cruces* for coercive, as opposed to simply declaratory, relief.

F.2d 1052, 1055 (1st Cir. 1987) ("Injunctions and declaratory judgments are different remedies. . . . A declaratory judgment . . . does not, in itself, coerce any party or enjoin any future action."); *accord IAP Worldwide Servs., Inc. v. United States*, 160 Fed. Cl. 57, 71 (2022); *cf. Southwind Aviation*, 23 F.3d at 951 ("Southwind also requests coercive remedies for the breach of contract in the form of damages, attorney's fees, and injunctive relief. Inclusion of these coercive remedies indisputably removes this suit from the ambit of a declaratory judgment action.").[7]

The United States does not seek to enjoin NMED's enforcement of the Permit; indeed, it has not even asked for a stay of enforcement of the Permit pending this appeal. *See* § 74-4-14(D). Nor does the United States seek damages that may arise from NMED's enforcement of the Permit in its current form. Without any request for "coercive remedies," the United States' request for relief is merely declaratory, as it was in *Las Cruces*.

---

[7] NMED disagrees with the district court's characterization of the relief sought as injunctive. *See* App. 206 ("[The United States] requests injunctive relief to set aside the unlawful terms of the permit."). Though the district court cited to the Amended Complaint's prayer for relief on page 7, it read the "injunctive" relief mentioned in the body of the complaint into the United States' prayer for relief. But none is enumerated there.

42

### 2.   *The* **Brillhart/Mhoon** *factors support abstention.*

*Brillhart* abstention is appropriate in this case because "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495 (emphasis added). Here, the United States removed the sole federal question from its complaint and there are no questions of federal law that the district court must decide. *Compare* App. 14, *with* App. 43. Nor does the United States challenge the district court's conclusion that the pending state appeal is between the same parties and presents "nearly identical" claims as the suit in federal court. App. 214.

In more specific guidance, this Court recognizes five "factors to be weighed by a district court when asked to abstain from hearing a declaratory judgment action in favor of parallel state court litigation." *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1316 (10th Cir. 2024). Those factors are:

> "[1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective."

*Id.* (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

43

The first two factors "encompass inquiry into the proceedings' similarity," and "are necessarily driven by the degree of identity of parties and issues in the concurrent proceedings." *Las Cruces*, 289 F.3d at 1183. Taking the first two *Brillhart/Mhoon* factors together, this Court has explained that "the inquiry into whether the declaratory judgment settles a controversy and clarifies the legal relationships at issue is designed to shed light on the overall question of whether the controversy would be better settled in state court." *Las Cruces*, 289 F.3d at 1187.

Albeit in the context of *Colorado River* abstention, the district court in this case explained why "the controversy would be better settled in state court." *Id.* It reasoned that "[f]ederal law does not provide the rule of decision in this case" and posited that certification of state-law issues might be necessary. App. 215. It explained that, "in this unique situation—a state-law issue analyzed under state-law standards and regarding which the Congress has expressly waived sovereign immunity," and with "nearly identical" parties and issues, the case belonged in state court. *Id.* NMED agrees. The first two *Mhoon* factors are met here.

Regarding the third *Mhoon* factor, NMED does not assert that the United States' insistence on litigating this case in federal court (despite the lack of a federal question) constitutes procedural fencing. This factor is therefore neutral.

The fourth *Mhoon* factor is the most important and relevant in this case. A declaratory judgment action here "would increase friction between our federal and

44

state courts and improperly encroach upon state jurisdiction" because Congress through § 6926(d), and the New Mexico legislature through section 74-4-14, provided that the NMCA decide any issues arising from a final state agency action.

The United States' claims raise novel questions of state law that are best settled in state court. *See* App. 43; *supra* § II(A)(ii) (explaining why state and not federal law provides the rule of decision here); *supra* §II(A)(iii) (explaining why the state forum is adequate and preferable); *see also Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 816 (6th Cir. 2004) ("[H]ere, there are two potential unresolved questions of state law concerning state regulated insurance contracts, [so] this consideration weighs against exercising jurisdiction."). New Mexico courts are best positioned to answer the questions of state law raised here—a federal court's determination of those questions would create needless friction between state and federal courts.

As discussed above in the context of *Colorado River* abstention, *supra* § II(A)(i), the district court thoughtfully reflected on the friction that would be created between federal and state sovereigns, outlining the risk of a negative "impact on future cases" if the United States "is allowed to avoid the state procedure by invoking federal jurisdiction any time any federal facility in the state seeks to challenge a permit." App. 216. It cautioned against the creation of "divergent or conflicting precedents in federal court which apply distinctively to the United

States." *Id.* NMED shares the district court's concern that developing a body of common law applicable only to the United States—when Congress specifically stated that federal facilities should be subject to the same substantive and procedural requirements as other persons—would increase the friction between state and federal courts, as well as between state and federal sovereigns. The fourth *Mhoon* factor is therefore met.

Finally, under the fifth *Mhoon* factor, state court provides "an alternative remedy which is better or more effective" because RCRA and the HWA together provide for state-court jurisdiction over this appeal—the NMCA is therefore the "better or more effective" forum. The United States' arguments that the NMCA is an inadequate forum under *Colorado River* are unavailing. *See* Op. Br. at 37; § II(A)(iii), *supra*.

In light of the above, this Court may exercise its discretion and affirm the district court's decision to abstain under the alternate ground of *Brillhart* abstention.

### ii. *Burford* abstention is appropriate.

This Court may also exercise its discretion to affirm the district court on the alternative ground of *Burford* abstention, which also applies here. Under *Burford*,

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case

and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* (*NOPSI*), 491 U.S. 350, 361 (1989) (quoting *Colorado River*, 424 U.S. at 814); *accord W. Ins. Co. v. A & H Ins., Inc.*, 784 F.3d 725, 727 (10th Cir. 2015).

Here, *Burford*'s threshold factors are met: the district court was sitting in equity, because only declaratory relief was requested. *See Manning v. U.S.*, 146 F.3d 808, 812 (10th Cir. 1998) (reasoning that the plaintiff's "action was equitable in nature" because he "was not requesting monetary damages, but was seeking only equitable relief in the form of a declaratory judgment and injunction"). And there is no dispute that NMED's permit issuance was a "proceeding[] or order[] of [a] state administrative agenc[y]." *NOPSI*, 491 U.S. at 361. The NMCA's review is timely and adequate. Proceeding to the disjunctive prongs the Court outlined in *NOPSI*, *Burford* abstention is appropriate here under either prong:

### 1. *Difficult questions of state law bear on policy problems of substantial public import.*

First, this case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case . . . at bar." *NOPSI*, 491 U.S. at 361. The underlying case implicates not only New Mexico's authority to regulate hazardous waste under the HWA, but also its sovereign authority to require corrective action necessary to protect "human health

47

and the environment" from contaminants in the "soil, sediment, rock, surface water, groundwater, or air." App. 60. The district court made findings of fact about the devastating impact that Cannon's PFAS contamination had on local dairies. App. 203. It also made findings about the various cancers and health impacts caused by PFAS, implicitly recognizing the importance of a public response to PFAS. *Id.*

The public policy interests the Supreme Court recognized in *Burford* regarding the conservation and regulation of oil apply with equal force to an even more basic and fundamental common need: the need for safe groundwater. *See Burford*, 319 U.S. at 324 ("Of far more importance than any other private interest is the fact that the over-all plan of regulation . . . is of vital interest to the general public which must be assured that the interests of individual tract owners will be put aside when necessary . . . .").

Just as the Supreme Court recognized the on-the-ground complexity of the state's oil and gas regulation in *Burford*, here, there is an indisputable complexity to the State's regulation of groundwater quality and quantity. The challenged Permit incorporates not only HWA and RCRA standards, but also state water quality standards promulgated by the New Mexico Water Quality Control Commission under the authority of the New Mexico Water Quality Act, N.M. Stat. Ann. §§ 74-6-1 to -17 (1967, as amended through 2019). *See* App. 60 (defining "contaminant[s]" and referencing New Mexico regulations for lists of groundwater contaminants and

toxic pollutants). And groundwater, like oil, can become "entangled in geological-legal problems of novel nature" so that the state's interest in "protect[ing] the public interest" against that of private entities—or federal facilities—must be given great weight. *Burford*, 319 U.S. at 319–20.

Unlike the regulation of "wholesale electricity" in *NOPSI*—which the Court reasoned "is not bought and sold within a predominantly local market" and so "w[ould] not disrupt state resolution of, distinctively local regulatory facts or policies," *NOPSI*, 491 U.S. at 363–64—the regulation of groundwater is a local issue requiring local facts and local policies, even if the federal government does "supplement state control" through federal statutes and regulations, *Burford*, 319 U.S. at 319; *see Robert-Gay Energy Enters., Inc. v. State Corp. Comm'n*, 753 F.2d 857, 860 (10th Cir. 1985) (affirming federal district court's abstention from hearing challenge to state agency's decision, despite existence of federal due process claims); *Wildgrass Oil & Gas Comm. v. Colorado*, 843 F. App'x 120, 122 (10th Cir. 2021) (unpublished) (same).

New Mexico's interest is not just in the "*outcome* of th[is] particular case"—though the State's interest in protecting its residents and natural resources from pollution is vitally important—it is also in the "importance of the generic proceedings to the State." *NOPSI*, 491 U.S. at 365. New Mexico has a significant and weighty interest in resolving appeals of its own state agencies' actions in its own

49

courts. *See, e.g.*, *New Energy Econ., Inc. v. Shoobridge*, 2010-NMSC-049, ¶ 10, 149 N.M. 42, 243 P.3d 746 (cautioning against the use of state declaratory judgment actions "to challenge . . . administrative actions if such an approach would . . . disregard an exclusive statutory scheme for the review of administrative decisions, or circumvent procedural or substantive limitations that would otherwise limit review" (internal quotation marks and citation omitted)); *supra* § I(A) (discussing importance of public participation in New Mexico's administrative proceedings and state judicial review process).

NMED's ability to respond to PFAS contamination in its HWA Permit requirements is a "policy problem[] of substantial public import whose importance transcends the result in th[is] case." *NOPSI*, 491 U.S. at 361. The extent to which New Mexico can enforce its own statutes and regulations to protect human health and the environment is particularly important in the context of contaminants such as PFAS, which the federal government has been slow to regulate despite knowing at least a decade ago that such substances are toxic to humans and the environment. *See* Supp. App. 49–50 (discussing 2012 USAF guidance on sampling and 2016 EPA lifetime drinking water health advisory values for PFAS); Op. Br. at 6 ("PFAS chemicals, as of the filing of this brief, are not listed or identified characteristic hazardous wastes under EPA's RCRA regulations."); *id.* at 12 (explaining that "EPA has issued proposed rules listing PFAS as a hazardous constituent under RCRA

50

regulations," 89 Fed. Reg. 8606 (Feb. 8, 2024), but that the rule will not be finalized before July 2025).

New Mexico's interest in construing its own statutes and regulations takes on substantial public importance that transcends this particular case, and its interest in preserving state-court judicial review of challenges to its agencies' orders and permits should prevail. *Burford*'s first prong is therefore met here.

> **2.      *Federal review of this question would be disruptive of state efforts to establish a coherent policy regarding hazardous waste, particularly PFAS.***

Second, exercise of federal review of this question would disrupt New Mexico's efforts to establish a coherent policy relative to its response to hazardous waste. The Supreme Court "has noted the risk of disruption in cases involving procedural challenges to whether a state agency 'misapplied its lawful authority.'" *Wildgrass*, 843 F. App'x at 122 (quoting *NOPSI*, 491 U.S. at 362). The United States argues that "NMED's corrective action authority does not extend beyond the 'rules of the [New Mexico Environmental Improvement Board],'" Supp. App. 180, nor beyond the limits of "HWA's statutory definition of 'hazardous waste,'" *id.* at 179, and that the Permit's terms and definitions are inconsistent with the HWA, *see* App. 43. Like the plaintiffs in *Burford* and *Wildgrass*, the United States has not availed itself of state remedies "and it likewise challenges whether a state agency . . . properly applied its governing statute." *Wildgrass*, 843 F. App'x at 123.

The district court's concern with a special and divergent body of law that applies uniquely to the United States, as discussed above in the *Brillhart* and *Colorado River* analyses, also addresses *Burford*'s second prong—it speaks to the disruptive nature of federal interference with the state's efforts to establish a "coherent policy with respect to" hazardous waste. *NOPSI*, 491 U.S. at 361; *see* App. 216. If one rule applies to federal facilities but another to private parties, it disrupts the state's ability to enforce RCRA coherently and equally across the board. Similarly to *Grimes*, "where states have responded to . . . congressional policy by formulating complex and specialized administrative and judicial schemes to regulate insurers," of which "exercise by a federal court of its jurisdiction" is disruptive, 857 F.2d at 703, so too here, federal jurisdiction over state claims disrupts New Mexico's ability to respond to congressional policy in RCRA by enforcing and implementing the HWA.

*Burford*'s second prong is also met here.

\* \* \*

To conclude, this Court may exercise its discretion to affirm the district court on the alternative grounds of *Brillhart* or *Burford* abstention.

52

## CONCLUSION

NMED respectfully asks this Court to affirm the district court's dismissal of this case for lack of jurisdiction. Alternatively, it requests that the Court affirm the district court's decision to abstain from hearing this case.

## STATEMENT OF COUNSEL AS TO ORAL ARGUMENT

Because of the important and complex jurisdiction and abstention issues at stake in this case, NMED requests oral argument. Oral argument will materially help this Court decide the issues raised.

Respectfully submitted,

RAÚL TORREZ
New Mexico Attorney General

By:    */s/ Esther C. Jamison*
William G. Grantham
Esther C. Jamison
*Assistant Attorneys General*
Environmental Protection Division
408 Galisteo St.
Santa Fe, NM 87501
(505) 490-4060

*Counsel for Defendants-Appellees,*
*New Mexico Environment Department*
*and James Kenney*

**STATEMENT OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify that:

1)    This brief complies with the type-volume requirement of Federal Rule of Appellate Procedure 32(a)(7)(B). It contains 12,890 words, excluding the parts of the brief excluded by Federal Rule of Appellate Procedure 32(f) and Tenth Circuit Rule 32(B).

2)    This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6). It is printed in Times New Roman, 14-point.

By:   */s/ Esther C. Jamison*

55

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

In accordance with the court's CM/ECF User's Manual, I hereby certify that all required privacy redactions have been made. In addition, I certify that the hard copies of this pleading that are required to be submitted to the court are exact copies of the ECF filing, and the ECF submission has been scanned for viruses with Microsoft Defender and, according to the program, is free of viruses.

## CERTIFICATE OF SERVICE

On March 4, 2024, I filed the foregoing document through the Court's CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Esther C. Jamison*